IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ERNEST PADILLA, PERSONAL REPRESENTATIVE
OF THE ESTATE OF ROBERT DOTSON, DECEASED;
KIMBERLY DOTSON,
INDIVIDUALLY AND AS PARENT AND NEXT FRIEND
OF JULIA
DOTSON; AND ZACHARY-MORA DOTSON,**

    Plaintiffs,

vs.                                                                                              Case No. 1:23-cv-00790-MLG-KK

**CITY OF FARMINGTON, NEW MEXICO;
DANIEL ESTRADA; DYLAN GOODLUCK;
AND WAYLON WASSON,**

    Defendants.

**CITY DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT EXHIBITS [Doc. No. 54]**

    Defendants, the City of Farmington, Daniel Estrada ("Officer Estrada"), Dylan Goodluck ("Officer Goodluck"), and Waylon Wasson ("Officer Wasson") (collectively "City Defendants"), through their attorneys, Robles, Rael and Anaya, P.C. (Luis Robles), state the following for their Response to Plaintiffs' Objections to Defendants' Motion for Summary Judgment Exhibits [Doc. No. 54]:

**INTRODUCTION**

    Plaintiffs object to Exhibits H, J, R1, R2, S, Q1, Q2 and Q3 and "request that they be stricken from the Summary Judgment record[.]" [Doc. No. 54], pp. 1-2.  City Defendants rely upon these exhibits and others to support their two pending motions for partial summary judgment.  City

Defendants' statement of undisputed material facts is presented in their *Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs Julia Dotson and Zachary Mora-Dotson's Fourth Amendment Illegal Seizure Claims Against the Officers Based on the Application of Qualified Immunity*, pp. 4-39 (filed Feb. 19, 2024) [Doc. No. 35] (hereafter "*MPSJ No. I*"). Exhibits A1-CC were filed concurrently with MPSJ No. I. See [Doc. No. 35-1 through Doc. No. 35-18]; see also *Notice of Filing Media Exhibits to MPSJ No. I* (filed Feb. 19, 2024) [Doc. No. 36]. City Defendants subsequently filed two additional motions for partial summary judgment, each incorporating by reference some of the undisputed material facts and exhibits presented in support of *MPSJ No. I*. See *City Defendants' Motion for Partial Summary Judgment No. II: Dismissal of the Estate of Robert Dotson's Fourth Amendment Unreasonable Seizure Claim Against the Officers Based on the Application of Qualified Immunity*, p. 3 (filed March 11, 2024) [Doc. No. 42] (hereafter "*MPSJ No. II*") (incorporating by reference paragraphs 1-97, 132, 135-137 and 146-147 of the Statement of Undisputed Material Facts set forth in *MPSJ No. I*); see also *City Defendants' Motion for Partial Summary Judgment No. III: Dismissal of Kimberly Dotson's Fourth Amendment Unreasonable Seizure Claim Against the Officers Based on the Application of Qualified Immunity*, p. 4 (filed March 11, 2024) [Doc. No. 43] (hereafter "*MPSJ No. III*") (incorporating by reference paragraphs 1-137 of the Statement of Undisputed Material Facts set forth in *MPSJ No. I*).[1]

In the instant motion, Plaintiffs object to Exhibits H, J, R1, R2, S, Q1, Q2 and Q3 and request that the Court strike them. However, a motion to strike is not an appropriate vehicle to challenge

---

[1] City Defendants subsequently withdrew MPSJ No. III. See *Notice of Withdrawal* (filed May 24, 2024) [Doc. No. 61].

City Defendants' submissions.  This alone warrants the Court's denial of the motion. Moreover, Plaintiffs' motion did not accurately or clearly present their objections and failed to cite any legal authority to support their arguments. Neither the Court nor defense counsel should be expected to do Plaintiffs' job for them. This too warrants the Court's denial of Plaintiffs' motion. Even if the Court chooses to decide each objection on its merit, it is abundantly clear that Plaintiffs' objections lack a valid factual or legal foundation. Therefore, the Court should overrule Plaintiffs' objections and deny their request to strike Exhibits H, J, R1, R2, S, Q1, Q2 and Q3.

