IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ERNEST PADILLA, et al.,**

     Plaintiffs,

vs.                                    Case No. 1:23-cv-00790-MLG-KK

**CITY OF FARMINGTON, et al.,**

     Defendants.

**REPLY IN SUPPORT OF CITY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT No. II: DISMISSAL OF THE ESTATE OF ROBERT DOTSON'S FOURTH AMENDMENT UNREASONABLE SEIZURE CLAIM AGAINST THE OFFICERS BASED ON THE APPLICATION OF QUALIFIED IMMUNITY**

Defendants, the City of Farmington, Daniel Estrada, Dylan Goodluck, and Waylon Wasson (collectively "City Defendants"), through their attorneys, Robles, Rael & Anaya, P.C. (Luis Robles), state the following for their Reply in Support of their Motion for Partial Summary Judgment No. II: Dismissal of the Estate of Robert Dotson's Fourth Amendment Unreasonable Seizure Claim Against the Officers Based on the Application of Qualified Immunity (filed March 11, 2024) [Doc. No. 42] (hereafter "MPSJ No. II"):

## INTRODUCTION

As a preliminary matter, the Estate of Robert Dotson ("Estate") failed to follow proper summary judgment procedure in responding to Officer Estrada, Officer Goodluck and Officer Wasson's (collectively "Officers") Statement of Undisputed Material Facts, injecting significant confusion into the briefing. The Estate did not simply respond to the Officers' Statement of Undisputed Material Facts and then follow-up in a separate section of lettered paragraphs with additional facts it believed were necessary for the Court's consideration as required by D.N.M.LR-Civ. 56.1(b).  Instead, the Estate asserted some additional facts

in its introduction, and then, after its legal argument section, responded to some of the Officers' statements of fact while also setting forth further additional facts in the same paragraphs. See Plaintiffs' Response, pp. 1-3, 23-33 (filed April 9, 2024) [Doc. No. 55] (*hereafter* "Response").

The Estate's responses often did not coordinate with or concisely respond to each specific statement of fact asserted by the Officers. The Estate also violated Fed.R.Civ.P. 56(c)(1)(A) and D.N.M.LR–Civ. 56.1(b) by overwhelmingly failing to cite to the specific parts of the record upon which it relied. Instead, the Estate's responses relied on the bald assertions of counsel, general citations to a slew of lengthy exhibits, or inadmissible statements by Mr. Dotson's wife and the Estate's expert. Further, the Estate often argued that statements of fact could not be tested or verified without discovery but failed to file a Fed.R.Civ.P. 56(d) affidavit or request the Court defer consideration of MPSJ No. II. The Estate's scattershot approach and overwhelming failure to comply with Fed.R.Civ.P. 56 and Local Rule 56.1(b)'s requirements made it exceedingly difficult for the Officers to reply in an orderly and concise fashion.

Despite injecting significant disorder into the factual recitation of the case, the Estate failed to offer any specific, competent evidence to support its factual assertions and thereby failed to create any genuine dispute of material fact. Notably, neither party in this case can really make the circumstances better or worse for their respective side because the multiple video recordings captured the pivotal facts relevant to the Court's analysis.

In an apparent attempt to throw even more mud at the wall in the hopes of something sticking, the Estate's legal arguments conflate the distinct factors pronounced in Graham v. Connor, 490 U.S. 386, 396 (1989) and Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008). This made it extremely difficult for the Officers to reply in an orderly and concise fashion. Moreover, the Estate arguments also repeatedly rely on the following unsupported and immaterial factual contentions: the Officers knew they were at the wrong address and Robert Dotson ("Mr. Dotson") did not know police were outside his residence. These contentions are not supported by admissible evidence nor are they material

to the Court's inquiry.

Looking past the unnecessary confusion created by the Estate's Response brief and focusing instead on the undisputed facts and governing law, it is evident the Officers are entitled to qualified immunity on the Estate's Fourth Amendment unreasonable seizure and excessive force claims. Even though they went to the wrong address, United States Supreme Court and Tenth Circuit precedent authorized the Officers to knock on the front door of the residence and announce their presence, seeking to speak with the home's occupants. Contrary to the Estate's assertion this was not an investigative detention requiring reasonable suspicion. Instead, the Officers reasonably set the stage for what should have been a lawful, consensual encounter that did not implicate the Fourth Amendment. The consensual nature of the encounter would be no different even if the Officers knew they were at the wrong address, a factual assertion the Estate failed to establish with admissible evidence.

Further and contrary to the Estate's Second Amendment arguments, the relevant case law compels the conclusion that the Officers' initial benign actions – knocking and announcing their presence at the front door in a non-threatening matter while in full-uniform and standing on the well-lit porch – would not reasonably incite Mr. Dotson into posing a threat. The video evidence irrefutably demonstrates it was Mr. Dotson alone who escalated the encounter by aggressively opening the front door and instantly pointing a gun in the direction of Officers Wasson and Estrada who were standing close by and without cover. Based on these undisputed facts, it was objectively reasonable for the Officers to use deadly force to stop the imminent threat of death or great bodily harm posed by Mr. Dotson. This conclusion is not altered by the Estate's repeated assertion that Mr. Dotson did not know police were at his door. The Estate failed to support this assertion with admissible evidence. Even assuming Mr. Dotson did not know police were at his door, Plaintiff's subjective belief that Defendants were not law enforcement is irrelevant to the Fourth Amendment inquiry here because Courts must proceed from the perspective of a reasonable officer on the scene based on the facts which then confronted him, rather than with the 20/20 vision of hindsight.

Alternatively, the Estate failed to meet its heavy burden of identifying United States Supreme Court or Tenth Circuit precedent close enough on point to make the alleged unlawfulness of the Officers' actions apparent. Accordingly, the Court must grant the Officers qualified immunity on the Estate's Fourth Amendment unreasonable seizure and excessive force claims (First Claim for Relief).

### REPLY IN SUPPORT OF THE OFFICERS' UNDISPUTED MATERIAL FACTS

The instant motion, MPSJ No. II, incorporated by reference paragraphs 1-97, 132, 135-137 and 146-147 from the Statement of Undisputed Material Facts set forth in City Defendants' first motion for partial summary judgment (filed Feb. 19, 2024) [Doc. No. 35] (hereafter " MPSJ No. I"). See MPSJ No. II, p. 3.[1] The Estate failed to respond to paragraphs 1-8, 11-18, 20-21, 25, 29-34, 37-38, 41-42, 44, 46-48, 50-54, 56-57, 60, 62-66, 75-76, 78-79, 86, 89, 94-95, 97-104, 109-116, 132, 135-137 and 146-147. Those statements of fact must, therefore, be deemed undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted"). The Estate did, however, respond to paragraphs 105-108 and 117 even though the Officers did *not* incorporate those paragraphs by reference into this motion. The remaining paragraphs the Estate purports to dispute do not specifically controvert the assertions of fact therein so they must also be deemed undisputed. See D.N.M.LR-Civ. 56.1(b). In an effort to rectify the confusion created by the Estate's Response and to comply with Local Rule 56.1(b), each statement of fact is addressed in turn below.

1-8.    The Estate did not respond to the Officers' Undisputed Material Fact ("UMF") Nos. 1-8.

---

[1]    The Estate asks the Court to refrain from considering MPSJ No. II, claiming that, by asserting 147 statements of fact, the Officers violated Local Rule 56.1(b) which provides that the movant "must set out a concise statement of all the material facts." See Response, p. 23. The Estate's assertion fails to recognize the factually intensive nature of this case. See Scott v. Harris, 550 U.S. 372, 382 (2007) (stating "we must still slosh our way through the factbound morass of 'reasonableness'" when addressing a Fourth Amendment claim); Griego v. Salazar, No. CV 07-01311 WPL/LFG, 2008 WL 11409093, at *10 (D.N.M. 2008) (the "reasonableness inquiry is intensely fact specific.") (citation omitted). Further, the Estate fails to acknowledge that, for purposes of MPSJ No. II, the Officers did not incorporate all 147 statements of fact set forth in MPSJ No. I. Instead, the Officers only incorporated those statements of fact relevant to Mr. Dotson. See MPSJ No. II, p. 3 (incorporating by reference a total of 103 statements of fact). Therefore, the Court should decide MPSJ No. II on its merits.

Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

9.      Without explanation or citation to any legal authority, the Estate contends Officer Wasson's recorded statement documenting his own actions, **Exhibit C1**, 27:09-27:28, is not competent evidence. The Officers are left to speculate as to the basis for the Estate's contention. If the basis for the Estate's contention is that **Exhibit C1** is an unsworn statement, such argument is unsupported by law. At the summary judgment stage evidence need not be submitted "in a form that would be admissible at trial," but "the content or substance of the evidence must be admissible." Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006) (citations omitted). Here, the substance of Officer Wasson's statement is admissible as it is a recounting of his own actions and observations. See Fitzjerrell v. City of Gallup, No. CV 00-1630 BB/DJS, 2003 WL 27385467, at *2 (D.N.M. 2003) (finding excerpt from police report written by officer could be considered for summary judgment purposes to the extent it contains the officers' "personal observations and statements."); Blandin v. Smith, No. 1:22-CV-00228-LF-KK, 2023 WL 6381350, at *3, n. 3 (D.N.M. 2023) (finding public records exception to the hearsay rule applies to "information that the officer observed and recorded.") (internal quotation marks and citation omitted). Because the Estate did not specifically controvert UMF No. 9, it must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

10.      The Estate purports to dispute UMF No. 10, contending **Exhibit H** shows the "pin drop" in the middle of the street, instead of on the right (*south*) side of the street as perceived by Officer Wasson. However, UMF No. 10 did not cite to **Exhibit H**, citing only to **Exhibits C1, C2 and G**. See MPSJ No. I, p. 7, ¶10. The map at issue is **Exhibit G**. [Doc. No. 35-3]. Moreover, the map clearly shows the "pin drop" on the right (*south*) side of the street, refuting the Estate's unsupported contention that it is in the middle of the street. See Scott, 550 U.S. at 80 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record ... a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Even assuming the placement of the "pin drop"

is not entirely clear, this does not specifically controvert Officer Wasson's perception that it was on the right (*south*) side of the street. See D.N.M.LR-Civ. 56.1(b). Further, the Estate's bare claim that Officer Wasson's perception is not credible does not suffice to specifically controvert this fact because "[u]nsupported allegations that credibility is in issue will not suffice" to preclude summary judgment. Helvie v. Jenkins, 66 F.4th 1227, 1235 (10th Cir. 2023) (also stating the party challenging the credibility of a statement *must* produce specific facts to put credibility at issue so as to preclude summary judgment).

Next, the Estate contends the authenticity of the map and Officer Wasson's statements about the map can only be tested with discovery. Rule 56(d) requires the nonmovant show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d); see also Gutierrez v. Cobos, 841 F.3d 895, 908 (10th Cir. 2016) (stating Rule 56(d) requires the nonmovant to specify "the probable facts not available."); Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 911 (8th Cir. 1999) (Rule 56(d) affidavit must show "what specific facts further discovery might unveil."). "Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56[(d)] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." See Marquez v. Cable One, Inc., 463 F.3d 1118, 1121 (10th Cir. 2006).[2] Here, the Estate did not file a Rule 56(d) affidavit or declaration nor did it request the Court defer consideration of MPSJ No. II. For the foregoing reasons, UMF No. 10 must be deemed undisputed, and the Court should not defer consideration of this motion.

---

[2]     Further, a plaintiff's Rule 56(d) affidavit must demonstrate "*how* discovery will enable them to rebut a defendant's showing of objective reasonableness" or, stated alternatively, demonstrate a "connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion." Jones v. City and County of Denver, Colo., 854 F.2d 1206, 1211 (10th Cir.1988) (emphasis added). Even if the Officers knew they were going to the wrong address, this would not violate Robert Dotson's Fourth Amendment rights because, by knocking on the front door and announcing their presence, they did no more than setting the stage for a consensual encounter. See MPSJ No. II, pp. 17-18 [Doc No. 42]. This would not invalidate the Officers' qualified immunity defense. Thus, the Estate's purported dispute is immaterial to the qualified immunity questions before the Court.

11-18.  The Estate did not respond to UMF Nos. 11-18. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

19.     The Estate purports to dispute UMF No. 19 because discovery has not been conducted on the issue of police training and because it is based on the Officers' unsworn statements. The Officers incorporate their replies in support of UMF Nos. 9-10 as their reply in support of UMF No. 19. See also Murphy v. City of Tulsa, No. 15-CV-528-GKF-FHM, 2017 WL 11414373, at *2 (N.D. Okla. 2017) (stating officer's personal knowledge about training provided by department was admissible for summary judgment purposes and rejecting plaintiff's claim that the officer's memory was not a substitute for training records). Finally, the Estate  purports to dispute "why Officer Wasson believed the residence he was approaching was 5308 Valley View Avenue" and asserts his "claim he can't tell the difference between a 5 and an 8, is unbelievable." Response, p. 24,  ¶ 19. However, UMF No. 19 did not assert any facts about Officer Wasson mistaking 5305 Valley View Avenue for 5308 Valley View Avenue. Therefore, these contentions by the Estate are not responsive to UMF No. 19. Based on the foregoing, the Estate did not specifically controvert UMF No. 19, and it must be deemed undisputed.

20-21.  The Estate did not respond to UMF Nos. 20-21. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

22.     The Officers incorporate their replies in support of UMF Nos. 9-10 as their reply in support of UMF No. 22, and, therefore, it must be deemed undisputed.

23.     UMF No. 23 stated, "*While still on the street and west of the residence*, Officer Wasson saw the house numbers on the right side of the garage illuminated by a light and believed they read 5308 Valley View Avenue." MPSJ No. I, UMF No. 23 (citing **Exhibit C1**, 30:04-30:15). The Estate's response, that **Exhibit K**, 1:28-1:33 "shows Officer Wasson walking with his head down past the numbers 5305," does not specifically controvert UMF No. 23. This segment of **Exhibit K**, upon which the Estate relies, occurs after the period of time referenced in UMF No. 23. The segment of **Exhibit K** cited by the Estate

occurs when Officer Wasson is already approximately half-way up the driveway and in front of the residence, not while still on the street and west of the residence. <u>Compare</u> **Exhibit K**, 1:28-1:33 <u>with</u> **Exhibit C1**, 30:04-30:15. Further, the Estate's bare claim that "it is unbelievable" Officer Wasson mistook a 5 for an 8 does not suffice to specifically controvert UMF No. 23. <u>See</u> <u>Helvie</u>, 66 F.4th at 1235. For the foregoing reasons, the Estate failed to specifically controvert UMF No. 23, and it must be deemed undisputed.

24.    The Estate's contention the "flashlights were turned on ... as Mr. Dotson opened the door" does not specifically controvert UMF No. 24 which is limited to explaining why the Officers did not use their flashlights while on the street and *as they approached the residence*. <u>Compare</u> MPSJ No. I, UMF No. 24 <u>with</u> Response, p. 25,  ¶ 24. Further, the Estate only cited generally to **Exhibits K, L, M and P** to support its assertion but failed to cite to the relevant segments of each lengthy video in violation of proper summary judgment procedure and it is not the Court's job to do the Estate's job for it. <u>See</u> D.N.M.LR-Civ. 56.1(b); <u>see</u> <u>also</u> <u>Malone v. Bd. of Cnty. Comm'rs for the Cnty. of Dona Ana</u>, No. CIV 15-0876 JB/GBW, 2016 WL 5400381, at *7, n. 34 (D.N.M. 2016) (stating non-movant's general reference to interviews does not comply with D.N.M.LR-Civ. 56.1(b), and the Court is not required to engage in the "laborious exercise" of combing through the interviews), <u>rev'd on other grounds</u>, 707 F. App'x 552 (10th Cir. 2017). Finally, the Officers incorporate their replies in support of UMF Nos. 9-10 as their replies to the Estate's assertions that Officer Goodluck's statement is unsworn and cannot be tested without discovery. For the forgoing reasons, UMF No. 24 must be deemed undisputed, and the Court should not defer consideration of this motion.

