IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ERNEST PADILLA, PERSONAL REPRESENTATIVE**
**OF THE ESTATE OF ROBERT DOTSON, DECEASED;**
**KIMBERLY DOTSON,**
**INDIVIDUALLY AND AS PARENT AND NEXT FRIEND**
**OF JULIA**
**DOTSON; AND ZACHARY-MORA DOTSON,**

Plaintiffs,

**vs.**                                                        **Case No. 1:23-cv-00790-MLG-KK**

**CITY OF FARMINGTON, NEW MEXICO;**
**DANIEL ESTRADA; DYLAN GOODLUCK;**
**AND WAYLON WASSON,**

Defendants.

**DEFENDANTS DANIEL ESTRADA, DYLAN GOODLUCK AND**
**WAYLON WASSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT No. IV:**
**DISMISSAL OF PLAINTIFFS' HOMICIDE AND SIMPLE NEGLIGENCE**
**CLAIMS PURSUANT TO THE NEW MEXICO TORT CLAIMS ACT**

Defendants, Daniel Estrada, Dylan Goodluck, and Waylon Wasson, through their

attorneys, Robles, Rael and Anaya, P.C. (Luis Robles), state the following for their Motion for

Partial Summary Judgment No. IV: Dismissal of Plaintiffs' Homicide and Simple Negligence

Claims Pursuant to the New Mexico Tort Claims Act ("*MPSJ No. IV*"):[1]

**INTRODUCTION**

This case arises from the April 5, 2023, officer-involved shooting by Farmington Police

---

[1]    As required by D.N.M.LR-Civ. 7.1(a), defense counsel contacted Plaintiffs'
counsel on October 14, 2024 to determine Plaintiffs' position on this *MPSJ No. IV*.  Plaintiffs
oppose this motion.

Department ("FPD") Officers Waylon Wasson ("Officer Wasson"), Dylan Goodluck ("Officer Goodluck") and Daniel Estrada ("Officer Estrada") (collectively "the Officers"). The Officers, all of whom were in uniform, were dispatched at approximately 11:30 p.m. to a domestic violence call at 5308 Valley View Avenue. Instead of going to the home where the domestic violence call was reported, the officers mistakenly knocked at the door of a home on the other side of the street – 5305 Valley View Avenue – the residence of Robert Dotson ("Mr. Dotson"), Kimberly Dotson ("Ms. Dotson") and their two teenage children, Julia Dotson and Zachary Mora-Dotson (the "children").

Officer Wasson repeatedly knocked on the front door and repeatedly announced the Officers' presence as "Farmington Police." Although Mr. Dotson heard the knock, Plaintiffs allege he did not hear the announcements because Mr. Dotson and Ms. Dotson were upstairs in their bedroom. Mr. Dotson went downstairs and opened the front door armed with a gun because he allegedly did not know who was knocking at that time of night. The Officers saw that Mr. Dotson was armed with a gun. Officer Wasson ordered Mr. Dotson to put his hands up. Mr. Dotson disregarded Officer Wasson's command and took hold of the firearm with both hands and raised it in a shooting stance, aiming in the direction of Officers Wasson and Estrada. The Officers were forced to use deadly force to stop the imminent threat of death or great bodily harm posed by Mr. Dotson, which they did by firing their service weapons.

Ms. Dotson alleges she heard the gunfire and went downstairs where she discovered her husband lying in the front doorway. Ms. Dotson admits she then fired a gun at whoever shot at her husband but alleges she did not know it was police who were in her front yard. Officers Wasson and Estrada returned fire, but Ms. Dotson was not hit. Non-defendant FPD officers

subsequently handcuffed and detained Ms. Dotson.

Other non-defendant FPD officers made contact with the children upstairs and remained with them while a plan was made to escort them out of the residence without having to see their deceased father. The children were then escorted out of the home together and transported together to the local police station to await family and to be interviewed by New Mexico State Police, the agency investigating the officer-involved shooting. The children were never handcuffed, and they were permitted to go into different rooms unescorted both at home and at the police station.

Pursuant to the New Mexico Tort Claims Act ("NMTCA" or "Act"), Plaintiffs allege the following:

> The tortious acts of the Defendant officers (assault, battery, homicide, and negligence in going to the wrong address) resulted in the death of Robert Dotson and injury to each of the Plaintiffs. The detention of Kim Dotson, Zach Mora-Dotson, and Julia Dotson constitutes false imprisonment. [] Additionally, the City of Farmington failed to properly train and monitor the Defendant officers in proper use of force and continued to allow Officers Wasson and Estrada to be armed and on patrol in spite of issues with their prior wrongful conduct which were known to the City as of the date Robert Dotson was shot to death.