## LEGAL ARGUMENT

**I.   A MOTION TO STRIKE IS NOT THE APPROPRIATE VEHICLE TO CHALLENGE CITY DEFENDANTS' EXHIBITS.**

"While the admissibility of evidence is part of the summary judgment analysis, a motion to strike is not an appropriate vehicle to challenge the opposing party's submissions." TDY Indus., LLC v. BTA Oil Producers, LLC, No. 2:18-CV-0296-SWS/MLC, 2019 WL 12661227, at *1 (D.N.M. June 5, 2019) (citing Smith v. Aurora Pub. Sch., 318 F.R.D. 429, 431 (D. Colo. 2016) ("[T]he undersigned does not view a Rule 56(c)(2) objection as an appropriate basis for a separate motion[;] [t]he Motion to Strike is therefore denied *on that basis* as to the [ ] affidavit.") (emphasis added); Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC, 845 F. Supp. 2d 1241, 1252-53 (M.D. Fla. 2012) ("The proper method to object to evidence submitted on summary judgment is for the party opposing the motion to register its objection to the movant's affidavits by way of the material submitted in opposition to the motion.") (internal quotation marks and citation omitted)).

The Eleventh Circuit aptly explained that:

> Rule 56(c)(2)'s language and its corresponding advisory committee notes provide guidance here. Rule 56(c)(2) explains that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). Among other changes, Congress amended Rule 56 in 2010 to include this language. Before this amendment, parties properly challenged evidence used in a summary judgment motion by filing a motion to strike. See Rule 56, advisory committee's note to 2010 amendments ("There is no need to file a separate motion to strike."). The plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily. See Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 515 (5th Cir. 2012) ("[I]t is no longer necessary for a party to file such a motion; instead, a party may simply object to the material.").

Campbell v. Shinseki, 546 F. App'x 874, 879 (11th Cir. 2013). Courts are "wary of [a party's] attempt to evade the page limitations and get further briefing on why it believes the Court should not consider [the opposing party's] evidence." TDY Indus., LLC, No. 2:18-CV-0296-SWS/MLC, 2019 WL 12661227, at *1 (citing Mobile Shelter Systems USA, 845 F. Supp.2d at 1253 (motion to strike exhibits submitted in support of summary judgment construed as a "procedural device by which a party may try to exceed the page limits imposed by the Local Rules"). "Instead, a party should have raised its objectives in its response brief." TDY Indus., LLC, No. 2:18-CV-0296-SWS/MLC, 2019 WL 12661227, at *1 (citation omitted); see also Dial v. McDonough, No. CV 21-01071-KHV, 2022 WL 16714132, at *2 (D. Kan. Nov. 4, 2022) (stating that a motion to strike summary judgment evidence "is not appropriate" and reiterating "[t]he Court is aware of its duty to consider only evidence which would be admissible at trial ... .").

Here, Plaintiffs' responded to the statement of undisputed material facts in their Response to City Defendants MPSJ No. II, pp. 23-33 (filed April 9, 2024) [Doc. No. 55]. The Response was

thirty-five (35) pages which exceeds the twenty-four (24) page limit for responses. Compare [Doc. No. 55] with D.N.M.LR-Civ. 7.5 ("A response must not exceed twenty-four (24) double-spaced pages.").[2] Instead of exceeding the page limit further by lodging its objections as part of the Response, Plaintiffs filed a separate motion seeking to strike Exhibits H, J, R1, R2, S, Q1, Q2 and Q3. Because a separate motion to strike is no longer proper summary judgment procedure, the Court should deny Plaintiffs' motion.

**II.   PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEIR OBJECTIONS WERE NOT CLEARLY PRESENTED, AND PLAINTIFFS FAILED TO CITE ANY LEGAL AUTHORITY TO SUPPORT THEIR ARGUMENTS.**

"Counsel [must] devote the same degree of care to the preparation of their memoranda filed with the court as the litigants expect of the court in the resolution of the dispute presented." Nguyen v. IBP, Inc., 162 F.R.D. 675, 678 (D. Kan. 1995). "If a party's position is of such merit to warrant incurring the time and expense in the presentation of ... a motion, the litigants and the court have the right to expect that it will be carefully, accurately, and clearly presented with a sound basis in legal principle." Id. Here, Plaintiffs have not met these reasonable expectations, making it unnecessarily time consuming for defense counsel and the Court to sort out the issues in dispute.