25.    The Estate did not respond to UMF No. 25. Therefore, these facts must be deemed undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b).

26.    The Officers incorporate their replies in support of UMF Nos. 9-10 as their replies to the Estate's contentions that Officer Estrada's statement is unsworn and cannot be tested without discovery.

Next, the Estate's bold claim about Officer Estrada's "lack of focus" and "not listening to Goodluck about the address" does not specifically controvert UMF No. 26 because the Estate failed to "refer with particularity to those portions of the record upon which the non-movant relies." D.N.M.LR-Civ. 56.1(b). Finally, the Estate's claim that Officer "Estrada still had a duty to act as a reasonable officer" does not specifically address,[3] let alone controvert, UMF No. 26. To support this contention, the Estate generally cites to the "Declaration of Jeronimo Rodriguez" without providing an exhibit number, page number, or paragraph number in violation of Local Rule 56.1(b). See Malone, 2016 WL 5400381, at *7, n. 34. Nonetheless, defense counsel's review of the declaration did not reveal such an assertion.[4] For the forgoing reasons, UMF No. 26 must be deemed undisputed, and the Court should not defer consideration of this motion.

---

[3]     This statement is an additional fact asserted in violation of appropriate summary judgment procedure and should not be considered by the Court. Local Rule 56.1(b) states "[e]ach additional fact must be *lettered* and must refer with *particularity* to those portions of the record upon which the non-movant relies." D.N.M.LR-Civ. 56.1(b) (emphasis in original). Local Rule 56.1(b) is more than "a simple labeling requirement;" it is "an important tool to identify and address the facts at issue on summary judgment[. A] district court should not have to guess which of the movant's material facts are actually disputed by the non-movant" and which statements are additional facts." Nahno-Lopez v. Houser, 625 F.3d 1279, 1284 (10th Cir. 2010) (addressing a similar local rule). "D.N.M.LR–Civ. 56.1(b) is designed to isolate the relevant facts and to present them in an orderly fashion to the Court, and when parties do not follow the procedures listed in this local rule, the Court may have difficulty properly determining what the relevant facts are." Coffey v. United States, 870 F. Supp. 2d 1202, 1209 (D.N.M. 2012) (citation omitted); see Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 909 F. Supp. 2d 1225, 1233, n. 4 (D.N.M. 2012) ("That a statement of fact omits related facts does not dispute the fact asserted, and does not specifically controvert the fact or facts asserted.") (citation omitted). Because the Estate failed to comply with Local Rule 56.1(b), the Court should disregard the Estate's additional factual assertions.

[4]     In the seminal case of Graham, 490 U.S. 386, the United States Supreme Court announced that law enforcement officers' use of force would be analyzed under an "objective reasonableness" test. Even assuming the Estate's expert propounded an opinion about reasonableness in his declaration it would be an inadmissible legal conclusion because it usurps the role of the Court in instructing the jury as to the applicable law and the role of the jury in applying the law to the facts before it.  See Fed. R. Evid. 702; Specht v. Jensen, 853 F.2d 805, 808-811 (10th Cir. 1988) ("In no instance can a witness be permitted to define the law of the case."); Marquez v. City of Albuquerque, 399 F.3d 1216, 1221 (10th Cir. 2005) (finding the issue of whether officer's actions in ordering his police service dog to apprehend arrestee were objectively reasonable was for jury). Therefore, the expert's opinion is inadmissible for summary judgment purposes. Argo, 452 F.3d at 1199.

27.     The Estate purports to dispute UMF No. 27 by citing generally to **Exhibit E**. This exhibit is an almost 49 minute recorded interview, and the Estate failed to specify which segment of this lengthy interview supports its contention. Thus, UMF No. 27 must be deemed undisputed for failure to comply with D.N.M.LR-Civ. 56.1(b).

28.     The Estate's response does not address, let alone offer any evidence to specifically controvert UMF No. 28. It simply poses an unrelated question about a street map and then states the map appears to be irrelevant. Further, the Estate's response is a legal argument masquerading as a statement of fact the Court should disregard. See Martin v. City. of Santa Fe, No. CIV 13-0575 KBM/RHS, 2014 WL 11398752, at *2 (D.N.M. 2014) ("Plaintiff's purported disputes are often simply the argument of counsel, which cannot be used to defeat summary judgment"), aff'd, 626 F. App'x 736 (10th Cir. 2015); Spurlock v. Townes, No. 9-CV-786 WJ/DJS, 2011 WL 13137118, *5 (D.N.M. 2011) (stating the "[a]rgument of counsel cannot establish a dispute of fact."). Therefore, UMF No. 27 must be deemed undisputed.

29-34.  The Estate did not respond to UMF Nos. 29-34. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

35.     The Estate's response does not offer any evidence to specifically controvert UMF No. 35 as required by Local Rule 56.1(b). Instead, the Estate's response is a legal argument masquerading as a statement of fact the Court should disregard. See Martin, 2014 WL 11398752, at *2; Spurlock, 2011 WL 13137118, at *5. Therefore, UMF No. 35 must be deemed undisputed.

36.     The Estate's response does not offer any evidence to specifically controvert UMF No. 36 as required by Local Rule 56.1(b). Instead, it is a legal argument masquerading as a statement of fact the Court should disregard. See Martin, 2014 WL 11398752, at *2; Spurlock, 2011 WL 13137118, at *5. Further, the Officers incorporate their replies in support of UMF Nos. 9-10 as their replies to the Estate's arguments that UMF No. 36 is supported by an unsworn interview that has not been tested by discovery. For these reasons, UMF No. 35 must be deemed undisputed.

37-38. The Estate did not respond to UMF Nos. 37-38. Thus, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

39.     The Estate does not dispute the top half of the screen door was clear glass or that there was a video doorbell camera next to the front door. Instead, the Estate purports to dispute whether Officer Wasson knew the video doorbell was motion activated or would alert the homeowner via cell phone. However, the Estate failed to offer any evidence to specifically controvert UMF No. 39 in violation of Local Rule 56.1(b). The Estate also contends, without factual or legal basis, that Officer Wasson's statement lacks foundation. The Estate's argument utterly ignores the evidence cited by the Officers, to wit: Officer Wasson's explanation that these statements are based on his "personal experience" with his own video doorbell camera system which is similar to the Dotsons' system. See **Exhibit C1**, 32:46-33:26, attached to MPSJ No. I; Notice of Filing Media Exhibits to MPSJ No. I, p. 1 (filed Feb. 19, 2024); see also ORP Surgical, LLC v. Howmedica Osteonics Corp., 92 F.4th 896, 916 (10th Cir. 2024) (testimony pulled from basic observations and personal experiences is admissible under Fed. R. Evid. 701); Argo, 452 F.3d at 1199. Finally, the Estate included additional unsupported facts in response to UMF No. 39 in violation of appropriate summary judgment procedure. See D.N.M.LR-Civ. 56.1(b). For the foregoing reasons, UMF No. 39 must be deemed undisputed, and the Court should disregard the Estate's additional facts.

40.     The Estate contends the glass on the front door (not screen door) was frosted, not clear as the Officers contend. In support of their claim, the Estate only cited generally to the "Declaration of Kimberly Dotson" but failed to provide the exhibit number, page number, or paragraph number in violation of D.N.M.LR-Civ. 56.1(b). It is not defense counsel's or the Court's job to sift through the declaration to determine if some portion supports the Estate's contention. See Malone, 2016 WL 5400381, at *7, n. 34. Moreover, the Estate's contention is blatantly contradicted by the video segment the Officers cited in support of UMF No. 40. See Scott, 550 U.S. at 380. For the foregoing reasons, UMF No. 40 must be deemed undisputed.

41-42. The Estate did not respond to UMF Nos. 41-42. Thus, these facts must be deemed undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b).

43.     The Estate purports to dispute UMF No. 43 but offered no supporting evidence. <u>See id.</u> The Estate's contentions are nothing more than legal arguments of counsel which cannot serve to establish a disputed fact. <u>See</u> <u>Martin</u>, 2014 WL 11398752, at *2; <u>Spurlock</u>, 2011 WL 13137118, at *5. Further, it is clearly established that degrees of light or darkness are proper lay opinions. <u>See</u> <u>James River Ins. Co. v. Rapid Funding, LLC</u>, 658 F.3d 1207, 1214 (10th Cir. 2011) (common examples of proper lay opinions include "the appearance of persons or things, identity, the manner of conduct, competency of a person, *degrees of light or darkness*, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.") (emphasis added; internal quotation marks and citation omitted). For these reasons, UMF No. 43 must be deemed undisputed.

44.     The Estate did not respond to UMF No. 44. Thus, it must be deemed undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b).

45.     The Officers incorporate their replies in support of UMF Nos. 9-10 as their reply in support of UMF No. 45. Further, estimates of distance based on personal observation are admissible lay opinions. <u>See</u> <u>James River Ins. Co.</u>, 658 F.3d at 1214 (stating proper lay opinions include those regarding distance). For these reasons, UMF No. 45 must be deemed undisputed.

46-48. The Estate did not respond to UMF Nos. 46-48. Therefore, these facts must be deemed undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b).

49.     The Estate purports to dispute UMF No. 49 but does not cite to any evidence as required by D.N.M.LR-Civ. 56.1(b). Instead, the Estate simply contends "[t]he videos are the better evidence on loudness and tone." It is unknown what videos the Estate is contemplating. Nonetheless, the Officers agree the video they cited in support of UMF No. 49, **Exhibit L**, 01:27-01:34, is the best evidence of the loudness and tone of Officer Wasson's first round of knocking and first announcement. <u>See</u> <u>Scott</u>, 550 U.S.

at 380.

The Estate next argues that the loudness and tone of Officer Wasson's knocking and announcement is immaterial because "no one heard him." This is an improperly submitted additional fact the Court should disregard. If the Court considers this improperly submitted fact, the Officers dispute it. In support of this contention, the Estate only cited generally to Kimberly Dotson's declaration, failing to provide a page number or paragraph number in violation of D.N.M.LR-Civ. 56.1(b). Moreover, "[a]n assertion of relevancy, without more, does not specifically dispute an enumerated undisputed fact but rather constitutes argument of counsel." See Martinez v. Romero, No. CIV-11-785 ACT/WDS, 2012 WL 13071884, at *3 (D.N.M. 2012). Nonetheless, the Estate's contention is also believed by Kimberly Dotson's own declaration wherein she acknowledged that "Robert [Dotson] said he thought he heard a knock at our front door ... ." Declaration of Kimberly Dotson, p. 36, ¶ 6 (dated April 4, 2024), attached as Plaintiff's **Exhibit 1** to [Doc. No. 55]. Further, Kimberly Dotson ("Mrs. Dotson") has no personal knowledge as to what Mr. Dotson did, saw, heard or knew once he left the bedroom given she remained in the bedroom. See id. at p. 37, ¶ 14 (stating she "came downstairs" only after hearing the sound of gunfire). Likewise, Mrs. Dotson has no first hand knowledge as to whether her children heard anything given they were in their respective bedrooms. See id., p. 36, ¶ 5. Further, Julia Dotson's 911 call indicates she heard Officer Wasson knocking. See 911 Call made by Julia Dotson, 00:21-00:25 attached as Plaintiff's **Exhibit 3** to [Doc. No. 55] (Julia Dotson reporting to 911 operator that she heard "banging" and then she heard gunshots); Plaintiff's Notice of Lodging Exhibits 3-4, p. 1, ¶ 1 (filed April 5, 2024) [Doc. No. 52]. Thus, other than her personal knowledge as to what she personally heard or did not hear, Mrs. Dotson's declaration is not competent evidence as to what Mr. Dotson did, saw, heard or knew once he left their bedroom or what the children heard. See Janny v. Gamez, 8 F.4th 883, 900 (10th Cir. 2021) (stating "an affidavit or declaration used to oppose summary judgment 'must be made on personal knowledge.'") (quoting Fed.R.Civ.P. 56(c)(4)); see also Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (stating "affidavits must ... set forth facts that

13

would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."); Thomas Well Serv., Inc. v. Williams Nat. Gas Co., 873 F. Supp. 474, 480 (D. Kan. 1994) (stating the affiant's "beliefs, opinions, rumors or speculation" are not "the proper subject of any affidavit.") (citations omitted), aff'd, 64 F.3d 670 (10th Cir. 1995).

Even assuming Mrs. Dotson's declaration properly asserted that "no one heard" Officer Wasson, such assertion is immaterial to the qualified immunity inquiry before the Court. "[T]he facts must be viewed from the perspective of the officer." Graham, 490 U.S. at 396–97 (instructing courts to proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). In other words, "the pertinent inquiry ... is not what plaintiff's actual intent was, or what might now be concluded with '20/20 hindsight,' but is instead what a reasonable officer on the scene would have understood based on the facts which then confronted him." Dutton v. City of Midwest City, No. CIV-13-1239-HE, 2015 WL 1246620, at *4 (W.D. Okla. 2015), aff'd, 630 F. App'x 742 (10th Cir. 2015). Further, the Tenth Circuit has concluded it is reasonable for an officer to assume that anyone who heard the knock on the door also heard the officer's announcement. See Johnson v. City of Roswell, 752 F. App'x 646, 651 (10th Cir. 2018) (where officers dispatched to conduct a welfare check "knocked and twice announced their presence," the court concluded the officer "could properly assume that anyone who heard the knock on the door also heard him announce 'Roswell Police,' particularly the second time, just before the door was opened."). Finally, the Estate claims UMF No. 49's statement that Officer Wasson's first round of knocking was "loud enough" for someone to hear him inside "is far from precise." This is nothing more than the unsupported argument of counsel which cannot establish a dispute of fact. See Martin, 2014 WL 11398752, at *2; Spurlock, 2011 WL 13137118, at *5. For the foregoing reasons, UMF No. 49 must be deemed undisputed, and the Estate's additional facts should be disregarded or, alternatively, deemed disputed.

50-54. The Estate did not respond to UMF Nos. 50-54. Therefore, these facts must be deemed

undisputed. See D.N.M.LR-Civ. 56.1(b).

55.     The Estate purports to dispute UMF No. 55, claiming it is based on an unsworn statement and that "no one inside heard" Officer Wasson. The Officers incorporate their replies in support of UMF Nos. 19 and 49 as their replies in support of UMF No. 55. Further, the Estate's general citation to 5 exhibits without any pinpoint cites violates Local Rule 56.1(b) and fails to specifically controvert UMF No. 55. See Malone, 2016 WL 5400381, at *7, n. 34. For these reasons, UMF No. 55 must be deemed undisputed.

56-57. The Estate did not respond to UMF Nos. 56-57. Thus, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

58.     The Officers incorporate their reply in support of UMF No. 9 as their reply to the Estate's argument that UMF No. 58 is based on an unsworn statement. Further, the Estate's bald claim that UMF No. 58 "does not matter for the purposes of the Motion" is nothing more than the unsupported argument of counsel which cannot establish a dispute of fact. See Martin, 2014 WL 11398752, at *2; Spurlock, 2011 WL 13137118, at *5. For the foregoing reasons, UMF No. 58 must be deemed undisputed.