*Plaintiffs' First Amended Original Complaint*, ¶ 26-27 (filed Jan. 23, 2024*) [Doc. 27] ("*Amended Complaint*").

This *MPSJ No. IV* addresses only Plaintiffs' claims of "homicide" and "negligence in going to the wrong address." The NMTCA does not waive immunity for these claims because they are not enumerated torts under Section 41-4-12 of the Act.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     As allowed by D.N.M.LR-Civ. 7.1(a), the Officers hereby incorporate by reference paragraphs 1-147 of the Statement of Undisputed Material Facts ("UMF") set forth in their *Motion for Partial Summary Judgment No. I: Dismissal of Julia Dotson and Zachary Mora-Dotson's*

*Fourth Amendment Illegal Seizure Claims Against the Officers Based on the Application of Qualified Immunity*, pp. 4-36 (filed Feb. 19, 2024) [Doc. No. 35] ("*MPSJ No. I*") as though fully set forth herein.

2.      Kimberly Dotson was not struck by any of Officer Wasson's or Officer Estrada's rounds.  See Sergeant Christopher LaMonica's body worn camera video (April 5-6, 2023), 11:29-12:01, attached as **Exhibit T** to City Defendants' *MPSJ No. I* [Doc. No. 35] and attached to *City Defendants' Notice of Filing Media Exhibits to City Defendants' MPSJ No. I* [Doc. No. 36] (showing Ms. Dotson exiting the residence uninjured after Officers Wasson and Estrada returned fire); see also generally Farmington Police Case Report Detail, Case Number 2023-00019241, p. 2, attached as **Exhibit U** to City Defendants' *MPSJ No. I* [Doc. No. 35-14] (Officer B. Lin's narrative describing his contact with Ms. Dotson after she exited the residence and there being no indication of any gunshot wounds to her person).

## LEGAL ARGUMENT

Plaintiffs claim the Officers committed the torts of "homicide" and "negligence in going to the wrong address."  *Amended Complaint*, ¶ 26 [Doc. 27].  Plaintiffs further allege that Section 41-4-12 of the NMTCA waives immunity for these "torts."  Id., ¶ 25.  However, homicide and simple negligence (*i.e.*, "negligence in going to the wrong address") are not enumerated torts under Section 41-4-12 of the NMTCA.  The Court should therefore grant summary judgment on these claims in favor of the Officers and dismiss the claims with prejudice.

## I.      A PLAINTIFF MUST SPECIFICALLY ALLEGE ONE OF THE ENUMERATED TORTS LISTED IN THE NMTCA TO OVERCOME AN OFFICER'S IMMUNITY.

"As a general rule, governmental entities are immune from tort liability."  Milliron      v. County of San Juan, 2016-NMCA-096, ¶ 9, 384 P.3d 1089.  "A plaintiff must specifically allege

4

one of the enumerated torts listed in the statute to overcome an officer's immunity under Section 41-4-4." Dickson v. City of Clovis, 2010-NMCA-058, ¶ 17, 242 P.3d 398, 403; see NMSA 1978, § 41-4-4(A) ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived . . . by Sections 41-4-5 through 41-4-12 NMSA 1978."). Unless a plaintiff can show their claim falls under one of the specific exceptions identified under the NMTCA, the court must dismiss such claim. See Pemberton v. Cordova, 1987-NMCA-020, ¶ 6, 734 P.2d 254, 256 ("If no specific waiver of immunity can be found in the Tort Claims Act, plaintiffs' complaint must be dismissed as to the governmental defendant."), limited on other grounds by Callaway v. N.M. Dep't of Corrections, 1994-NMCA-049, ¶ 17, 875 P.2d 393, 398-99; see also Thompson v. City of Albuquerque, 2017-NMCA-002, ¶ 8, 386 P.3d 1015, aff'd, 2017-NMSC-021, 397 P.3d 1279 (a claim "must fit within one of the exceptions to the immunity granted, or it may not be maintained.") (citation omitted).