Plaintiffs objections are unclear and have no sound basis in legal principle. For example, Plaintiffs failed to provide the Court with the filing date and docket numbers for the exhibits at issue which would have allowed the Court to more efficiently locate them. See *Plaintiffs' Objections to Defendants' Summary Judgment Exhibits*, pp. 1-2 (filed April 5, 2024) [Doc. No. 54] (*hereinafter*

---

[2]   Plaintiffs did not seek City Defendants' concurrence or the Court's permission to exceed the page limit for their Response.

"*Plaintiffs' Objections*").  Further, the local rules of this Court provide that "[a] motion ... must cite authority in support of its legal positions."  D.N.M.LR-Civ. 7.2.  Here, Plaintiffs failed to cite any legal authority to support their various objections. See *Plaintiffs' Objections*, pp. 1-2.  It is not this Court or defense counsel's job to conduct Plaintiffs' research for them. See Flores v. Astrue, 246 F. App'x 540, 543 (10th Cir. 2007) (unpublished) (declining to reach the merits of an argument when the party failed to cite any authority and "expect[ed] the court to do its research"); Ensey v. Ozzie's Pipeline Padder, Inc., 2010 WL 11523525, at *2 n.3 (D.N.M. Apr. 29, 2010) (stating "it is not the Court's function to do counsel's work for them").  Plaintiffs' failure to clearly present their objections or to cite any authority warrants the Court's denial of the motion.

### III.   ALTERNATIVELY, EACH OBJECTION ASSERTED BY PLAINTIFFS LACKS FACTUAL OR LEGAL MERIT

Even if the Court chooses to decide the objections on their merits they should nonetheless be overruled because each one lacks a sound factual or legal basis. Defendants address Plaintiffs' objections to Exhibits H, J, R1, R2, S, Q1, Q2 and Q3 in turn below.

#### A.   Exhibit H

Exhibit H is an aerial photo obtained from Google Maps, showing the location where the incident occurred (530**5** Valley View Ave.) as well as the adjoining alley, surrounding residences, and bordering streets. *Exhibit H* (filed Feb. 19, 2024) [Doc. No. 35-4]; see *MPSJ No. I*, p. 8, para. 11 (describing Exhibit H as "Google Map Aerial View (accessed Feb. 14, 2024)").  The pin drop on Exhibit H is superimposed on 580**5** Valley View Avenue, Plaintiffs' own residence. *Exhibit H* [Doc. No. 35-4].  Google Maps also superimposed address numbers on the surrounding residences

and street names on the adjacent roads. Id.  The aerial photo also shows that 530**8** Valley View Avenue, the actual address to which the Defendant Officers had been dispatched, is located across the street and one (1) house over from Plaintiffs' residence at 530**5** Valley View Avenue. Id.  Finally, the word "Google" has been superimposed at the bottom of the map. Id.  Further, when citing to Exhibit H in their MPSJ No. I, City Defendants stated the following:

> The Court may "take judicial notice of a Google map and satellite image as a source whose accuracy cannot reasonably be questioned." Pahls v. Thomas, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013) (internal quotation marks and alterations omitted).

*MPSJ No. I*, p. 8, para 11, n. 6.  Here, Plaintiffs have done just that but without a sound factual basis or any legal support.

Plaintiffs object to Exhibit H, claiming there is no house number shown on the house where the pin drop is superimposed. [Doc. No. 54], p. 1.  While this is correct, Plaintiffs do not refute that the pin drop is on their own residence, 530**5** Valley View Avenue.  Moreover, City Defendants submitted additional images of Plaintiffs' residence obtained from Google Maps. See *Exhibit N* (filed Feb. 19, 2024) [Doc. No. 35-6]; see also *Exhibit O* (filed Feb. 19, 2024) [Doc. No. 35-7]. Those additional images contain the house number, 530**5**, to the right of the garage door. See id.