59.     The Estate purports to dispute that Officer Estrada shined his flashlight into an upstairs window but only cited generally to **Exhibit M**. This does not serve to specifically controvert UMF No. 59. See Malone, 2016 WL 5400381, at *7, n. 34. Moreover, the segment of the body camera video cited by the Officers in support of UMF No. 59, **Exhibit M**, 02:43-02:46, blatantly contradicts the Estate's claim that Officer Estrada did not shine his flashlight into an upstairs window. See Scott, 550 U.S. at 380.

The Estate also included an additional fact about the length of time Officer Estrada shined his flashlight into the upstairs window in violation of appropriate summary judgment procedure. See D.N.M.LR-Civ. 56.1(b). The Court should disregard the Estate's additional fact because it was not set forth in a separately lettered paragraph. See Nahno-Lopez, 625 F.3d at 1284. Further, the Estate's general citation to **Exhibit M** without a pinpoint cite fails to comply with Local Rule 56.1(b). For these reasons, UMF No. 59 must be deemed undisputed and the improperly submitted additional fact should be

disregarded.

60.     The Estate did not respond to UMF No. 60. Therefore, it must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

61.     The Estate does not dispute UMF No. 61 to the extent it asserts, "[a]pproximately thirty-eight (38) seconds after his second announcement, Officer Wasson knocked on the front door approximately seven (7) times in quick succession for a third time and [] announced 'Farmington Police' for a third time." The Estate only purports to dispute UMF No. 61 to the extent it uses the word "loudly" claiming it is "undefined." The Estate also included an additional fact, that "no one inside heard [Officer Wasson]" in violation of D.N.M.LR-Civ. 56.1(b). This notwithstanding, the Officers incorporate their reply in support of UMF No. 49 as their reply to the Estate's additional fact. For the foregoing reasons, UMF No. 61 must be deemed undisputed, and the Estate's improperly submitted additional fact should be disregarded or, alternatively deemed disputed and/or immaterial.

62-66.  The Estate did not respond to UMF Nos. 62-66. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

67.     The Estate does not dispute the substance of the statement made by Officer Wasson or the time frame asserted in UMF No. 67. The Estate only purports to dispute the assertion that Officer Wasson "jokingly" made the statement, claiming it is based on an unsworn statement. The Officers incorporate their reply in support of UMF No. 9 in reply to the Estate's argument. Further, the Estate cites generally to "Declaration of Jeronimo Rodriguez" for the proposition that Officer Wasson "was stubbornly refusing to listen to a subordinate." However, the Estate failed to provide an exhibit number, page number, or paragraph number for Mr. Rodriguez's declaration. The Estate's general reference to the declaration is insufficient to specifically controvert the assertion that Officer Wasson jokingly made the statement. See D.N.M.LR-Civ. 56.1(b); see also Malone, 2016 WL 5400381, at *7, n. 34. Moreover, even if Mr. Rodriguez rendered such an opinion he does not have the expertise to render opinions regarding Officer

Wasson's subjective intentions or state of mind. Such an opinion would be inadmissible speculation and could not serve to specifically controvert the Officers' assertion that Officer Wasson jokingly made the statement to Officer Goodluck. See United States v. Reyez, 183 Fed. Appx. 755, 759 (10th Cir.2006) ("[a] prohibited opinion or inference under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.") (internal quotation marks and citation omitted); United States v. Leveille, No. 1:18-CR-2945-WJ, 2023 WL 5043875, at *3 (D.N.M. 2023) ("Courts routinely exclude expert testimony as to intent, motive, or state of mind as impermissible.") (internal quotation marrks and citation omitted); Hartman v. Snelders, No. 04 CV 1784 (CLP), 2010 WL 11626508, at *18 (E.D.N.Y. 2010) (ruling that police procedures expert "is precluded from opining about the state of mind of any individuals[.]") (citations omitted). For these reasons, UMF No.  67 must be deemed undisputed.

68.     The Estate does not dispute Officer *Goodluck*'s assertion that he still believed he was at the correct address. The Estate only purports to dispute Officer *Wasson*'s assertion that he still believed he was at the correct address, but failed to specifically controvert such assertion. The Estate cited only generally to six lengthy video exhibits, without providing relevant time stamps (pinpoint cites) to support its assertions. See D.N.M.LR-Civ. 56.1(b); Malone, 2016 WL 5400381, at *7, n. 34. It is not defense counsel's or the Court's job to comb through six lengthy video recordings to determine if the Estate's assertions have any factual support. See id. The Estate also purports to dispute whether Officer Wasson's belief was "reasonable." This is a legal argument masquerading as a statement of fact the Court should disregard. See Martin, 2014 WL 11398752, at *2; Spurlock, 2011 WL 13137118, at *5. For these reasons, UMF No. 68 must be deemed undisputed.

69.     The Estate purports to dispute UMF No. 69 but failed to offer any evidence to specifically controvert it. See D.N.M.LR-Civ. 56.1(b). Instead, the Estate's assertions are legal arguments masquerading as statements of fact the Court should disregard. See Martin, 2014 WL 11398752, at *2;

<u>Spurlock</u>, 2011 WL 13137118, at *5. Further, the Officers incorporate their replies in support of UMF Nos. 9-10 as their replies to the Estate's assertions that Officer Wasson's statement is unsworn and cannot be tested without discovery. For these reasons, UMF No. 69 must be deemed undisputed, and the Court should not defer consideration of this motion.

70.     The Estate purports to dispute UMF No. 70 but failed to offer any evidence to specifically controvert it in violation of D.N.M.LR-Civ. 56.1(b). Instead, the Estate's assertions are legal arguments masquerading as statements of fact the Court should disregard. <u>See</u> <u>Martin</u>, 2014 WL 11398752, at *2; <u>Spurlock</u>, 2011 WL 13137118, at *5. Further, the Officers incorporate their reply in support of UMF No. 9 as their reply to the Estate's assertion that Officer Estrada's statement is unsworn. For these reasons, UMF No. 70 must be deemed undisputed.

71.     The Estate purports to dispute UMF No. 71 but failed to offer any evidence to specifically controvert it in violation of D.N.M.LR-Civ. 56.1(b). Instead, the Estate's assertions are legal arguments masquerading as statements of fact the Court should disregard. <u>See</u> <u>Martin</u>, 2014 WL 11398752, at *2; <u>Spurlock</u>, 2011 WL 13137118, at *5. Further, the Officers incorporate their reply in support of UMF No. 9 as their reply to the Estate's assertion that Officer Wasson's statement is unsworn. For these reasons, UMF No. 71 must be deemed undisputed.

In response to UMF No. 71, the Estate also included an additional fact – that "[i]f [Officer Wasson] heard a gun the proper response was to announce "Farmington Police." The Court should disregard the Estate's improperly asserted additional fact because it was not set forth separately in a lettered paragraph or supported by particular references to the record as required by D.N.M.LR-Civ. 56.1(b). Here, the Estate only generally cited to the declaration of its expert, Jeronimo Rodriguez. The Estate did not provide an exhibit number, page number or paragraph number for the declaration and it is not defense counsel's or the Court's job to scour through the lengthy declaration to determine whether Mr. Rodriguez made the assertion attributed to him. <u>See</u> <u>Malone</u>, 2016 WL 5400381, at *7, n. 34. Thus, the Court should disregard

the Estate's additional fact.

If, however, the Court considers this improperly submitted and improperly supported additional fact, the Officers dispute it because such an opinion is "irrelevant for [it] ask[s] us to review the officers' conduct 'from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene.'" Lord v. Hall, 520 F. App'x 687, 693 (10th Cir. 2013) (quoting Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001)); see also Est. of Valverde v. Dodge, 967 F.3d 1049, 1065 (10th Cir. 2020) ("But the expert's opinion does not address the situation from [the officer's] perspective: that is, that [the officer] had to make a split-second decision in reaction to [the suspect's] drawing a gun. Absent an explanation of why it was unreasonable for [the officer] to act immediately upon seeing [the suspect] pull out a gun, the expert's affidavit is unpersuasive."). In addition, Mr. Rodriguez's opinion is inadmissible because it invades the province of the Court in instructing the jury as to the standard governing Officer Wasson's conduct, to wit: that he was required to make "proper" decisions. See Fed. R. Civ. P. 702; Specht, 853 F.2d at 808-811 ("In no instance can a witness be permitted to define the law of the case."); United States v. Littlejohn, 2009 WL 5065559, *3 (W.D. Okla. 2009) (stating an expert "cannot offer an opinion that Defendant's conduct was constitutionally proper, nor can he offer testimony that would, in effect, instruct the jury on the law regarding the use of force."). Finally, Mr. Rodriguez's opinion about the "proper response" utilizes a standard that does not apply to use of force claims. Instead, an "objective reasonableness" standard governs the Estate's Fourth Amendment claim. See Graham, 490 U.S. at 388; see also Moore v. Bryant, 853 F.3d 245, 253 (5th Cir. 2017) (stating that "[p]roper" means "correct."). Mr. Rodriguez's opinion about the "proper response" fails to take into account that, even assuming Officer Wasson "could have behaved differently ... qualified immunity allows for all but unreasonable mistakes." Lord, 520 F.App'x at 1133. For all the foregoing reasons, Mr. Rodriguez's opinion is inadmissible and thus insufficient to overcome summary judgment. See Argo, 452 F.3d at 1199.

72.    The Estate purports to dispute UMF No. 72 but failed to specifically controvert it as required by Local Rule 56.1(b). The Estate baldly stated there is a disputed issue of fact as to "why"

Officer Wasson retreated from the front door but failed to offer any evidence to dispute Officer Wasson's explanation for retreating. See D.N.M.LR-Civ. 56.1(b). Therefore, UMF No. 72 must be deemed admitted.

The Estate then attempts to include an additional fact in response to UMF No. 72, claiming it was "not reasonable" for Officer Wasson to be at the front door. [Doc. No. 55], p. 33, ¶ 72. The Court should disregard the Estate's additional improperly asserted fact because it was not set forth separately in a lettered paragraph or supported by particular references to the record as required by D.N.M.LR-Civ. 56.1(b). Here, the Estate only generally cites to the declaration of its expert, Jeronimo Rodriguez. The Estate did not provide an exhibit number, page number or paragraph number for the declaration, and it is not defense counsel's or the Court's job to scour through the lengthy declaration to determine whether he made the assertion attributed to him. See Malone, 2016 WL 5400381, at *7, n. 34. Thus, the Court should disregard the Estate's additional fact.

If, however, the Court considers this improperly submitted and improperly supported additional fact, the Officers dispute it. Mr. Rodriguez's opinion invades the province of the Court and the jury and is therefore inadmissible. See Footnote 4, supra (explaining how an expert's opinion that an officer's actions were not reasonable invade the province of both the court and the jury). Therefore, Mr. Rodriguez's opinion is inadmissible for summary judgment purposes. Argo, 452 F.3d at 1199.

73.     The Estate purports to dispute UMF No. 73 but failed to offer any evidence to specifically controvert it, violating D.N.M.LR-Civ. 56.1(b). Moreover, the Officers incorporate their replies in support of UMF Nos. 9-10 as their replies to the Estate's claims that Officer Goodluck's statement is unsworn and cannot be tested without discovery. For these reasons, UMF No. 73 must be deemed undisputed, and the Court should not defer consideration of this motion.

74.     The Estate purports to dispute UMF No. 74 but failed to offer any evidence to specifically controvert it as required by D.N.M.LR-Civ. 56.1(b). Moreover, the Officers incorporate their reply in support of UMF No. 9 as their reply to the Estate's claim that Officer Estrada's statement is unsworn. For these reasons, UMF No. 74 must be deemed undisputed.

In response to UMF No. 74, the Estate also included an additional fact – "What happened to [Officer Estrada's] focus on Officer Goodluck is unknown." The Court should disregard the Estate's additional improperly asserted fact because it was not set forth separately in a lettered paragraph or supported by particular references to the record as required by D.N.M.LR-Civ. 56.1(b). Moreover, this is an improper legal argument masquerading as a statement of fact and cannot be used to defeat summary judgment. See Martin, 2014 WL 11398752, at *2; Spurlock, 2011 WL 13137118, at *5. Finally, if the Court considered this improperly submitted and unsupported statement, the Officers dispute it. Officer Estrada stated his main focus on this call was to observe and evaluate Officer Goodluck *and* provide cover if needed. See **Exhibit D** to MPSJ No. I, 26:49-26:54; Notice of Filing Media Exhibits [Doc. No. 36].

75-76.  The Estate did not respond to UMF Nos. 75-76. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

77.     The Estate purports to dispute UMF No. 77 but failed to offer any evidence to specifically controvert it as required by D.N.M.LR-Civ. 56.1(b). Moreover, the Officers incorporate their reply in support of UMF No. 9 as their reply to the Estate's assertion that Officer Goodluck's statement is unsworn. Finally, the video evidence  (cited by the Officers in support of UMF No. 77) does *not* "blatantly contradict" Officer Wasson's and Officer Goodluck's description of the male aggressively opening the door. See Scott, 550 U.S. at 380. Instead, the video evidence is compatible with the Officers' description of the manner in which the male opened the door.[5] For these reasons, UMF No. 77 must be deemed undisputed.

78-79. The Estate did not respond to UMF Nos. 78-79. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

80.     The Estate purports to dispute UMF No. 80 but failed to offer evidence to specifically

---

[5]     See Salgado v. Smith, Civ. No. 21-749 JCH/GBW, 2024 WL 1219066, * 2, n. 4 (D.N.M. 2024) (stating courts should not "discount either a video recording of the encounter or an officer's statement that is not contradicted or otherwise undermined by other evidence, such as physical evidence, circumstantial evidence, or inconsistencies in the officer's testimony.").

controvert it as required by D.N.M.LR-Civ. 56.1(b). The Estate's arguments are nothing more than the inadmissible and unsupported legal arguments of counsel. Martin, 2014 WL 11398752, at *2. Although UMF No. 80 must be deemed admitted for these reasons alone, the Officers still address each of the Estate's scattershot arguments in turn. First, the Estate purports to dispute the Officers' use of the word "brandish" but admits Mr. Dotson was holding a firearm. The Estate offered no legal basis to refute the Officers' use of this term. Moreover, federal and state law define this term as making the presence of a firearm known. See 18 U.S.C. § 924(c)(4); see also U.S.S.G. §1B1.1, Application Note 1(C) (same); United States v. LaFortune, 192 F.3d 157, 161 (1st Cir. 1999) (quoting United States v. Gilkey, 118 F.3d 702, 706 (10th Cir. 1997)); NMSA 1978, §31-18-16 (G)(1). Based on the foregoing definitions, a subject brandishes a firearm even if the firearm is not specifically pointed at another. Therefore, UMF No. 80's use of the term "brandish" is appropriate and supported by the cited evidence.

The Estate next contends the evidence does not show Mr. Dotson "purposely" pointed the gun at anyone and his intent cannot be determined as a matter of law. These contentions do not controvert the specific facts asserted in UMF No. 80. Instead, they are additional facts submitted in violation of proper summary judgment procedure as they were not set forth separately in a lettered paragraph or supported by particular references to the record as required by D.N.M.LR-Civ. 56.1(b). Therefore, the Court should disregard them. Even if the Court considers these improperly submitted facts, they are immaterial to the Court's resolution of this motion because "qualified immunity does not require that the police officer know what is in the heart or mind of his assailant." Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995); see also United States v. Sanchez, 89 F.3d 715, 718 (10th Cir.1996) (stating the "subjective intentions or state of mind" of the criminal defendant is irrelevant to a Fourth Amendment analysis.); Valverde, 967 F.3d at 1062 ("Officers cannot be mind readers and must resolve ambiguities immediately.").

The Court should also disregard the Estate's contentions that Mr. Dotson could not see anyone in his yard and did not know police were there. Again, these contentions do not specifically controvert the facts asserted in UMF No. 80. They are improperly submitted because they were not set forth separately

in a lettered paragraph or supported by particular references to the record as required by D.N.M.LR-Civ. 56.1(b). If the Court considered these improperly submitted additional facts, the Officers incorporate they reply in support of UMF No.49 as their reply to these additional facts.