Here, Plaintiffs cite Section 41-4-12 of the NMTCA, the law enforcement exception, as the applicable waiver of immunity in this case. *Amended Complaint*, ¶ 25 [Doc. 27]. This waiver provides, in pertinent part:

> immunity . . . does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978, § 41-4-12.[1]

The New Mexico Legislature explicitly retained some immunity for law enforcement officers to 1) "protect the public treasuries[;]" 2) "enable[] the government and its various subdivisions to function unhampered by the threat of time and energy consuming legal actions which would inhibit the administration of traditional state activities[;]" and 3) "effectively carry out its services[.]"  Garcia v. Albuquerque Pub. Sch. Bd. of Ed., 1980-NMCA-081, ¶ 8, 622 P.2d 699, 702.  "The Legislature did not leave room in the list for other acts [or] negligence.  Indeed, if the Legislature had intended to include other acts or the tort of simple negligence, it could have done so."  Dickson, 2010-NMCA-058, ¶ 18, 242 P.3d at 403 (citing City of Roswell v. Smith, 2006-NMCA-040, ¶ 12, 133 P.3d 271, 274 (noting the Legislature could have included language in a statute if it had so desired)).

## II.   HOMICIDE IS NOT AN ENUMERATED TORT UNDER SECTION 41-4-12 OF THE NMTCA.

While Section 41-4-12 enumerates several torts for which immunity is waived, homicide is conspicuously absent from the list; it is not one of the enumerated torts in the NMTCA.  This makes sense given that homicide is not a tortious act; it is a criminal act.  See NMSA 1978, § 30-2-1 to 30-2-9 (indicating that homicide is part of the Criminal Code); see also generally State v.

---

[1]     For purposes of Section 41-4-12, the term "law enforcement officer" is defined as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes."  NMSA 1978, § 41-4-12; see NMSA 1978, § 41-4-3(D) (the "Definitions" section of the NMTCA defines a "law enforcement officer" as a "full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor."). For purposes of the instant motion, the Officers do not dispute that they are "law enforcement officers" under the NMTCA.

Wilson, 2011-NMSC-001, ¶¶ 19-28, 248 P.3d 315 (wherein the New Mexico Supreme Court engaged in a review of the evidence to show that the crime of homicide had taken place), overruled in part on other grounds by State v. Tollardo, 2012-NMSC-008, ¶ 37, 275 P.3d 110, 121.

Here, Plaintiffs cannot demonstrate that "homicide" is one of the torts enumerated in Section 41-4-12.[2]  The defense's own research did not reveal any New Mexico case recognizing "homicide" as a tort, much less a tort for which immunity has been waived by Section 41-4-12 of the NMTCA.  As such, the Court must grant summary judgment in the Officers' favor on Plaintiffs' asserted tort of "homicide."  See Pemberton, supra, at ¶ 6, 734 P.2d at 256; see also Thompson, supra, at ¶ 8, 386 P.3d 1015.

## III.    THE NMTCA DOES NOT WAIVE IMMUNITY FOR PLAINTIFFS' CLAIM OF NEGLIGENCE IN GOING TO THE WRONG ADDRESS.

Plaintiffs also assert a claim for the Officers' "negligence in going to the wrong address." This is tantamount to a claim of simple negligence or a stand-alone claim of negligence.  However, New Mexico courts have repeatedly concluded that simple negligence or a stand-alone claim of negligence is not an enumerated tort under Section 41-4-12 of the NMTCA.  See, e.g., Bober v. New Mexico State Fair, 1991-NMSC-031, ¶ 32, 808 P.2d 614, 624 (stating "no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section."); Lessen v. City of Albuquerque, 2008-NMCA-085, ¶ 35, 187 P.3d 179) ("[I]t is well established in New Mexico that Section 41-4-12 immunity is not

---

[2]     Even if this Court were to conclude that "homicide" is an enumerated tort under Section 41-4-12, such a claim would only apply to Mr. Dotson because he was the only Plaintiff killed as a result of the incident.  Thus, Ms. Dotson and the children could not assert a viable homicide claim.  The Officers only raise this obvious point because of the vague nature in which Plaintiffs asserted the homicide claim in the Amended Complaint.  See Amended Complaint, ¶ 26 [Doc. No. 27].

waived in an action for negligence standing alone.").  Therefore, Plaintiffs' claim for the Officers'

"negligence in going to the wrong address" fails as a matter of law.