Plaintiffs also object on the ground that it is "impossible" to tell if the pin drop is the result of someone's search "or if it has been fabricated or tampered with." [Doc. No. 54], p. 1.  This defies common sense.  Of course this image is the result of a search.  In this instance that search was conducted by defense counsel.  To test the accuracy of the image, all Plaintiffs or their counsel would have to do is run their own Google search for an aerial view of 530**5** Valley View Avenue and compare the results to the image submitted by City Defendants.  It is not "impossible" as

Plaintiffs baldly claim.  It is, in fact, very simple.

Finally, Plaintiffs object to Exhibit H on the ground that "[t]he pin drop, which Officer Wasson says he relied on for 530**5**, actually is in the middle of the street on the right-hand side, rendering the exhibit ambiguous, irrelevant, and not authenticated." Id., pp. 1-2 (emphasis added). It is not clear what Plaintiffs are attempting to convey in the above quoted sentence.  Exhibit H is an aerial image of the relevant area obtained by defense counsel running a Google search for 530**5** Valley View Avenue. The purpose of Exhibit H, in conjunction with other exhibits, is to assist the Court in visualizing the scene, including Defendant Officers' movements and locations at various points during the underlying events. See Schrader v. Storage Five Clarksville, LLC, No. 3:20-CV-00500, 2023 WL 2668420, at *5 (M.D. Tenn. Mar. 28, 2023) (summary judgment opinion included photographs "as a visual aide to give context to Plaintiff's ... testimony and the Court's discussion herein; they are not construed as depicting the scene in the immediate aftermath of Plaintiff's injury or the accurate placement of the wire mesh in relation to the frames or the wall at the time of the accident.).  Exhibit H is distinct from the image Officer Wasson obtained when he utilized the mapping function on his Mobile Data Terminal to locate 530**8** Valley View Avenue. That image is clearly marked as Exhibit G.  *Exhibit G* (filed Feb. 19, 2024) [Doc. No. 35-3]; see also MPSJ No. I, p. 7, para. 10 (citing to "Photo of map from Officer Wasson's MDT taken by Officer Wasson (map accessed April 5, 2023)").  As described in MPSJ No. I, the map accessed by Officer Wasson using his Mobile Data Terminal shows the pin drop for 530**8** Valley View Avenue on the right (south) side of the street, explaining why Officer Wasson went to the residence on the right side of the street. See MPSJ No. I, p. 7, para. 10.  It is evident that Exhibits H and G are two

different images. Finally, Plaintiffs' claim that Exhibit H is unauthenticated blatantly ignores Tenth Circuit precedent allowing a court to "take judicial notice of a Google map and satellite image as a source whose accuracy cannot reasonably be questioned." Pahls, 718 F.3d at 1216 n.1. Plaintiffs cited no authority to distinguish or refute Pahls. Indeed, Plaintiffs cited no authority whatsoever to support any of their objections to Exhibit H. For the foregoing reasons, Plaintiffs' objections to Exhibit H should be overruled.

### B. Exhibit J

Exhibit J consists of a very limited portion of the supplemental report authored by Sergeant Phil Vargas with the New Mexico State Police Investigations Bureau. See Exhibit J, p. 2 (filed Feb. 19, 2024) [Doc. No. 35-5]. Consistent with D.N.M.LR-Civ. 10.6, City Defendants marked the sole paragraph of the exhibit they sought to bring to the Court's attention. Id. Further, City Defendants cited to the highlighted portion of Exhibit J solely to support the following statement of fact: "At approximately 11:45 p.m., Officer Goodluck parked his patrol car." *MPSJ No. I*, p. 8, para. 13. Plaintiffs do not refute the time that Defendant Officers arrived on scene. Nonetheless, Plaintiffs object to Exhibit J.

In its entirety, the highlighted paragraph of Sergeant Vargas' supplemental report (Exhibit J) simply relays the time the Defendant Officers were dispatched to the domestic violence call, the time the Defendant Officers arrived on scene, the approximate number of times each Defendant Officer discharged his service weapon, and that, upon entry into the residence, "Mr. Dotson was lying on the ground, face up near the entry way of front door, inside the residence" with two guns near his body. *Exhibit J*, p.2 [Doc. No. 35-5]. Contrary to Plaintiffs' objections, the highlighted

9

paragraph does not contain Sgt. Vargas' opinions, editorial content, or interpretation of any videos. Plaintiffs' assertions to the contrary have no factual basis.