Additionally, the Estate's attempt to dispute Officer Estrada's use of the word "aggressively" is misplaced. UMF No. 80 does not address the manner in which Mr. Dotson opened the door. Instead, the Estate is attempting to dispute the parenthetical to **Exhibit D**, 33:03-33:11 cited by the Officers in support of UMF No. 80. The parenthetical states Officer Estrada saw "a male subject aggressively open the front door armed with a black pistol." See MPSJ No. I, UMF No. 80. If the Court considers the Estate's effort to dispute the parenthetical, the Officers incorporate their Reply in support of UMF No. 77 as their reply to the Estate's argument.

The Estate then claims Officer Goodluck said the gun was pointed toward the ground. To support this assertion, the Estate only cited generally to **Exhibits E** but did not provide a cite to the relevant segment of this lengthy video in violation of Local Rule 56.1(b). It is not defense counsel's or the Court's job to scour this lengthy video. See Malone, 2016 WL 5400381, at *7, n. 34.  Therefore, the Court should disregard this assertion. Even if the Court considers this assertion, Officer Goodluck did not make this statement. Instead, he stated the following: "the male held the handgun at a forty-five degree angle to the ground and was looking in the direction of Officer Wasson." **Exhibit E**, 29:22-30:14. Such a statement still supports the Officers' assertion that Mr. Dotson brandished a firearm in his right hand. See 18 U.S.C. §924(c)(4); U.S.S.G. §1B1.1, Application Note 1(C); LaFortune, 192 F.3d at 161; NMSA 1978, §31-18-16 (G)(1).

Finally, at the end of all its arguments, the Estate cited generally to the declarations of Jeronimo Rodriguez and Mrs. Dotson. The Estate failed to specify which of its arguments are supported by the declarations or which portions of the declarations it seeks to bring to the Court's attention in violation of D.N.M.LR-Civ. 56.1(b). Therefore, the Court should disregard the Estate's general citation to the declarations. For all the foregoing reasons, UMF No. 80 must be deemed undisputed and the Estate's

additional facts should be disregarded or, alternatively, deemed disputed.

81.    The Estate purports to dispute UMF No 81 but failed to "refer with particularity to those portions of the record upon which [it] relies." D.N.M.LR-Civ. 56.1(b). The Estate's general citation to Mr. Rodriguez's and Mrs. Dotson's declarations do not comply with Local Rule 56.1(b)'s requirements. See Malone, 2016 WL 5400381, at *7, n. 34.[6] Further and contrary to the Estate's assertion, the video doorbell footage does not show that Mr. Dotson was blinded by the flashlights. It only shows a flashlight was shined in his direction. See **Exhibit P**, 04:53-05:01. Even assuming Mr. Dotson could not see the Officers because of the flashlight or otherwise did not know police officers were in his yard, such a facts are immaterial to the qualified immunity inquiry before the Court as fully explained above in the Officers' reply in support of UMF No. 49. Next, the Estate's unsupported claim that a dispute exits as to whether Mr. Dotson aimed his firearm in the direction of Officers Wasson and Estrada is blatantly contradicted by the video and photographic evidence cited by the Officers in support of UMF No. 81. See **Exhibit L**, 03:39-03:40; **Exhibit K**, 03:58; **Exhibit M**, 03:58; **Exhibit P**, 04:59- 05:01, **Exhibits Q1**, **Q2** and **Q3** (screenshots of male aiming firearm in direction of Officers Wasson and Estrada); **Exhibit R1 and R2** (screenshots from video doorbell footage of male aiming firearm in direction of the Officers); see also Scott, 550 U.S. at 380. For the foregoing reasons, UMF No. 81 must be deemed undisputed.

82.    The Estate does not dispute that Officer Wasson issued Mr. Dotson an order to put his hands up as asserted in UMF No. 82. Instead, the Estate asserts additional facts. Specifically, the Estate questions whether Mr. Dotson heard Officer Wasson's order, states that shots immediately followed the order, and disputes whether Mr. Dotson was beginning to "punch the firearm" in Officer Wasson's

---

[6]    Additionally, Mrs. Dotson does not have personal knowledge as to what Robert Dotson saw or heard. See Reply in support of UMF No. 49, supra. Likewise, any opinion by Mr. Rodriguez as to what Mr. Dotson saw, heard or knew after leaving his bedroom is nothing more than inadmissible speculation. See Martinez v. Salazar, No. CV 14-534 KG/WPL, 2016 WL 9488862, at *10 (D.N.M. 2016) (opinions are pure speculation if not based on sufficient facts or data, and must be excluded under Fed. R. Evid. 702.) (citations omitted). Thus, Mrs. Dotson's and Mr. Rodriguez' declarations cannot serve to specifically controvert UMF No. 81.

direction. These additional facts were not set forth separately in lettered paragraphs or supported by particular references to the record as required by D.N.M.LR-Civ. 56.1(b). Therefore, the Court should disregard them. If the Court considers these improperly submitted and improperly supported additional facts, the Officers respond to them as follows: The assertion that Mr. Dotson did not hear Officer Wasson's order is immaterial to the qualified immunity inquiry before the Court because the officers are not required to know what is in heart and mind of the suspect. See Plumhoff v. Rickard, 572 U.S. 765, 775 (2014); Wilson, 52 F.3d at 1553; Sanchez, 89 F.3d at 718; Valverde, 967 F.3d at 1062; Johnson, 752 F. App'x at 651. With regard to the assertion that "the shots immediately followed the statements," the Officers dispute this claim because the Estate did not provide a specific time frame.  Instead, approximately one second after Officer Wasson issued the order to Mr. Dotson to put his hands up and after Mr. Wasson began to raise his handgun in the direction of Officers Wasson and Estrada (at approximately 03:40), the Officers each discharged their department issued service weapons. See **Exhibit L**, 03:39-03:42; **Exhibit K**, 03:58-03:59; **Exhibit M**, 03:58-03:59; **Exhibit P**, 04:59- 05:01; **Exhibits Q1**, **Q2** and **Q3**, (screenshots of male aiming firearm in direction of Officers Wasson and Estrada); **Exhibit R1** and **R2**, (screenshots from video doorbell footage showing same); see also **Exhibit C1**, 37:26-37:39 (Officer Wasson stating, "I believed he was going to shoot me so I made the decision to bring my firearm up. I aimed at the male's center torso area and I fired my weapon. I shot before the male could shoot me."); **Exhibit D**, 33:03-33:21 (believing he was going to be shot, Officer Estrada stated he shot at the male subject); **Exhibit E**, 29:22-30:14 (Officer Goodluck stating he discharged his firearm to stop Officer Wasson from being shot). The video segments and screenshots also specifically controvert the Estate's claim that the Officers' "statement that Mr. Dotson was beginning to 'punch the firearm' in Officer Wasson's direction is not supported by the video." See **Exhibit L**, 03:39-03:42; **Exhibit K**, 03:58-03:59; **Exhibit M**, 03:58-03:59; **Exhibit P**, 04:59-05:01; **Exhibits Q1**, **Q2** and **Q3**; and **Exhibit R1** and **R2**; see also Scott, 550 U.S. at 380. For the foregoing reasons, UMF No. 82 must be deemed undisputed, and the Estate's additional facts should be disregarded or, alternatively, deemed disputed and/or immaterial.

83.     The Estate purports to dispute UMF No. 83 but failed to provide specific references to the record as required by D.N.M.LR-Civ. 56.1(b). Moreover, the videos and screen shots the Officers cited in support of UMF No. 83 "blatantly contradict" the Estate's claim that they do not support the assertion that Mr. Dotson took hold of the firearm with both hands and raised it in a shooting stance, aiming in the Officer Wasson's and Estrada's direction. See **Exhibit L**, 03:39-03:40; **Exhibit K**, 03:58; **Exhibit M**, 03:58; **Exhibit P**, 04:59- 05:01; **Exhibits Q1**, **Q2** and **Q3**; **Exhibit R1** and **R2**; see also Scott, 550 U.S. at 380. The videos and screenshots speak for themselves. Next, the Officers incorporate their replies in support of UMF Nos. 9-10 as their replies to the Estate's assertions that Officer Wasson's and Officer Estrada's statements do not support UMF No. 83 because they are unsworn and untested.

In response to UMF No. 83, the Estate also contends that "[t]he Officers had still not identified themselves as police officers to Mr. Dotson." This contention does not controvert the specific facts asserted in UMF No. 83. Instead, it is an additional fact submitted in violation of proper summary judgment procedure because it was not set forth separately in a lettered paragraph or supported by particular references to the record as required by D.N.M.LR-Civ. 56.1(b). Therefore, the Court should disregard them. Even if the Court considers this improperly submitted fact, the Officers dispute it. Officer Wasson had already announced their presence three separate times. See **Exhibit L**, 01:27-01:34; 02:02-02:59. For the foregoing reasons, UMF No. 83 must be deemed undisputed, the Court should not defer consideration of this motion, and the Estate's additional fact should be disregarded or, alternatively, deemed disputed.

84.     The Estate purports to dispute UMF No. 84 but failed to provide specific references to the record. The Estate's general citation to Jeronimo Rodriguez's declaration does not comply with Local Rule 56.1(b)'s requirements. See Malone, 2016 WL 5400381, at *7, n. 34. The Estate was required to, but did not, provide the page or paragraph number of the declaration which purportedly supports its response. Even assuming Mr. Rodriguez rendered opinions regarding the credibility of Officer Wasson's belief that Mr. Dotson was going to shoot him and the "reasonableness" of such a belief, those opinions would be inadmissible and thus cannot serve to dispute UMF No. 84. See United States v. Hill, 749 F.3d 1250, 1258

(10th Cir. 2014) (concluding that the credibility of another person may not be addressed by an expert and acknowledging that "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by [Fed.R.Evid.] 702.") (internal quotation marks and citation omitted); United States v. Rodriguez, 125 F. Supp. 3d 1216, 1252–53 (D.N.M. 2015) ("It is inappropriate for an expert witness to bolster the credibility of another witness, and the Court finds this use of law enforcement expert testimony – which effectively serves to bolster counsel's arguments about how the jury should interpret the case's facts – reminiscent of, and analogous to, credibility bolstering."); Specht, 853 F.2d at 808-811 ("In no instance can a witness be permitted to define the law of the case."); L'Esperance v. Mings, No. CIV-02-0258MCA/RLP, 2003 WL 25692557, at *5 (D.N.M. 2003) ("Because expert testimony on issues of witness credibility or areas of law covered by the Court's jury instructions is of little or no relevance in this case and raises a substantial danger of unfair prejudice, confusion of the issues, or misleading the jury, see Fed.R.Evid. 403, the parties' police-procedures experts may not testify as to which version of events set forth by the fact witnesses is more credible, nor may such experts be permitted to define the legal parameters of 'objective reasonableness' for the jury."). Therefore, Mr. Rodriguez' opinions are inadmissible for summary judgment purposes. Argo, 452 F.3d at 1199 (stating at the summary judgment stage "the content or substance of the evidence must be admissible"). For the foregoing reasons, UMF No. 84 must be deemed undisputed.

85.     The Estate purports to dispute UMF No. 85, claiming Officer Wasson's distance from the front door cannot be determined based on his unsworn statement or the cited video evidence. The Estate also claims the distance has never been measured. Each argument lacks merit and thus cannot serve to specifically controvert UMF No. 85. First, the Officers incorporate their reply in support of UMF No. 9 as their reply to the Estate's assertion that Officer Wasson's statement about his distance from the front door is unsworn and therefore not competent evidence. Next, the video and Google Maps cited by the Officers in support of UMF No. 85 were not intended to support Officer Wasson's estimate of the distance

between him and the front door. Instead, the Officers cited to the video and Google Maps (**Exhibit L**, 03:35-03:39; **Exhibits N** and **O**) to support UMF No. 85's assertion that Officer Wasson was still within the fenced front yard. Finally, the Estate's contention that measurements have not been taken is insufficient to specifically controvert Officer Wasson's estimate of the distance between himself and the front door. It is well established that an estimate of distance based on personal observation, such as the estimate of distance provided by Officer Wasson, is an admissible lay opinion. See James River Ins. Co., 658 F.3d at 1214 (stating common examples of proper lay opinions include distance) (citation omitted). Therefore, UMF No. 85 must be deemed undisputed.

86.     The Estate did not respond to UMF No. 86. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

87.     The Estate purports to dispute UMF No. 87 only to the extent it asserts that Mr. Dotson "raised the pistol and aimed it in Officer Estrada's direction." The Estate claims the video evidence does not support this assertion or, alternatively, this evidence shows only that Mr. Dotson slightly raised his gun. The Estate also claims Mr. Dotson could not have aimed at anyone because he was blinded by the flashlight. However, the Estate did not offer any specific evidence to support its contentions, only citing generally to **Exhibit P** and Jeronimo Rodriguez' declaration. This does not satisfy D.N.M.LR-Civ. 56.1(b)'s requirements. See Malone, 2016 WL 5400381, at *7, n. 34.  Thus, UMF No. 87 must be deemed admitted on that basis alone. Nonetheless, the Officers point out that Officer Estrada's statement is entirely consistent with the relevant video and photographic evidence. Compare **Exhibit D**, 33:03-33:19 and 48:23-48:39 (Officer Estrada's statements that he observed Mr. Dotson raising his gun and aiming it at him and believed he was going to be shot) with **Exhibit L**, 03:39-03:40 (video of Mr. Dotson raising his gun in the direction of Officers Wasson and Estrada); **Exhibit K**, 03:58 (same); **Exhibit M**, 03:58 (same); **Exhibit P**, 04:59- 05:01 (same), **Exhibits Q1**, **Q2** and Q3 [Doc. Nos. 35-8 through 35-10] (screenshots of male aiming firearm in direction of Officers Wasson and Estrada); **Exhibit R1** and **R2** [Doc. Nos. 35-11 and 35-12] (same). Specifically, **Exhibits R1** and **R2** are screenshots taken from the Dotsons' doorbell video

camera footage **(Exhibit P)** which the Estate cited generally in support of its response to UMF No. 87. These two screenshots clearly show that Mr. Dotson aimed his gun in the direction of Officers Estrada and Wasson, blatantly contradicting the Estate's claim that Mr. Dotson did not aim his gun at anyone or, at most, only "slightly raised" it. See Scott, 550 U.S. at 380. Further, the Officers incorporate their reply in support of UMF No. 81 as their reply to the Estate's contention that Mr. Dotson could not have aimed at anyone because he was blinded by the flashlight. For all these reasons, UMF No. 87 must be deemed undisputed.

88.     The Estate purports to dispute UMF No. 88, claiming Officer Estrada's estimate of the distance between him and the front door cannot be determined based on his unsworn statement or the cited video evidence. The Estate also claims the distance has never been measured. Each argument lacks merit and thus cannot serve to specifically controvert UMF No. 88. First, the Officers incorporate their reply in support of UMF No. 9 as their reply to the Estate's assertion that Officer Estrada's statement about his distance from the front door is unsworn and therefore not competent evidence. Next, the video and Google Maps cited by the Officers in support of UMF No. 88 were not intended to support Officer Estrada's estimate of the distance between him and the front door.  Instead, the Officers cited to the video and Google Maps (**Exhibit M**, 03:57-03:58; **Exhibits N** and **O**) to support UMF No. 88's assertion that Officer Estrada was approximately in the center of the fenced front yard and without cover. Finally, the Estate's contention that measurements have not been taken is immaterial. It is well established that an estimate of distance based on personal observation, such as the estimate of distance provided by Officer Estrada, is an admissible lay opinion. See James River Ins. Co., 658 F.3d at 1214. Therefore, UMF No. 88 must be deemed undisputed.