Even if Plaintiffs assert that the Officers' own negligence caused them to commit one of

the torts enumerated under Section 41-4-12, such a claim also fails as a matter of law.  It is well

established in New Mexico that allegations of negligence under Section 41-4-12 are appropriate

only to the extent that a law enforcement officer's negligence is alleged to have caused

a *third party* to commit one of the intentional torts listed in this section.  See, e.g., Lessen v. City

of Albuquerque, 2008-NMCA-085, ¶ 39, 187 P.3d 179, 187 ("Thus, at least with respect to the

torts enumerated in Section 41–4–12, allegations of negligence are appropriate only to the extent

that a law enforcement officer's negligence is alleged to have caused a third party to commit one

of the specified intentional torts.").[3]  In another officer-involved shooting case, the Honorable M.

Christina Armijo explicitly rejected the estate's proposition that a law enforcement officer can be

held liable for his own negligence under the NMTCA when the alleged negligence relates to

enumerated acts under Section 41-4-12 that are committed by that same officer.  See L'Esperance

v. Mings, No. CIV-02-0258 MCA/RLP, 2003 WL 27385139, at *3 (D.N.M. June 18, 2003).  Judge

Armijo explained that:

---

[3]     Citing Blea v. City of Espanola, 1994-NMCA-008, ¶¶ 12-16, 870 P.2d 755, 757–
59 (reversing dismissal of claim that the officers' negligence caused third party to drive while
intoxicated and collide with vehicle being driven by the plaintiff's decedent); Cross v. City of
Clovis, 1988-NMCA-045, ¶ 8, 755 P.2d 589, 591 (noting that complaint alleged that police officers
negligently established or maintained a roadblock through which third party sped and crashed into
and killed the plaintiff's decedent); Schear v. Bd. of County Comm'rs, 1984-NMSC-079, 687 P.2d
728 (reversing dismissal of complaint alleging that sheriff's officers' negligent response to a call
reporting a crime in progress resulted in the plaintiff being raped by a third party); Methola v.
Eddy County, 1980-NMSC-145, ¶¶ 4, 26, 622 P.2d 234, 235, 239 (reversing judgments in favor
of the defendant officers where the plaintiffs had alleged that the officers' negligence resulted in
the inmate plaintiffs being assaulted by other inmates).

> [The estate's] argument defies logic and common sense. A person cannot commit an enumerated act of assault or battery, [for example,] which are *intentional* torts, and at the same time be negligent with respect to those acts. [citation omitted]. Because the existing precedent in New Mexico provides that immunity for an officer's negligence is not waived unless a third party commits one of the acts enumerated in N.M. Stat. Ann. § 41-4-12, the Estate's negligence claim against [Officer] Mings must be dismissed.

Id. (emphasis in original).

Here, there is no allegation and no evidence that the Officers' purported negligence in going to the wrong address caused a third party to commit one of the enumerated torts. Further, Plaintiffs' cannot save this claim by asserting that the Officers' own negligence in going to the wrong addressed caused those same Officers to commit an enumerated tort. As such, the NMTCA does not waive immunity for Plaintiffs' asserted tort of "negligence in going to the wrong address," and the Court should grant summary judgment in the Officers' favor on this claim.

## CONCLUSION

Plaintiffs' claims for "homicide" and "negligence in going to the wrong address" are not enumerated torts under Section 41-4-12 of the NMTCA. This means they are not valid tort claims, and Officers Estrada, Goodluck, and Wasson are entitled to the immunity granted by Section 41-4-4 of the NMTCA. Thus, Plaintiffs' claims cannot be maintained and summary judgment in the Officers' favor is proper.

**WHEREFORE,** City Defendants respectfully request that this Court grant their Motion for Partial Summary Judgment No. IV: Dismissal of Plaintiffs' Homicide and Simple Negligence Claims and dismiss with prejudice Plaintiffs' claims of homicide and negligence in going to the wrong address against the Officers.

Respectfully submitted,

**ROBLES, RAEL & ANAYA, P.C.**


By:      /s/ Luis Robles
         Luis Robles
         Attorney for Defendants
         200 3rd St., NW, Suite 500
         Albuquerque, New Mexico 87102-3334
         (505) 242-2228
         (505) 242-1106 (facsimile)
         luis@roblesrael.com

I hereby certify that the foregoing was
electronically filed through the CM/ECF
on this 17th  day of October 2024, which will
cause service to all counsel of record.


 /s/ Luis Robles
Luis Robles