Instead, Plaintiffs' are wasting the Court's and defense counsel's resources by objecting to sections of the exhibit that City Defendants did not highlight and do not rely upon to support their statement of undisputed material fact. City Defendants are well aware that courts do not comb through the record and, by highlighting the relevant portion of Exhibit J, ensure that the relevant evidence is clearly marked. See Brick v. Estancia Mun. Sch. Dist., No. 1:20-CV-00881-KK, 2020 WL 5204294, at *2 (D.N.M. Sept. 1, 2020) (citing D.N.M.LR-Civ. 10.6, the court stated it "will not comb the record or make a party's arguments for it.") (also citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998) ("we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it")). Moreover, Plaintiffs filed to cite any authority supporting their objections to this exhibit and neither the Court nor defense counsel should have to do that work for them. See Flores, 246 F. App'x at 543 (declining to reach the merits of an argument when the party failed to cite any authority and "expect[ed] the court to do its research"); Ensey, 2010 WL 11523525, at *2 n.3 (stating "it is not the Court's function to do counsel's work for them"). Based on the foregoing reasons, Plaintiffs' objections should be overruled.[3]

---

[3] If the Court finds merit to Plaintiffs' objections to Exhibit J, City Defendants request the Court consider the highlighted portion of the Call for Service Detail Report-CFS 207 (commonly referred to as "CAD Report") which also provides the time of arrival on scene as 11:45 p.m. *Exhibit B*, p. 3 (filed Feb. 19, 2024) [Doc. No. 35-1]; see Fed. R. Civ. P. 56(c)(3) (stating that in addition to the cited materials, the court "may consider other materials in the record.").

C.     **Exhibits R1 and R2**

Exhibits R1 and R2- are screenshots from the Dotson residence's video doorbell security system showing Robert Dotson's with his gun in both hands aiming in the direction of the Defendant Officers. See *Exhibit R1* (filed Feb. 19, 2024) [Doc. No. 35-11]; *Exhibit R2* (filed Feb. 19, 2024) [Doc. No. 35-12  Plaintiffs baldly claim its "impossible to tell what the proper sequence of these particular photographs are" "because they are part of a larger, more complete video, and the complete video has not been offered into evidence." [Doc. No. 54], p. 2, para 3. C ity Defendants' MPSJ No. I provides the precise time the screenshots were taken in the context of the complete video. *MPSJ No. I*, p. 22, para. 80.  Exhibit R1 is a screenshot of the doorbell video at the 05.01.022 timestamp, and Exhibit R2 is a screenshot of the doorbell video at the 04.01.323 timestamp. Id. Therefore, Plaintiffs' claim that it is "impossible" to tell the proper sequence of the screenshots is factually incorrect.

Moreover, and contrary to Plaintiffs' assertion, City Defendants did submit the entire doorbell camera video as Exhibit P to City Defendants' MPSJ No. I. See City Defendants' MPSJ No. I, p. 22, para. 80 [Doc. No. 80]; see also *Notice of Filing Media Exhibits to City Defendants' MPSJ No. I* (filed Feb. 19, 2024) [Doc. No. 36] (indicating that Exhibit P, the doorbell camera video, has been submitted to the Court).  If Plaintiffs truly believed that the two screenshots were somehow inaccurate or taken out of order, Plaintiffs could have provided citations to the doorbell camera video in support of their assertions. See Fed. R. Civ. P. 56(c)(1). Plaintiffs did not do so. See *Plaintiffs' Response to City Defendants' MPSJ No. II*, p. 30, para. 80 (filed April 9, 2024) [Doc. No. 55] (Plaintiffs did not dispute the accuracy or the order that the screenshots were presented).