89.     The Estate did not respond to UMF No. 89. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

90.     The Estate purports to dispute UMF No. 90 but failed to cite any evidence to specifically controvert this fact as required by D.N.M.LR-Civ. 56.1(b). Moreover and contrary to the Estate's

unsupported contention, Officer Goodluck did not report seeing Mr. Dotson's gun pointed toward the ground. Instead, Officer Goodluck perceived that "the male held the handgun at a forty-five degree angle to the ground and was looking in the direction of Officer Wasson." **Exhibit E**, 29:22-30:14. Finally, the Estate's unsupported claim that a dispute exists as to the reasonableness of Officer Goodluck's belief that Mr. Dotson posed an imminent threat of death or great bodily harm to Officer Wasson is a legal argument masquerading as a statement of fact, and the Court should disregard it. See Martin, 2014 WL 11398752, at *2; Spurlock, 2011 WL 13137118, at *5. For these reasons, UMF No. 90 must be deemed undisputed.

91.     The Estate purports to dispute UMF No. 91, but failed to cite any evidence to specifically controvert this fact as required by D.N.M.LR-Civ. 56.1(b). The Estate only claims a dispute as to the distance exists because measurements have not been taken. This bald statement is insufficient to specifically controvert Officer Goodluck's estimate of the distance between himself and the front door. It is well established that an estimate of distance based on personal observation, such as the estimate of distance provided by Officer Goodluck, is an admissible lay opinion. See James River Ins. Co., 658 F.3d at 1214. Therefore, UMF No. 91 must be deemed undisputed.

92.     The Estate purports to dispute a measurement of time not asserted in UMF No. 92. UMF No. 92 asserts that one second *after* the male raised his gun in the direction of Officers Wasson and Estrada, the Officers each fired their department issues service weapons at Mr. Dotson. In their response, the Estate contends that less than one second *after Officer Wasson ordered Mr. Dotson to put his hands up*, the Officers discharged their weapons. This does not specifically controvert the Officers' factual assertion. Further, the Estate did not respond to the additional assertions in UMF No. 92. Therefore, UMF No. 92 must be deemed undisputed in its entirety.

Moreover, the Estate's contention that less than one second *after* Officer Wasson ordered Mr. Dotson to put his hands up, the Officers discharged their weapons is an improperly submitted and improperly supported additional fact because it was not submitted in a separate lettered paragraph, and the Estate did not "refer with particularity to those portions of the record" upon which it relied. See D.N.M.LR-

Civ. 56.1(b). The Estate's general citation to **Exhibits K, L, M, P** does not satisfy Local Rule 56.1(b)'s requirements. See Malone, 2016 WL 5400381, at *7, n. 34. Thus, it should be disregarded by the Court. If the Court considers this improperly submitted and improperly supported additional fact, the Estate does not dispute it. Nonetheless, it is immaterial given the speed with which the events unfolded. See, e.g., **Exhibit L**, 03:39-03:40. When an officer reasonably perceives the subject is drawing a firearm on him and the officer's delay in using deadly force "could result in his own death or serious injury, his decision to fire without allowing [the subject] further time to comply [with the officer's order is] reasonable." Redd v. City of Oklahoma City, 2021 WL 3909982, *12 (10th Cir. 2021) (unpublished opinion); see also Valverde, 967 F.3d at 1062 (stating "[p]erhaps a suspect is just pulling out a weapon to discard it rather than to fire it. But waiting to find out what the suspect planned to do with the weapon could be suicidal.").

93.     UMF No. 93 stated "[t]he Officers fired at the male between 03:40-03:41, a span of approximately one (1) to two (2) seconds," citing **Exhibit L**, 03:39-03:42. The Estate responded, the video appeared to indicate it was one second or less. The Officers do not dispute the Estate's assessment of this time frame.

94-95.  The Estate did not respond to UMF Nos. 94-95. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

96.     The Officers incorporate their reply in support of UMF No. 71 as their reply to the Estate's response to UMF No. 96 that there is a dispute as to whether the gun's slide was racked inside the residence. As fully discussed in the Officers' reply in support of UMF No. 71, the Estate failed to specifically controvert the assertion that Officer Wasson heard the slide of a gun being racked at approximately 03:34. Therefore, approximately 7 seconds elapsed between the firearm being racked inside the residence and the last shot being fired by the Officers. See **Exhibit L**, 03:34-03:42. For these reasons, UMF No. 96 must be deemed undisputed.

97.     The Estate did not respond to UMF No. 97. Therefore, these facts must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

98-103.  The Officers did *not* incorporate UMF Nos. 98-103 by reference from MPSJ No. I into this motion (MPSJ No. II). See MPSJ No. II, p. 3. Accordingly, the Estate did not respond to these paragraphs.

104-112. The Officers did *not* incorporate UMF Nos. 104-112 by reference from MPSJ No. I into this motion (MPSJ No. II). See MPSJ No. II, p. 3. These statements of fact are material to Plaintiff Kimberly Dotson's Fourth Amendment claim, not the Estate of Robert Dotson's Fourth Amendment claim which is the sole claim the Officers address in this motion (MPSJ No. II).  The Estate nonetheless responded to UMF Nos. 104-112. The Court should therefore disregard those responses.

113-116.  The Officers did *not* incorporate UMF Nos. 113-116 by reference from MPSJ No. I into this motion (MPSJ No. II). See MPSJ No. II, p. 3. Accordingly, the Estate did not respond to these paragraphs.

117.    The Officers did *not* incorporate UMF No. 117 by reference from MPSJ No. I into this motion (MPSJ No. II). See MPSJ No. II, p. 3. This statement of fact is material to Plaintiff Kimberly Dotson's Fourth Amendment claim, not the Estate of Robert Dotson's Fourth Amendment claim which is the sole claim the Officers address in this motion (MPSJ No. II). The Estate nonetheless responded to UMF No. 117. Because the Officers did not rely on UMF No. 117 to support their arguments in the instant motion (MPSJ No. II), the Court should disregard the Estate's response.

118- 131.    The Officers did *not* incorporate UMF Nos. 118-131 by reference from MPSJ No. I into this motion (MPSJ No. II). See MPSJ No. II, p. 3. Accordingly, the Estate did not respond to these paragraphs.

132.    The Estate did not respond to UMF No. 132. Therefore, UMF No. 132 must be deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

133-134.  The Officers did *not* incorporate UMF Nos. 133-134 by reference from MPSJ No. I into this motion (MPSJ No. II). See MPSJ No. II, p. 3. Accordingly, the Estate did not respond to these paragraphs.

135-137. The Estate did not respond to UMF Nos. 135-137. Therefore, these facts must be deemed undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b).

138-145.  The Officers did *not* incorporate UMF Nos. 138-145 by reference from MPSJ No. I into this motion (MPSJ No. II). <u>See</u> MPSJ No. II, p. 3. Accordingly, the Estate did not respond to these paragraphs.

146-147. The Estate did not respond to UMF Nos.146-147. Therefore, these facts must be deemed undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b).

### THE OFFICERS' RESPONSE TO ADDITIONAL STATEMENTS OF FACT ASSERTED IN THE INTRODUCTION TO THE ESTATE'S RESPONSE

1-2.     The Estate's additional fact Nos. 1-2 are the unsupported legal arguments of counsel and the Court should disregard them because they can serve to defeat summary judgment. <u>See</u> <u>Martin</u>, 2014 WL 11398752, at *2; <u>Spurlock</u>, 2011 WL 13137118, at *5.

3.      The Court should disregard these additional facts because they were not submitted in a lettered paragraph nor do they "refer with particularity to those portions of the record upon which the non-movant relies" as required by D.N.M.LR-Civ. 56.1(b). The Estate cites generally to **Exhibits A1, C1, E, K,** and **L** , all of which are lengthy recordings.  It is not defense counsel's or the Court's job to scour through them to determine if they support the Estate's contentions. <u>See</u> <u>Malone</u>, 2016 WL 5400381, at *7, n. 34. Even if the Court considers these improperly submitted and improperly supported assertions of fact, the Estate does not dispute that "police responded to a domestic violence call at the wrong address." The Estate disputes the following assertion, in part: "They were dispatched to 5808 Valley View Lane, but instead went to 5305 Valley View Lane, the Dotson's residence, which is on the opposite side of the street and approximately 3 houses down from 5308. The correct street name is Valley View *Avenue*, not Lane. <u>See</u> **Exhibit A1**, 00:03-00:05. While the Dotson residence was admittedly on the opposite side of the street from 5308 Valley View Avenue, it was not three (3) houses down as the Estate contends. Instead, 5308 was across the street and one house over from the Dotsons' residence. <u>See</u> **Exhibit H** (Google aerial map).

The Officers also dispute that "Officer Goodluck knew [] they were at the wrong address." Instead, Officer Goodluck believed Officer Wasson was more familiar with the street and possibly the subjects of the call due to his seniority with the FPD and that it was him (Officer Goodluck) who was mistaken. See **Exhibit E**, 22:14-23:26, 27:37-27:41, 47:30-48:12. Notably, Officer Goodluck had never been dispatched to this street before this incident. See id., 20:17-20:20. Further, the Estate offered no evidence to support its assertion that "Officer Estrada, according to his statements, paid no attention to the address." Instead, Officer Estrada stated that he relied on Officer Wasson's determination that they were at the correct address given that Officer Wasson was also a field training officer. See **Exhibit D**, 27:55-28:07. Next, the Officers dispute the assertion that "Officer Wasson claims to have been unable to tell the difference between and 8 and a 5, if indeed he even looked at the address on the Dotson garage. The Estate offered no specific evidence to support this assertion. Contrary to the Estate's assertion, the undisputed evidence indicates that, while still on the street and west of the residence, Officer Wasson saw the house numbers on the right side of the garage illuminated by a light and believed they read 5308 Valley View Avenue. See **Exhibit C1**, 30:04-30:15 ("As we were approaching the first residence, I was a little to the west of it and on the street when I observed the numbers that were on the right side of the garage with a light right above it. I observed 5308."). Therefore, and contrary to the Estate's statement, a question of fact does not exist as to whether Officer Wasson looked at the address on the Dotson's garage when he was still on the street and west of the residence. See id. The Officers also dispute the next assertions, that "If [Officer Wasson did look at the house numbers on the garage], he ignored the fact that the Officers were at the wrong address." Instead, the undisputed evidence indicates that Officer Wasson made a mistake; he did not "ignore" the address numbers over the garage. Specifically Officer Wasson mistakenly believed he was at the correct address for two reasons: (1) the "pin drop" on the mapping function built into the MDT system had shown Officer Wasson that 5308 Valley View Avenue was on the right  (south) side of the street;[7] and (2) he mistakenly

---

[7]     See **Exhibit C1**, 27:09-27:28, 29:44-30:03 (Officer Wasson explaining why he believed
(continued...)

thought the 5 was an 8 when he looked at the house numbers when walking on the street toward the house and while still west of the residence.[8] The Officers further dispute the assertion that "Officer Watson's (sic) explanation that his GPS failed or directed him to the wrong side of the street is convenient, but unsupported." The Estate's assertion that Officer Wasson's explanation is "convenient" is nothing more than the unsupported argument of counsel and can not serve to create a genuine factual dispute. See Spurlock, 2011 WL 13137118, at *5. Further, the Officers dispute the Estate's claim that Officer Wasson's explanation is "unsupported." See **Exhibit C1**, 27:09-27:28, 29:44-30:03 (Officer Wasson explaining why he believed the residence he was approaching 5308 Valley View Avenue); see also **Exhibit G** (Photo of map from Officer Wasson's MDT showing "pin drop" for 5308 Valley View Ave. on the right side of the street). Finally, the Estate's assertion that a Google Maps search would have demonstrated that the 5308 was on the opposite side of street from 5305 is immaterial here because Officer Wasson used the mapping function built into the MDT system, not Google Maps. See id.; see also Graham, 490 U.S. at 396 (requiring courts to proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"); Saucier v. Katz, 533 U.S. 194, 205 (2001).(stating qualified immunity shields officers who have "reasonable, but mistaken beliefs."). For the foregoing reasons, the Court should disregard the Estate's factual assertions herein for failure to comply with Local Rule 56.1(b) or, alternatively, deem them disputed or immaterial as discussed above.

4.      The Court should disregard the Estate's additional fact No. 4 for failure to comply with the requirements of Local Rule 56.1(b). It was not set forth in a lettered paragraph nor does it cite to the specific portions of the record upon which it relies. If the Court consider the Estate's improperly asserted

---

[7](...continued)
the residence he was approaching 5308 Valley View Avenue); see also **Exhibit G** (Photo of map from Officer Wasson's MDT showing "pin drop" for 5308 Valley View Ave. on the right side of the street); **Exhibit K**, 01:15-01:20 (Officer Goodluck's BWC video showing Officer Wasson leading the way to the residence); **Exhibit L**, 00:00-01:01 (Officer Wasson's BWC video showing that he took the lead in approaching the residence).

[8]       See **Exhibit C1**, 30:04-30:15.

and improperly supported addition facts therein, the Officers respond as follows:

The Officers dispute the assertion that "Officer Wasson knocked on the door and announced three different times 'Farmington Police'" to the extent it states or implies that Officer Wasson only knocked once. He knocked three separate times. See **Exhibit L**, 01:27-01:34, 01:27-02:04, 02:15-02:59. The Officers also dispute that Officer Wasson's first announcement was "Farmington Police." Instead, it was "Police Department." See id., 01:27-01:34. The Officers admit that Officer Wasson's second and third announcements were "Farmington Police." The Officers do not dispute the assertion that Mr. Dotson heard the knocking. However, the assertions that Mr. and Mrs. Dotson did not hear the announcements, that only Mr. Dotson heard the knocking, that he did not know who was outside his house, that he could not see through the front door to determine who was in his yard, and he could not see who was outside when he opened the door are immaterial because courts must proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Moreover, it is reasonable for an officer to assume that anyone who heard the officer knock on the door also heard the officer's announcement. See Johnson, 752 F. App'x at 651. Additionally, Mrs. Dotson, upon whose declaration the Estate relies for these assertions, did not have any personal knowledge as to what Mr. Dotson did, heard, saw, knew or intended once he went downstairs. In her declaration, Mrs. Dotson conceded that she only went downstairs after hearing the sound of gunfire. See **Plaintiffs' Exhibit 1**, p. 37, ¶ 14. Thus, Mrs. Dotson's declaration cannot serve to establish facts as to what her husband did, heard, saw, knew or intended when he went downstairs. See Janny, 8 F.4th at 900; Fed.R.Civ.P. 56(c)(4). Next, the Officers do not dispute that their cars were parked down the street, that no police lights were on (to the extent this refers to the lights on the police cars), or that the officers did not announce they were police for a fourth time once Mr. Dotson opened the door. The Officers dispute that Officer Estrada's flashlight was shining in Mr. Dotson's face as this implies Officer Estrada was directly in front of Mr. Dotson. Instead, Officer Estrada illuminated the front door area with his flashlight. **Exhibit L**, 03:38-03:39; see also **Exhibit M**, 03:57-03:58; **Exhibit D**, 1:00:29-1:01:09; **Exhibit E**, 28:51-28:56. The Officers also dispute the

Estate's final assertion that, upon seeing Mr. Dotson's gun, Officer Wasson fired at him. Instead, Officer Wasson ordered Mr. Dotson to put his hands up, but instead of complying Mr. Dotson grabbed hold of his gun with both hands and raised it in a shooting stance, aiming in the direction of Officers Wasson and Estrada. See **Exhibit L**, 03:39-03:40; **Exhibit K**, 03:58; **Exhibit M**, 03:58; **Exhibit P**, 04:59- 05:01, **Exhibits Q1**, **Q2** and **Q3**; **Exhibit R1** and **R2**; **Exhibit C1**, 36:55-37:24. Only then did Officer Wasson fire. See **Exhibit L**, 03:39-03:42; **Exhibit C1**, 37:26-37:39. For the foregoing reasons, the Court should disregard the Estate's factual assertions herein for failure to comply with Local Rule 56.1(b) or, alternatively, deem them disputed or immaterial as discussed above.