11

Plaintiffs also claim "[i]t is the totality of the circumstances which matters, not one just frozen second in time." [Doc. No. 54], p. 2, para. 3. While objective reasonableness is evaluated under the totality of the circumstances approach, this approach requires the Court to consider and balance several factors, including "whether the suspect poses an immediate threat to the safety of the officers or others." Graham v. Connor, 490 U.S. 386, 396 (1989); see Estate of Larsen ex re. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008) (stating the second Graham factor is further evaluated by considering, in part, whether the subject made any hostile motions toward the officers.). The threat posed by Mr. Dotson when he aimed his gun in the direction of the Defendant Officers is, therefore, critical to the Court's evaluation of the Estate's Fourth Amendment claim. See Pauly v. White, 874 F.3d 1197, 1216 (10th Cir. 2017) (stating that the second Graham factor is the most important factor in determining the objective reasonableness of an officer's use of force.). Finally, Plaintiffs' assertion that City Defendants are improperly focusing on a "frozen second in time" is belied by the complete statement of undisputed material facts wherein City Defendants' present the totality of the circumstances. See MPSJ No. I, pp. 4-39, paras. 1-147 [Doc. No. 35]. Based on the foregoing, it is abundantly clear that Plaintiffs' objections to Exhibits R1 and R2 lack any basis in fact or law and should, therefore, be overruled by the Court.

    **D.**    **Exhibit S**

Exhibit S is the screenshot taken from Officer Wasson's body worn camera video showing the muzzle flash that was visible when Plaintiff Kimberly Dotson shot at the Defendant Officers. *Exhibit S* (filed Feb. 19, 2024) [Doc. No. 35-13] (screenshot from Officer Wasson's body worn camera video showing muzzle flash); see MPSJ No. I, p. 30, para. 107 [Doc. No 35] (indicating that

12

screen shot was taken from Officer Wasson's body worn camera video at the 04:34 timestamp). Plaintiffs object to this exhibit, claiming there is "no evidence from which the characterization of this as a muzzle flash from Mrs. Dotson's gun can be verified." [Doc. No. 54], p. 2, para. 4. Plaintiffs are incorrect for several reasons.

City Defendants submitted Officer Wasson's complete body worn camera video from which the screenshot can be verified. See generally, *Notice of Filing Media Exhibits to City Defendants' MPSJ No. I* (filed Feb. 19, 2024) [Doc. No. 36] (indicating that Exhibit L, Officer Wasson's complete body worn camera video, has been submitted to the Court). Further, Plaintiffs' assertion ignores Officer Wasson's statement that he saw the muzzle flash and felt the bullet "zip" past to the left of him when Mrs. Dotson fired in the direction of the Defendant Officers. See MPSJ No. I, p. 30, para. 109 [Doc. No. 35]; see also *Exhibit C1*, 40:11-40:17 (video recording of New Mexico State Police agent's interview of Officer Wasson wherein he stated he saw the muzzle flash when Mrs. Dotson fired in the Defendant Officers' direction."). Plaintiffs' assertion also ignores Mrs. Dotson's own admission that "[s]he fired outside at whoever shot her husband." *Plaintiffs' First Amended Original Complaint*, p. 4, para. 15; see *Declaration of Kimberly Dotson*, para. 16, attached as Plaintiffs' Exhibit 1 to Plaintiffs' Response to MPSJ No. II (filed April 9, 2024) [Doc. No. 55] (conceding "I fired my pistol at whoever was in my front yard.").

Based on the foregoing, there is ample evidence from which Plaintiffs and this Court can verify that the flash of light coming from the barrel of Mrs. Dotson's gun is a muzzle flash, contrary to Plaintiffs' assertion. The Court is not bound by Plaintiffs' unsupported assertion to the contrary. See Scott v. Harris, 550 U.S. 372, 378-380 (2007) (Because the video recording and still photos

"tell[ ] quite a different story" than many of the facts in plaintiff's complaint, the court also views the facts in the light depicted by the actual recordings and photos.).  Finally, Plaintiffs offer no authority to support their request that Exhibit S be stricken for the reasons asserted. See Flores, 246 F. App'x at 543 (declining to reach the merits of an argument when the party failed to cite any authority and "expect[ed] the court to do its research"); Ensey, 2010 WL 11523525, at *2 n.3 (stating "it is not the Court's function to do counsel's work for them").