5-6.     The Officers incorporate their response to the Estate's additional fact No. 1 as their response to the Estate's additional fact Nos. 5-6.

7.     The Officers incorporate their responses to the Estate's additional fact No. 4 as their responses here.

8-9.     The Officers incorporate their response to the Estate's additional fact No. 1 as their response to the Estate's additional fact Nos. 8-9.

10.     The Court should disregard these assertions because they were not provided in a lettered paragraph, and the Estate did not cite to the specific segment of **Plaintiffs' Exhibit 4** upon which the assertions rely as required by Local Rule 56.1(b). Even if the Court considers the assertions in this paragraph they are inadmissible for several reasons.

First, the Estate asserts that Police Chief Steve Hebe answered "no" when a reporter asked him whether Mr. Dotson did anything wrong. Such an answer was based on Chief Hebe's specialized knowledge as a police officer and is therefore expert testimony governed by Fed. R. Evid. 702. "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009). "In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." Id. (quoting

Fed.R.Evid. 702). "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology[.]" Id. (citations omitted). This burden applies equally in the context of summary judgment proceedings. See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970, n. 4 (10th Cir. 2001) (stating it was the proponent's burden to demonstrate the expert's qualification for summary judgment purposes). Here, the Estate, as the proponent of the expert testimony, failed to offer any evidence aimed at satisfying the foundational requirements of Rule 702. Therefore, Chief Hebe's answer is inadmissible as expert testimony.

Alternatively, Chief Hebe may offer lay opinions only if they are based on his personal observations. See Fed.R.Evid. 701(a), (c); United States v. Gutierrez, No. 10-CR-3383 WJ, 2012 WL 12549877, at *2 (D.N.M. 2012) ("Lay witnesses may express opinions only from personal knowledge and first-hand experience[.]"); James River Ins. Co., LLC, 658 F.3d at 1216 (stating that Rule 701(c) prevents a party from "circumvent[ing] Rule 702 by offering expert testimony as lay opinion."). Here, the Estate offered no evidence that Chief Hebe's answer was based on his personal knowledge of the underlying events. Instead, the undisputed evidence demonstrates that Officers Wasson, Estrada and Goodluck were the only police personnel on scene until after the shooting. See MPSJ No. I, UMF Nos. 1-2, 20-95. Therefore, Chief Hebe's answer that Mr. Dotson did not do anything wrong is not a proper lay opinion testimony.

Moreover, Chief Hebe's answer does not qualify as an admission by a party opponent, contrary to the Estate's bald contention.

Rule 801(d)(2) provides the following:

An Opposing Party's Statement. The statement is offered against an opposing party and:
(A) was made by the party in an individual or representative capacity;
(B) is one the party manifested that it adopted or believed to be true;
(C) was made by a person whom the party authorized to make a statement on the subject;
(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed.R.Evid. 801(d)(2)(A)-(E). "The burden is upon the proponent of evidence to show its admissibility."

Aetna Life Ins. Co. v. Kern-Bauer, 62 F.2d 477, 479 (10th Cir. 1933); see also Allen v. Nancy Baer Trucking Inc., No. CIV 04-19 LFG/WDS, 2005 WL 8163762, at *2 (D.N.M. 2005) (admissions of a party opponent "are admissible only if the offering party can establish certain foundational requirements as set out in the rule.").

Here, the Estate does not even attempt to meet its burden of establishing the foundational requirements for an admission by a party opponent. Chief Hebe is not a party to this case. See Amended Complaint [Doc. No. 27] (caption). Moreover, "[V]icarious liability is inapplicable to ... § 1983 suits." Ashcroft v. Iqbal, 556 U.S. 662, 676, (2009).  Therefore, the City cannot be held liable for the Officers' alleged Fourth Amendment violations because they are individual capacity claims. See id. For that reason, Officer Hebe's opinion is not the party's own statement, either in an individual or representative capacity. Additionally, the Estate failed to offered any evidence that the Officers manifested that they had adopted or believed Chief Hebe's opinion to be true, that the Officers authorized Chief Hebe to render his opinion on their behalf, that Chief Hebe is the Officers' agent or servant, or that Chief Hebe was the Officers' co-conspirator. Therefore, the Estate failed to meet its burden of establishing that Chief Hebe's answer qualifies as an admission of a party opponent. See Argo, 452 F.3d at 1199 (stating at the summary judgment stage "the content or substance of the evidence must be admissible"). Chief Hebe's answer is therefore inadmissible.

The Estate also contends that Chief Hebe's answer "alone demonstrate[s] disputes of material facts on the cities' claims of a shooting stance, aiming at the officers, or committing a crime in the officers' presence." Even assuming Chief Hebe's answer was inadmissible, which the Officers dispute above, these inferences are blatantly contradicted by the videos, screenshots, and the interview itself. The videos and screenshots clearly show Mr. Dotson in a shooting stance, aiming his gun in the direction of Officers Wasson and Estrada. See MPSJ No. I, UMF Nos. 81, 83; see also Scott, 550 U.S. at 80.

Moreover, the Estate took Chief Hebe's answer out of context. The Chief's answer solely referred to the domestic violence incident – that Mr. Dotson had done nothing wrong to bring police to his

residence. Notably, as soon as the Chief answered the reporter's question, the reporter played the 911 call by the neighbor reporting the incident of domestic violence. **Plaintiffs' Exhibit 4**, 03:42-04:24.  The reporter also asked Chief Hebe, "Beside your team getting the address wrong, how do you view how everything was handled by the officers?" Id., 02:36-02:44. Chief Hebe responded, "as you can see in the video, when [Mr. Dotson] raises the gun up and points it at the officers, that's when the officers respond. And what I would say is the timing on this is very short. They only have a few split-seconds to make a decision." Id., 03:22-03:37. Chief Hebe did not fault the Officers for using deadly force. See id. Subsequently, Chief Hebe further clarified his answer, stating "we came out very quickly and stated that we were at the wrong address. You know, the events that happened with the gun, that's the subject of the State Police investigation." Id., 05:24-05:36. Viewing Chief Hebe's answer in proper context, it is evident he was referring to Mr. Dotson having done nothing wrong to bring police to his residence, not that Mr. Doton was somehow justified in aiming his gun at the Officers. Finally, Chief Hebe's answer is immaterial because Mr. Dotson's Fourth Amendment claim must be analyzed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. For the foregoing reasons, the Estate's additional fact No. 10 should be disregarded or deemed disputed and/or immaterial.

## LEGAL ARGUMENT

I.    **THE OFFICERS' SEIZURE OF MR. DOTSON WAS OBJECTIVELY REASONABLE UNDER THE TOTALITY OF THE CIRCUMSTANCES.**

A.    **Graham Factor 1: Severity of the Crime at Issue.**

The Estate contends that the first Graham factor, the severity of the crime, weighs in its favor because, at the time Mr. Dotson answered the door, the Officers had no reason to be at his house and no reason to suspect that any criminal activity had occurred or was occurring. This argument is unpersuasive.

The relevant inquiry is the severity of the crime(s) at issue preceding the officers' use force against

a subject, not solely the severity of the crime at issue when police are initially dispatched to the scene.[9] For example, in Perea v. Baca, the Tenth Circuit analyzed the first Graham factor not only on the basis that the officers were dispatched to conduct a welfare check on the plaintiff but also on the officers' observation of a crime after they located him. 817 F.3d 1198, 1202-1203 (10th Cir. 2016); see also Doporto v. Kim, No. CV 10-145 JH/KBM, 2011 WL 13282965, at *5 (D.N.M. 2011) (same). Further, in Johnson, a case where the officers were dispatched to conduct a welfare check and the plaintiff alleged the officers' reckless created the need to use deadly force, the court analyzed the first Graham factor as follows:

> Plaintiff argues that each of the Graham factors weighs against the officers. However, the manner in which Plaintiff applies the Graham factors to th[eir] theory [that the officer's own reckless or deliberate conduct during the seizure unreasonably created the need to use such force] is misguided. For example, he claims that because the officers were conducting only a welfare check, the first factor, which considers the severity of the crime at issue, "weighs heavily against the use of significant force." But the pertinent question under the "reckless creation of danger" theory on which Plaintiff relies is whether the officers' pre-seizure conduct was unreasonable in light of the fact they were performing a welfare check. Here, Defendant Lannoye looked around the [exterior of the] home, approached the front door, knocked and announced himself as a police officer. This conduct was not the "use of significant force." On its face, nothing about this conduct seems disproportionate to performing a welfare check.

Johnson v. City of Roswell, No. CV 15-1071 GBW/CG, 2017 WL 4083568, at *7 (D.N.M. Sept. 13, 2017), aff'd, 752 F. App'x 646 (10th Cir. 2018). As in Johnson, here, Officer Wasson's three rounds of knocking and three announcements of "police department" and "Farmington Police" at the front door was not disproportionate to responding to an incident of domestic violence, or even going to an address where no crime had taken place in an effort to initiate a consensual encounter.

---

[9]     The Estate claims it is disputed whether Mr. Dotson committed a violent felony because Officer Goodluck reported seeing Mr. Dotson's gun at a forty-five degree angle. However, the undisputed video footage and screenshots show that Mr. Dotson took hold of the firearm with both hands and raised it in a shooting stance, directly aiming in the direction of Officers Wasson and Estrada, not at a forty-five degree angle. See Exhibit L, 03:39-03:40; Exhibit K, 03:58; Exhibit M, 03:58; Exhibit P, 04:59- 05:01; Exhibits Q1, Q2 and Q3; Exhibit R1 and R2; see also Scott, 550 U.S. at 380. Even assuming Mr. Dotson had only raised the gun to a forty-five degree angle, "[o]fficers cannot be mind readers and must resolve ambiguities immediately." Valverde, 967 F.3d at 1062 (also stating, "[p]erhaps a suspect is just pulling out a weapon to discard it rather than to fire it. But waiting to find out what the suspect planned to do with the weapon could be suicidal.").

Alternatively, even assuming the Estate is correct that the first <u>Graham</u> factor focuses only on the crime that brought police to the residence, here, the Officers had probable cause to believe, albeit mistakenly, that the adult female and male residents at the Dotson residence had been involved in an incident of domestic violence. <u>See</u> MPSJ No. I, UMF No. 4, 5, 7.[10] The radio dispatch and the CAD report indicated that the male was bleeding as he had reportedly been struck by the female, and, on the other hand, the male was arguing with the female, yelling, argumentative and being "pretty aggressive" with this dispatcher and had then disconnected the call. <u>See</u> <u>id.</u> Based on the foregoing, the Officers, at a minimum, had arguable probable cause to believe that both the female and male had respectively committed the crimes of aggravated battery against a household member and assault against a household member.[11] <u>See</u> <u>Stonecipher v. Valles</u>, 759 F.3d 1134, 1141 (10th Cir. 2014) ("Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists.") (citing <u>Cortez v. McCauley</u>, 478 F.3d 1108, 1120 (10th Cir. 2007)). Notably, it is also undisputed the Officers believed they were at the correct address. <u>See</u> MPSJ No. I, UMF Nos. 9-10, 21-23, 25, 33, 36, 64-68.

Moreover, "it would be insignificant whether [Mr. Dotson] ... was not even a criminal suspect [when police arrived on scene] if it reasonably appeared that [Mr. Dotson] was about to shoot a gun at an officer from close range." <u>Valverde</u>, 967 F.3d at 1061; <u>see also</u> <u>Est. of Taylor v. Salt Lake City</u>, 16 F.4th 744, 763 (10th Cir. 2021) (same); <u>Redd</u>, 2021 WL 3909982, *11-12 (same). In the end, the reasonableness inquiry "is always whether, from the perspective of a reasonable officer on the scene, the totality of the

---

[10]     To the extent the Officers cite to UMFs from MPJS No. I [Doc. No 35] such citations are also meant to include the Officers' replies in support of those UMFs which are contained in this Reply brief.

[11]     <u>See</u> NMSA 1978, §30-3-16(A) and (B) (the misdemeanor crime of "[a]ggravated battery against a household member consists of the unlawful touching or application of force to the person of a household member with intent to injure that person or another"); <u>see also</u> NMSA 1978, §30-3-12(A)(2) and (B) (the petty misdemeanor crime of "[a]ssault against a household member consists of ... any unlawful act, threat or menacing conduct that causes a household member to reasonably believe that he is in danger of receiving an immediate battery.").

circumstances justified the use of force." Larsen, 511 F.3d at 1260. For the foregoing reasons, the first Graham factor weighs in the Officers' favor, or alternatively, is insignificant to the reasonableness inquiry because Mr. Dotson aimed his gun in Officers Wasson and Estrada's direction as if he was about to shoot them from close range.

**B.      Graham Factor 2: Mr. Dotson Posed an Immediate Threat of Serious Physical Harm to the Officers and Others.**

The Estate acknowledges that the second Graham factor, which is evaluated using the following nonexhaustive Larsen factors, is the most fact intensive and important factor in determining reasonableness under the Fourth Amendment." Response, p. 8.

**1.      Larsen Factor 1: Mr. Dotson failed to comply with Officer Wasson's order to put his hands up.**

The Estate concedes Officer Wasson ordered Mr. Dotson to put his hands up, and it is undisputed that he did not comply. See Response, p. 8; see also MPSJ No. I, UMF No. 82-83. However, the Estate claims Officer Wasson's order was inadequate because he did not announce they were police for a *fourth* time or specifically command Mr. Dotson to "drop his weapon." The Estate claims these additional steps were feasible because Officer Wasson had 5 seconds between the time he heard the gun being racked to the time the Officers shot Mr. Dotson.[12] The Estate relies on Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559-61 (1st Cir. 1989), Pauly v. White, 874 F.3d 1197, 1216 (10th Cir. 2017), and Tenorio v. Pizer, 802 F.3d 1160, 1163 (10th Cir. 2015) to support this argument. However, those cases are inapplicable and/or distinguishable.

**a.      Gutierrez-Rodriguez v. Cartagena is inapplicable.**

In Gutierrez-Rodriguez, the plaintiff and his girlfriend parked in a rural and secluded spot to look

---

[12]      The Estate appears to argue that Mr. Dotson's failure to comply with Officer Wasson's order is somehow excused because the Officers allegedly knew they were at the wrong address, had no reason to suspect Mr. Dotson of any crime, and he may not have known police were at his door. Response, pp. 8-9. These issues are irrelevant to the first Larson factor which solely considers whether a suspect was given an order and failed to comply. Palacios v. Fortuna, 61 F.4th 1248, 1259 (10th Cir. 2023). Moreover, these contentions are addressed in other appropriate sections of this Reply.

at the city lights visible in the distance. 882 F.2d at 557. At approximately 11:30 p.m, four plain clothes narcotics detectives were patrolling in an unmarked vehicle. Id. The detectives came upon the plaintiff's car and, without explanation, "quickly exited their vehicle and approached the car with guns drawn" and "without identifying themselves as police officers." Id. at 557, 559. In response, the plaintiff "hastily started his engine and began to drive *away*." Id. at 557 (emphasis added). Without warning, the officers shot at the car, striking the plaintiff. Id. The First Circuit affirmed the jury's verdict finding the detectives liable for a Fourteenth Amendment due process violation. Id. at 559-561.