### E.   Exhibits Q1, Q2 and Q3

Exhibits Q1, Q2 and Q3 are screenshots from the respective body worn camera videos of Officer Wasson, Officer Estrada and Officer Goodluck. See *City Defendants' MPSJ No. I*, p. 35, para. 80 [Doc. No. 35] (stating Exhibit Q1 is a screenshot from Officer Wasson's body worn camera video at 03:39:76; Exhibit Q2 is a screenshot from Officer Estrada's body worn camera video at 03:48:206; and Exhibit Q3 is a screenshot from Officer Goodluck's body worn camera video at 08:58:429.); see also Exhibit Q1 (filed Feb. 19, 2024) [Doc. No. 35-8]; Exhibit Q2 (filed Feb. 19, 2024) [Doc. No. 35-9];  Exhibit Q3 (filed Feb. 19, 2024) [Doc. No. 35-10].  Each screenshot shows Robert Dotson brandishing/aiming his gun in the direction of the Defendant Officers.

Plaintiffs object to these screenshots,  first claiming they are incomplete because they are "frozen moments in time." Plaintiffs offer no authority to support their puzzling claim that screenshots or photos are somehow improper summary judgment evidence, and it is not the Court's or defense counsel's job to do that research for them.  See Flores, 246 F. App'x at 543 (declining to reach the merits of an argument when the party failed to cite any authority and "expect[ed] the court to do its research"); Ensey, 2010 WL 11523525, at *2 n.3 (stating "it is not the Court's

function to do counsel's work for them"); see also Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 909 F. Supp. 2d 1225, 1233, n. 4 (D.N.M. 2012) ("That a statement of fact omits related facts does not dispute the fact asserted, and does not specifically controvert the fact or facts asserted.") (citation omitted). Moreover, if Plaintiffs wanted to show the Court a purportedly "more complete picture" they could have submitted their own screenshots or referred the Court to relevant portions of the Defendant Officers' body worn camera videos. See Fed. R. Civ. P. 56(c)(1). This would have been an easy task given that the defense submitted the Defendant Officers' complete body worn camera videos as Exhibits K, L and M. *Notice of Filing Media Exhibits to City Defendants' MPSJ No. I* (filed Feb. 19, 2024) [Doc. No. 36] (indicating that Exhibits K, L, M – Officers Goodluck, Wasson and Estrada's respective body worn camera videos – have been submitted to the Court). Plaintiffs chose not to do so.

Plaintiffs' additional contention – that Exhibits Q1-Q3 show Mr. Dotson holding his gun either in a low ready position or pointed toward the ground – does not constitute a valid basis for striking the exhibits. Scott v. Harris permits the Court to assess/characterize these screenshots and determine for itself what they depict. The Court is not bound by either party's characterization of the screenshots. See Scott, 550 U.S. at 378-380 (Because the video recording and still photos "tell[] quite a different story" than many of the facts in plaintiff's complaint, the court also views the facts in the light depicted by the actual recordings and photos.). Based on the foregoing, Plaintiffs failed to provide a valid factual or legal basis for striking Exhibits Q1-Q3.

## CONCLUSION

Plaintiffs' motion to strike is not an appropriate vehicle to challenge City Defendants'

exhibits. This alone warrants the Court's denial of the motion. Moreover, Plaintiffs' motion did not accurately or clearly present their objections and failed to cite any legal authority to support their arguments. This too warrants the Court's denial of the motion. Further, Plaintiffs' objections lack a valid factual or legal foundation. Therefore, the Court should overrule Plaintiffs' objections and deny their request to strike Exhibits H, J, R1, R2, S, Q1, Q2 and Q3.

**WHEREFORE,** City Defendants respectfully request this Court deny Plaintiffs' Objections to Defendants' Motion for Summary Judgment Exhibits [Doc. No. 54], award City Defendants their attorneys fees and costs associated with responding to this motion; and grant all other relief the Court deems just and proper.

Respectfully submitted,

**ROBLES, RAEL & ANAYA, P.C.**


By:   /s/ Luis Robles
       Luis Robles
       Attorney for City Defendants
       200 3rd St., NW, Suite 500
       Albuquerque, New Mexico 87102-3334
       (505) 242-2228
       (505) 242-1106 (facsimile)
       luis@roblesrael.com

I hereby certify that the foregoing was
electronically filed through the CM/ECF
on this 24th  day of May, 2024, which will
cause service to all counsel of record.


 /s/ Luis Robles
Luis Robles