The instant case differs dramatically from Gutierrez-Rodriguez; thus, it has no persuasive value. In that case, the plaintiff asserted a Fourteenth Amendment due process claim, not a Fourth Amendment claim as the Estate asserts here. Therefore, the First Circuit did not address Graham or Larsen and their progeny. See id. at 559-561. The First Circuit also did not address whether it was feasible for the narcotics officers to give a warning under Tennessee v. Garner, 471 U.S. 1, 11-12 (1985) and its progeny. See id. Finally, the facts in Gutierrez-Rodriguez are markedly different from those here. Critically, for purposes of the first Larsen factor, which is the only factor at issue in this section of the Reply, the detectives did not identify themselves or issue an order while approaching plaintiff's care or at any time before using deadly force even though there was no exigency or threat that would have precluded the detectives from doing so. See id. In contrast, here, the fully-uniformed Officer Wasson knocked and announced three separate times at the front door which was well-lit by a porch light and also issued an order before using deadly force. MPSJ No. I, UMF Nos. 38, 48, 52, 55, 61, 82. Based on the foregoing, Gutierrez-Rodriguez is inapplicable to the instant case.

### b.    Pauly v. White is distinguishable.

In Pauly, which is fully discussed on pp. 24-25 of MPSJ No. II, Officer White had taken cover behind a stone wall fifty feet away from the residence, and it was undisputed that the residents had repeatedly yelled out that they did not know who was outside or what the unknown person(s) wanted. 874 F.3d at 1204, 1207. It was also dark and raining. Id. at 1204. At one point, one of the residents, Samuel

Pauly, aimed a firearm out the window in the direction of Officer White who then shot and killed Mr. Pauly. Id. at 1205. Under those specific circumstances, the Tenth Circuit concluded that the first Larsen factor weighed  in plaintiffs' favor given that Officer White "did not identify himself *or* order Samuel Pauly to drop his weapon" during the five seconds that passed between Mr. Pauly aiming the gun in the officer's direction and the officer firing his weapon. Id. at 1207 (emphasis added).

Unlike the circumstances in Pauly, here, it is undisputed that Officer Wasson had already knocked and announced their presence three (3) separate times at the well-lit front door, including seconds before Mr. Dotson opened the front door. See MPSJ No. I, UMF Nos. 48, 55, 61, 71, 77. Moreover, it is undisputed here that Officer Wasson ordered Mr. Dotson to put his hands up when he opened the door armed with a gun, but he did not comply. See id., UMF Nos. 82-83. Additionally, Pauly does not support the Estate's contention that Officer Wasson should have issued a fourth announcement or a specific order to "put the gun down" when he heard the firearm being racked from inside the front door. At that moment, Officer Wasson was directly outside the front door without cover. See id., UMF No. 71. Fearing that the individual inside was preparing to open fire on him, Officer Wasson drew his handgun to the low ready position, and tactically retreated from the front door at a forty-five degree angle into the front yard to gain distance from the door to give himself time to deal with whatever situation was going to present itself. See id., UMF Nos. 72, 77. When Mr. Dotson opened the door armed with a gun three seconds later, Officer Wasson was still within 10-15 feet from the front door and without cover. See id., UMF Nos. 84-85. He was not safely positioned behind a stone wall over fifty feet away during this three second period like Officer White was in Pauly. Officers Estrada and Goodluck also tactically repositioned themselves during that three second period but were still close to the door, and Officer Estrada was still without cover. See id., UMF Nos.73-76. Thus, the circumstances in Pauly are distinguishable that decisoin does not compel or support a finding in the Estate's favor on the first Larsen factor.

### c.   Tenorio v. Pizer **is distinguishable.**

Tenorio affirmed the denial of qualified immunity for officers who had responded to a 911 call

reporting that a suspect was intoxicated and holding a knife to his own throat. Id. at 1161–62. The Tenth Circuit concluded that the evidence presented a triable issue as to whether use of force was reasonable because where it established "that [the suspect] did not refuse to drop the knife because he was not given sufficient time to comply with [the officer's] order; [the suspect] made no hostile motions toward the officers but was merely holding a small kitchen knife loosely by his thigh and made no threatening gestures toward anyone; [the suspect] was shot before he was within striking distance of [the officer]; and ..., for all [the officer] knew, [the suspect] had threatened only himself and was not acting or speaking hostilely at the time of the shooting." Id. at 1164–65 (internal quotation marks and ellipsis omitted). The Tenth Circuit stated that its past precedent "specifically established that where an officer had reason to believe that a suspect *was only holding a knife*, not a gun, and the suspect was not charging the officer and had made no slicing or stabbing motions toward him, that it was unreasonable for the officer to use deadly force against the suspect." Id. at 1165-1166 (internal quotation marks and citations omitted).

Unlike the circumstances in Tenorio, Mr. Dotson was not holding a knife at his side nor was he positioned outside the striking distance of the Officers. See MPSJ No. I, UMF Nos. 80-81. Mr. Dotson was armed with a gun and had begun to raise it in the direction of Officers Wasson and Estrada, who were standing nearby without cover. Id., UMF No. 84-85, 87-88. At that point, Officer Wasson ordered Mr. Dotson to put his hands up. Id., UMF No. 82. In the split-second that followed, Mr. Dotson disregarded the order by taking hold of the firearm with both hands and raising it in a shooting stance, aiming in the direction of Officers Wasson and Estrada. Id., UMF Nos. 82-83. Thus, unlike the plaintiff in Tenorio, Mr. Dotson had made a hostile motion towards two of the Officers who were in "striking distance" of his firearm. Additionally, here there were home(s) behind the Officers that were potentially in the line of fire. Id., UMF No. 132. Under these circumstances, which differ greatly from those in Tenorio, it was not feasible to give Mr. Dotson more time to comply with Officer Watson's order.

Moreover, as fully discussed above, it was not feasible for Officer Wasson to have issued a warning three seconds earlier as soon as he heard the gun slide being racked inside the home because he was in a

Case 1:23-cv-00790-MLG-KK   Document 63   Filed 05/24/24   Page 47 of 57

vulnerable position just outside the front door, and he needed to tactically reposition himself to prepare for the perceived threat coming from inside the home. See id., UMF Nos. 71-72. For all these reasons, Tenorio does not support the Estate's position.

Importantly, and as fully discussed in their MPSJ No. II, the circumstances here are more comparable to those in Estate of Smart v. Wichita, 951 F.3d 1161, 1175 (10th Cir. 2020), Est. of George v. City of Rifle, Colo., 85 F.4th 1300, 1317 (10th Cir. 2023); Valverde, 967 F.3d at 1061–62, and Redd, 2021 WL 3909982, *12. See MPSJ No. II, pp. 8-10. Tellingly, the Estate failed to address, let alone distinguish, the application of those cases to the first Larsen factor. See Response, pp. 8-9. For the foregoing reasons, the first Larsen factor weighs in the Officers' favor.

> **2.    Larsen Factor 2: Mr. Dotson made a hostile motion with a handgun toward the Officers.**

In response to the Officers' claim that the video evidence unequivocally demonstrates that Mr. Dotson made a hostile motion with his firearm toward the Officers, the Estate curiously responds that Mr. Dotson was just attempting to comply with Officer Wasson's order to put his hands up. The video footage and screenshots blatantly contradict this assertion. See Scott, 550 U.S. at 380. Instead, this evidence unequivocally shows Mr. Dotson take hold of the firearm with both hands in a shooting stance and aims it in the direction of Officers Wasson and Estrada. MPSJ No. I, UMF No. 83.[13] Therefore, the second Larson factor weighs in the Officers favor.

> **3.    Larsen Factor 3: Mr. Dotson was close to Officers Wasson and Estrada, who were without cover, when he aimed his gun in their direction.**

The Estate concedes the Officers were within the range of Mr. Dotson's weapon. Nonetheless, the

---

[13]       The Estate also contends that whether the suspect knew he was pointing a gun at a police officer is relevant to an analysis of the second Larsen factor. The cases cited by the Estate do not support this contention. In Pauly, the Tenth Circuit concluded that the second Larsen factor weighed in the officers' favor because "the [suspect] pointed a handgun at Officer White, or at least in his direction." Pauly, 874 F.3d at 1216. The remaining cases cited by the Estate discuss the officers' pre-seizure conduct being relevant to the objective reasonableness determination under the totality of the circumstances but not specifically to the  narrow inquiry posed by the second Larsen factor. See Response, p. 10, n. 2 (and cases cited therein). In fact, aside from Pauly, the other cases cited by the Estate do not address Larsen.

Estate argues the third <u>Larsen</u> factor should not favor either party because it is disputed whether Mr. Dotson aimed his gun in the direction of Officers Wasson and Estrada or, instead, was trying to comply with the command to put his hands up. <u>See id.</u> The Estate is simply injecting an irrelevant issue into the otherwise narrow and specific inquiry called for by the third <u>Larsen</u> factor. Nonetheless, the video footage and screenshots unequivocally show Mr. Dotson take hold of the firearm with both hands in a shooting stance and aim it in the direction of Officers Wasson and Estrada. <u>See</u> MPSJ No. I, UMF No. 83; <u>see also</u> <u>Scott</u>, 550 U.S. at 380.[14] For these reasons, the third <u>Larsen</u> factor weighs in the Officers' favor.

        **4.**      **<u>Larsen</u> Factor 4: Mr. Dotson's manifest intentions indicate he posed a lethal threat to Officers Wasson and Estrada.**

The Estate unconvincingly attempts to draw the Court's attention away from the undisputed fact that Mr. Dotson pointed his gun in the direction of Officers Wasson and Estrada who were standing nearby without cover by claiming the Officers' credibility and Mr. Dotson's subjective beliefs must be considered.

---

[14]    In response to the undisputed assertion that there were homes behind Officers Wasson and Estrada that were also in Mr. Dotson's line of fire, <u>see</u> MPSJ No. I, UMF No. 132, the Estate claims this would only support the third <u>Larsen</u> factor if there was evidence of other persons in the vicinity that could have been in danger. Response, p. 11 n. 3. However, the Estate failed to address, let alone distinguish the Officers' reliance on <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) wherein the Court did not express concern with the actual absence or presence bystanders, but with the officer's reasonable belief that bystanders might be nearby. By its nature, the relevant inquiry is fact specific. <u>See also</u> <u>Thomson v. Salt Lake County</u>, 584 F.3d 1304, 1318 (10th Cir. 2009) (holding that it was reasonable for the officers to believe that a suspect was an immediate threat to police *or to others in the neighborhood* when that suspect "was in possession of a firearm, ... had not put his weapon down as instructed by the officers" and "was moving his gun up and down quickly," including in the direction of the officers). The cases cited by the Estate, <u>Est. of Ceballos v. Husk</u>, 919 F.3d 1204, 1218 (10th Cir. 2019) and <u>Cordova v. Aragon</u>, 569 F.3d 1183, 1190 (10th Cir. 2009), do not alter the reasonableness inquiry utilized in <u>Brosseau</u> or <u>Thomson</u>. Further, <u>Cebellos</u> and <u>Cordova</u> did not specifically address the third <u>Larsen</u> factor as applied to potential bystanders. In <u>Cebellos</u>, the suspect was armed with a bat and possibly a pocket knife, and the officers did not see any neighbors or bystanders in the area. 919 F.3d at 1209-1211. Unlike the circumstances here, the suspect in <u>Cebellos</u> was not armed with a gun that the court recognized "was capable of harming someone from a much greater distance and with greater lethal potential than Cebellos's baseball bat (or at worst, his pocket knife)." <u>Id.</u> at 1216. <u>Cordova</u>, is likewise distinguishable, because the suspect was driving a truck that was pulling a piece of heavy excavation equipment on a trailer behind it on the wrong side of the road at approximately 1:00 a.m. and there was no evidence of other motorists in the vicinity or that other motorists would not be able to spot the suspect and avoid an accident. 568 F.3d at 1186, 1190. Here, Mr. Dotson posed an imminent threat to residents who would not be visible to police from inside their homes, unlike motorists who would be visible on the highway as in <u>Cordova</u>.

The Estate's arguments are irrelevant here.[15] Pointing a gun at an officer, as Mr. Dotson did here, obviously satisfies the Fourth Larsen factor. See Taylor, 16 F.4th at 771 (drawing a gun against an officer reflects bad intentions); Valverde, 967 F.3d at 1061 (fourth Larsen factor "would obviously be satisfied" where suspect drew gun to fire at an officer."). Notably, the Estate failed to address, let alone distinguish, the cases cited by the Officers on this issue. Compare MPSJ No. II, pp. 12-13 with Response, pp. 11-13.

Moreover, the three cases, upon which the Estate relies to support its argument that Mr. Dotson had a Second Amendment right to self-defense, do not apply to the facts here. First, as fully discussed on pages 24-25 of MPSJ No. II, the Estate's reliance on Pauly is misplaced because the fact of that case are materially distinguishable from those here. In Pauly, the Tenth Circuit's discussion of the Second Amendment was based on the plaintiffs' manifest actions, not their subjective beliefs. Specifically, the Pauly brothers yelled out repeatedly, "Who are you?" and, "What do you want?" Pauly, 874 F.3d at 1204. The officers responded with statements indicating their intent to invade the residence. Id. at 1219. That did not occur here. Before Mr. Dotson aggressively emerged from the residence, the Officers had done no more than knock on the front door in a non-threatening manner and repeatedly announce their presence while standing in full-uniform on a well-lit front porch in view of the video doorbell and front window. See MPSJ No. I, UMF Nos. 37-39, 41, 43-45, 48- 63. Mr. Dotson did not ask who was outside or threaten to call the police, and the Officers made gave no indication they intended to enter the residence. See id., UMF No. 37-39, 41, 43-45, 48-57, 60-83. Thus, no reasonable officer would conclude that the Officers here took any action that would make Mr. Dotson believe he needed to protect his home from being invaded by

---

[15]   See also Dutton, 2015 WL 1246620, at *4 ("[T]he pertinent inquiry for present purposes is not what plaintiff's actual intent was, or what might now be concluded with '20/20 hindsight,' but is instead what a reasonable officer on the scene would have understood based on the facts which then confronted him."); Rion v. Medrano, No. CV 11-0269 JB/CG, 2014 WL 12798359, at *11 (D.N.M. 2014), report and recommendation adopted, No. CIV 11-0269 JB/CG, 2014 WL 1951654 (D.N.M. 2014) ("Plaintiff's subjective belief that Defendants were not law enforcement is irrelevant to this inquiry because Graham requires the Court to proceed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'") (quoting Wilson v. City of Lafayette, 510 Fed. Appx. 775, 779 (10th Cir. 2013)).

unknown persons, contrary to the facts in <u>Pauly</u>.

The Estate's reliance on <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008) is similarly misplaced. <u>Heller</u>, held in part, that a statue banning "handgun *possession in the home* violated the Second Amendment." <u>Id.</u> at 635 (emphasis added). <u>Heller</u> did not address when a homeowner may lawfully use a handgun against someone who does no more than knock on their front door and announce their presence. Lastly, <u>State v. Boyett</u>, 2008-NMSC-030, ¶ 15, 185 P.3d 355 is inapplicable because it addressed the justification for killing a home intruder. Here, the Officers did not take any action to enter the residence. For the above reasons, the fourth <u>Larsen</u> factor weighs in the Officers' favor.

> **C.** **<u>Graham</u> Factor 3: It Was Reasonable for the Officers to Believe That Mr. Dotson Was Actively Resisting Arrest.**

The Estate incorporated their response to first <u>Graham</u> factor as their response to the third <u>Graham</u> factor. Accordingly, the Officers incorporate their reply regarding the first <u>Graham</u> factor, <u>supra</u>, as their reply here, demonstrating that this factor weighs in their favor.

> **D.** **Under the Totality of the Circumstances, the Officers' Use of Deadly Force Against Mr. Dotson was Objectively Reasonable.**

In sum, the Estate failed to carry its heavy burden of establishing that, under the totality of the circumstances, the Officers use of deadly force was unreasonable. <u>See</u> Medina, 252 F.3d at 1128 ("If the plaintiff fails to satisfy either part of the [heavy] two-part inquiry, the court must grant the defendant qualified immunity."). All three <u>Graham</u> factors favor the Officers, including the most important factor, whether the Officers reasonably believed Mr. Dotson was going to fire his gun at them or others.

> **E.** **The Officers' Pre-Seizure Conduct Did Not Unreasonably Precipitate Their Need to Use Deadly Force Because They Did Not Compress the Situation.**

The Estate contends the Officers here did not have reasonable suspicion to subject Mr. Dotson to an investigative detention because they knew they were at the wrong address by the time he opened the door and their conduct was therefore reckless. Finally, the Estate contends that the Officers' pre-seizure conduct was reckless because they failed to take a slew of other specific steps the Estate believes would

have averted the need for deadly force. These arguments are legally and factually flawed.

Reviewing its own precedent, the Tenth Circuit has succinctly examined the circumstances when an officer's pre-seizure conduct can be deemed reckless:

> In analyzing conduct immediately associated with a seizure, our cases suggest that recklessness is manifested mostly by "police onslaught at the victim." Valverde, 967 F.3d at 1067. For example, in Allen[ v. City of Muskogge, Okl., the officers ran up to the car while yelling at the victim and attempted to wrench the gun from his hands and open the passenger door. See 119 F.3d [837,] 839-41 [(10th Cir. 1997)]. And in Estate of Ceballos[], the officers quickly approached the victim, screamed at him to drop the bat he was holding, and refused to give ground as the victim walked toward them. See 919 F.3d [at] 1209-11, 1215-16 []. In both cases, "the officers were dealing with an impaired, emotionally distraught person." Valverde, 967 F.3d at 1068.

Arnold v. City of Olathe, Kan., 35 F.4th 778, 789 (10th Cir. 2022). None of the circumstances identified in Arnold are found here. There is no evidence here that the Officers compressed the situation by running up to Mr. Dotson, repeatedly screaming at him, or attempting to wrench the gun from his hand when he opened the door. Instead, the Officers here retreated from the front door before Mr. Dotson opened it and Officer Wasson issued one simple command for Mr. Dotson to put his hands up. Further, Mr. Dotson was not an impaired, emotionally distraught person. Thus, Arnold clearly refutes the Estate's claim that the Officers' pre-seizure conduct was reckless.

The Estate's contention that police may only knock on the front door of a residence if they have reasonable suspicion to conduct an investigative detention is an erroneous statement of law. Like any other visitor, an officer may "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Florida v. Jardines, 569 U.S. 1, 8 (2013). This is "a consensual encounter and therefore does not contravene the Fourth Amendment, *even absent reasonable suspicion*." United States v. Carloss, 818 F.3d 988, 992 (10th Cir. 2016) (internal quotation marks and citation omitted, emphasis added). Based on this binding precedent, the Officers here were not required to have reasonable suspicion to knock on the front door of the residence in an effort to speak with the

51

occupants, even assuming the Officers knew they were at the wrong address.[16]

The Estate's additional contentions – that the Officers were reckless by not announcing their presence for a fourth time, by not staying at the front door after hearing a gun being racked, using a flashlight to illuminate the front door, and parking down the street are contrary to Arnold because those actions would have compressed the situation here. Notably, the Estate did not cite any authority to support these arguments.[17] Therefore, under the totality of the circumstances, the Officers' use of deadly force was reasonable, and they are entitled to qualified immunity.

## II.   ALTERNATIVELY, THE OFFICERS' USE OF DEADLY FORCE AGAINST MR. DOTSON DID NOT VIOLATE THE CLEARLY ESTABLISHED LAW.

The Estate's argument that the law was clearly established relies almost exclusively on Pauly v. White, 874 F.3d 1197 and Knibbs v. Momphard, 30 F.4th 200 (4th Cir. 2022).[18] These cases are inadequate to meet the Estate's clearly established burden.

First, the Estate acknowledges the facts in Pauly are not identical to the facts here but claims that is not required, citing White v. Pauly, 580 U.S. at 79. While White indeed stated that "a case directly on

---

[16]     Even assuming the Officers violated Mr. Dotson's Fourth Amendment right by going to the wrong address, the excessive force claim must be analyzed separately from the unlawful arrest claim. Cortez, 478 F.3d at 1126 ("[I]n a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.").

[17]     The Estate's general reference to the declaration of its expert is insufficient to support its claim that the Officers' pre-seizure conduct was reckless. See D.N.M.LR-Civ. 56.1(b); Malone, 2016 WL 5400381, at *7, n. 34. Even assuming the expert opined in his declaration that the Officers' pre-seizure conduct was recklessness it would be an inadmissible legal conclusion, as fully discussed in footnote 4, supra. See also Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (10th Cir. 2003) (upholding the exclusion of an expert's testimony that defendants acted "recklessly" because the testimony constituted a legal conclusion)

[18]     The Estate also cited generally to Finch v. Rapp, 38 F.4d 1234 (10th Cir. 2022), Carr v. Castle, 337 F.3d 1221 (10th Cir. 2003), and Allen, 119 F.3d 837, but failed to explain how any of these cases support the Estate's position and included no pinpoint cites to assist defense counsel's and the Court's review. See Response, p. 16. Nonetheless, these cases are distinguishable because they all involved *genuine* disputes of *material* fact of which there are none here. See Finch, 38 F.4d at 1239,1232; Carr, 337 F.3d at 337 F.3d 1226-27; Allen, 119 F.3d at 840-41.

point" is not required for a right to be clearly established, the Court warned against defining a clearly established right "at a high level of generality" and emphasized "the clearly established law must be 'particularized' to the facts of the case." Id. (Internal quotation marks and citations omitted). The Court further stated where the "case presents a unique set of facts and circumstances," "[t]his alone [is] an important indication" that the right is not "clearly established." White, 580 U.S. at 80. After White was remanded, the Tenth Circuit in Pauly acknowledged "[f]or a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent." Pauly, 874 F.3d at 1222 (internal quotation marks and citation omitted). Pauly is not close enough on point to the facts here.

As fully addressed on pages 24-25 of MPSJ No. II [Doc. No.42], the circumstances in Pauly are distinguishable in all material respects from the facts of this case, and the Officers will not repeat those arguments here.  Suffice it to say the Estate's attempt to compare Mr. Dotson to the individuals in Pauly who loudly and repeatedly verbalized that they did not know who was outside their rural home on a dark and rainy evening is unpersuasive because the Estate provided no competent evidentiary support to make such comparisons. Moreover, the Officers in Mr. Dotson's line of fire were close by and without cover, while the officer at issue in Pauly was fifty feet away and safely positioned behind the cover of a rock wall. Thus, Pauly fails to overcome the Officers' qualified immunity defense.

Further, the Fourth Circuit's decision in Knibbs is wholly inadequate to meet the Estate's clearly established burden. The Tenth Circuit has concluded that:

> "In the absence of binding precedent specifically adjudicating the right at issue, the right may still be clearly established based on a 'consensus of cases of persuasive authority' from other jurisdictions." [Ullery v. Bradley,] 949 F.3d [1282,] 1294 [(10th Cir. 2020)] (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). And the weight of authority from other circuits may clearly establish the law when *at least six other circuits* have recognized the right at issue. See, e.g., id. (the constitutional question was "beyond debate" where six other circuits agreed on the issue *and there was not "a single decision … shedding doubt on" the issue*); Robbins v. Wilkie, 433 F.3d 755, 770 (10th Cir. 2006) rev'd and remanded on other grounds, 551 U.S. 537 [] (2007) (same); Anaya [v. Crossroads Managed Care Sys., Inc.], 195 F.3d [584,] 595 [(10th Cir. 1999)] (same).

Irizarry v. Yehia, 38 F.4th 1282, 1294 (10th Cir. 2022) (emphasis added). Here, the Estate has failed to demonstrate that there are "at least six other circuits that have recognized the right at issue," only offering one Fourth Circuit opinion. Id.[19] The Estate also failed to demonstrate that "there was not 'a single decision ... shedding doubt on' the issue." Id. (quoting Ullery, 949 F.3d at 1294). There is, in fact, another circuit decision based on highly similar facts that not only sheds doubt on the Estate's position, it contradicts it.

In Powell v. Snook, just after midnight, officers, who were dispatched to a domestic violence call, went to the wrong house. 25 F.4th 912, 916-17 (11th Cir. 2022). The three uniformed officers parked their cars along the street with their lights off. Id. at 917. The police cars could not be seen from the home because of its long driveway. Id. As the officers walked up the driveway, there were no lights on inside or outside the house. Id. It was very dark. Id. Because they were responding to a domestic violence call, the officers approached cautiously to avoid being targeted by the suspected aggressor. Id. The homeowners, who were in their sixties, had been asleep and did not hear any knocks or announcements. Id. Instead, they were awakened by their dogs barking. Id. The husband looked out a window and saw someone outside. Id. He then put on his pants and got his pistol. Id. The husband exited the residence through the garage at which time the garage lights came on. Id. at 917-18. All other house lights were still off. Id. at 918. The husband walked out onto the driveway which took about nine seconds and then stopped and turned to face the walkway leading to the front door, which was where one of the officers was positioned in the dark. Id. When the husband stopped walking, his arms were pointed straight down with the pistol in his right hand. Id. The officers did not identify themselves at any time. Id. The wife, who had followed her husband onto the driveway, sensed he was looking at someone. Id. The husband started to raise his gun in the officer's

---

[19]     Even if this Court considers Knibbs in its analysis, the opinion is not close enough on point. Pauly, 874 F.3d at 1222. In Knibbs, a deputy approached the suspect's home and shot the victim through the front window "simply because he stood in his living room holding a shotgun." Id. at 214. Importantly, there was no video evidence of the encounter, and the forensic evidence indicated the shotgun barrel was pointed upward toward the ceiling, not toward the officer. Id., at 210-211. Under those materially different facts, the Fourth Circuit held, if a jury found that the officer shot Knibbs "simply because he had possession of a firearm within the confines of his own home," that would violate the Fourth Amendment. Id. at 221-222.

direction. Id. In response, the officer went down one knee and shot the husband, killing him. Id.

   The wife filed suit arguing that the officer was not entitled to qualified immunity because it was clearly established that the officer could not use deadly force without first identifying himself and issuing a warning. Id. at 919. The Eleventh Circuit disagreed, holding that the officer was entitled to qualified immunity because the law was not clearly established "that a warning was required in the 17.8 seconds" that lapsed between the husband pushing the garage door button and raising his pistol in the officer's direction. Id. at 924. The Eleventh Circuit reasoned that an officer was not always required to "warn his suspect before firing – particularly where such a warning might easily have cost the officer his life." Id. 922 (also stating  when a suspect's gun is "available for ready use," an officer is "not required to wait and hope for the best."). Thus, the Eleventh Circuit's decision in Powell demonstrates that there is another circuit decision "shedding doubt" on the Estate's claim that the law is clearly established. Accordingly, the Estate cannot meet its burden of showing the law was clearly established by relying on the Fourth Circuit's decision in Knibbs.

   Finally, the Estate's efforts to distinguish the cases the Officers relied upon are unpersuasive. First, the Estate incorrectly claims Wilson v. Meeks, 52 F.3d 1547 is inapplicable here because the Tenth Circuit did not consider whether the officer's own reckless conduct created the need to use deadly force. In fact, the Tenth Circuit considered and rejected plaintiffs' claim that the officer's action – commanding the suspect to show his hand – caused the subsequent confrontation. Wilson, 52 F.3d at 1554.  Next, the Estate claims Wilson is inapplicable because the suspect knew he was dealing with a police officer while Mr. Dotson did not know he was responding to law enforcement at the door. This argument is factually unsupported and immaterial to the Court's analysis. The Estate failed to offer any admissible evidence as to what Mr. Dotson did, heard, saw, knew or intended once he left the bedroom and went downstairs. See Replies in support of UMF Nos. 48-49, 55-56, 61-62, 78, 81-82, 85, 88, supra. Even if the Court were to presume that Mr. Dotson did not know police were outside, Wilson made clear "[t]he inquiry here is not into [Mr. Dotson's] state of mind or intentions, but whether, from an objective viewpoint and taking all

Case 1:23-cv-00790-MLG-KK   Document 63   Filed 05/24/24   Page 56 of 57

factors into consideration, [the Officers] reasonably feared for [their lives]" or the lives of others. Wilson, 52 F.3d at 1553–54.

Next, the Estate points out that Johnson, 752 F.App'x 646 is an unpublished and not binding precedent, but failed to respond, let alone refute, the Officers' reliance on Grissom v Roberts, 902 F.3d 1162, 1168 (10th Cir. 2018) wherein the Tenth Circuit said, "we could be hard pressed to say that a proposition of law was clearly established ... when an unpublished decision by a panel of this court said the opposite." Moreover, the Estate unpersuasively claims that Johnson is distinguishable because the subject in that case opened the door "quickly" after the officer knocked and announced, while here 30 seconds allegedly passed between Officer Wasson's third knock and announcement and Mr. Dotson opening the front door. The time frame here does not serve to undermine the premise in Johnson that an officer can "properly assume that anyone who heard the knock on the door also heard [the officer] announce 'Roswell Police.'" 752 F. App'x at 651. While the court does continue by saying this is "particularly" true when an announcement occurs just before the door is opened, the use of the word "particularly" only makes the underlying proposition true to a higher degree than normal. See https://dictionary.cambridge.org/us/dictionary/english/particularly#google_vignette. It does not undermine the central proposition.[20] The Estate's additional claim that the subject in Johnson could see the officers when he opened the door does not serve to distinguish the instant case. Similar to Johnson, here, there was no manifest indication that Mr. Dotson did not know police were at his door. As previously explained in this Reply, the Estate offered no admissible evidence as to what Mr. Dotson heard, saw or knew when he opened the door. The Estate's contention that he was blinded by the flashlight is unsupported speculation.

Thus, after the parties' survey of the decisions regarding the reasonableness of lethal force against a subject who responds to an officer's efforts to make contact by aiming a gun in the officers' general direction, it is clear that this is an area of law which is highly fact-dependant and there is no case close

---

[20]     The Estate also attempts to distinguish Redd, 2021 WL 3909982, *12 but the Officers did cite it to support the clearly established prong. Thus, the Officers do not address this decision here.

enough on point to place the unlawfulness of the Officers' actions beyond debate. Accordingly, the Officers are entitled to qualified immunity because the law was not clearly established on April 5, 2023 that their actions were unreasonable.

**WHEREFORE,** the Officers respectfully request this Court grant their Motion for Partial Summary Judgement No. II and dismiss the Estate's Fourth Amendment unreasonable seizure and excessive force claims against the Officers with prejudice.

Respectfully submitted,

**ROBLES, RAEL & ANAYA, P.C.**

By:      /s/ Luis Robles
Luis Robles
**Attorney for City Defendants**
200 3rd St., NW, Suite 500
Albuquerque, New Mexico 87102-3334
(505) 242-2228
(505) 242-1106 (facsimile)
luis@roblesrael.com

I hereby certify that the foregoing was
electronically filed through the CM/ECF
on this 24th day of May, 2024, which will
cause service to all counsel of record.

 /s/ Luis Robles
Luis Robles