IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNEST PADILLA, PERSONAL REPRESENTATIVE
OF THE ESTATE OF ROBERT DOTSON, DECEASED;
KIMBERLY DOTSON,
INDIVIDUALLY AND AS PARENT AND NEXT FRIEND
OF JULIA
DOTSON; AND ZACHARY MORA-DOTSON,

       Plaintiffs,

vs.                                     Case No. 1:23-cv-00790-MLG-KK

CITY OF FARMINGTON, NEW MEXICO;
DANIEL ESTRADA; DYLAN GOODLUCK;
AND WAYLON WASSON,

       Defendants.

**DEFENDANTS DANIEL ESTRADA, DYLAN GOODLUCK AND WAYLON WASSON'S
MOTION FOR PARTIAL SUMMARY JUDGMENT No. V: DISMISSAL OF
MS. DOTSON'S AND THE ESTATE'S ASSAULT AND BATTERY CLAIMS**

       Defendants, Daniel Estrada, Dylan Goodluck, and Waylon Wasson, through their attorneys,

Robles, Rael and Anaya, P.C. (Luis Robles), state the following for their *Motion for Partial Summary
Judgment No. V: Dismissal of Ms. Dotson's and the Estate's Assault and Battery Claims* ("*MPSJ No.
V*"):[1]

**INTRODUCTION**

       This case arises from the April 5, 2023, officer-involved shooting by Farmington Police

Department ("FPD") Officers Waylon Wasson ("Officer Wasson"), Dylan Goodluck ("Officer

Goodluck") and Daniel Estrada ("Officer Estrada") (collectively "the Officers").  The Officers, all of

whom were in uniform, were dispatched at approximately 11:30 p.m. to a domestic violence call at 5308

Valley View Avenue.  Instead of going to the home where the domestic disturbance was reported, the

---

[1]      As required by D.N.M.LR-Civ. 7.1(a), defense counsel contacted Plaintiffs' counsel on November 27,
2024 to determine Plaintiffs' position on this *MPSJ No. V*.  Plaintiffs oppose this motion.

Officers mistakenly knocked at the door of a home on the other side of the street – 5305 Valley View Avenue – the residence of Robert Dotson ("Mr. Dotson"), Kimberly Dotson ("Ms. Dotson") and their two teenage children, Julia Dotson and Zachary Mora-Dotson (the "children").

Officer Wasson repeatedly knocked on the front door and repeatedly announced the Officers' presence as "Farmington Police."  Although Mr. Dotson heard the knock, Plaintiffs allege he did not hear the announcements because he and Ms. Dotson were upstairs in their bedroom.   Mr. Dotson went downstairs and opened the front door armed with a gun because he allegedly did not know who was knocking at that time of night.  The Officers saw that Mr. Dotson was armed with a gun.  Officer Wasson ordered Mr. Dotson to put his hands up.  Mr. Dotson disregarded Officer Wasson's command, took hold of the firearm with both hands and raised it in a shooting stance, aiming in the direction of Officers Wasson and Estrada.  The Officers were forced to use deadly force to stop the imminent threat of death or great bodily harm posed by Mr. Dotson, which they did by firing their service weapons.  Ms. Dotson alleges she heard the gunfire and went downstairs where she discovered her husband lying in the doorway.  Ms. Dotson admits she then fired a gun at whoever shot at her husband but alleges she did not know it was the police who were in her front yard.  Officers Wasson and Estrada returned fire, but Ms. Dotson was not hit.  Non-defendant FPD officers subsequently handcuffed and detained Ms. Dotson.

Other non-defendant FPD officers made contact with the children upstairs and remained with them while a plan was made to escort them out of the residence without having to see their deceased father.  The children were then escorted out of the home together and transported together to the local police station to await family and to be interviewed by New Mexico State Police ("NMSP"), the agency investigating the officer-involved shooting.  The children were never handcuffed, and they were permitted to go into different rooms unescorted both at home and at the police station.

 Pursuant to the New Mexico Tort Claims Act ("NMTCA" or "Act"), Plaintiffs allege the following:

The tortious acts of the Defendant officers (assault, battery, homicide, and negligence in going to the wrong address) resulted in the death of Robert Dotson and injury to each of the Plaintiffs.  The detention of Kim Dotson, Zach Mora-Dotson, and Julia Dotson constitutes false imprisonment.  [Further,] the City of Farmington failed to properly train and monitor the Defendant officers in proper use of force and continued to allow Officers Wasson and Estrada to be armed and on patrol in spite of issues with their prior wrongful conduct which were known to the City as of the date Robert Dotson was shot to death.

*Plaintiffs' First Amended Original Complaint*, ¶¶ 26-27 (filed Jan. 23, 2024*) [Doc. No. 27] ("*Amended Complaint*").  This *MPSJ No. V* addresses the assault and battery claims alleged by Ms. Dotson and the Estate.[2]

The Officers are entitled to summary judgment on Ms. Dotson's assault and battery claims for two reasons.  First, Officer Goodluck did not return fire upon Ms. Dotson and therefore did not commit the torts of assault or battery against her.  Second, Officers Wasson and Estrada had probable cause to use deadly force against Ms. Dotson and were privileged to do so, thereby defeating her assault and battery claims.

The Officers are also entitled to summary judgment on the Estate's assault and battery claims against the Officers.  The Officers were privileged to use deadly force against Mr. Dotson because they had probable cause to believe he posed a deadly threat.  Therefore, the Court should grant summary judgment in favor of the Officers on Ms. Dotson's and the Estate's assault and battery claims.

**UNDISPUTED MATERIAL FACTS**

1.    As allowed by D.N.M.LR-Civ. 7.1(a), the Officers hereby incorporate by reference paragraphs 1-132 and 145 of the Statement of Undisputed Material Facts ("UMF") set forth in *City Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs Julia Dotson and Zachary Mora-Dotson's Fourth Amendment Illegal Seizure Claims Against the Officers Based on the Application of Qualified Immunity*, pp. 4-36, 39 (filed Feb. 19, 2024) [Doc. No. 35] ("*MPSJ No. I*"), as

---

[2]    The children's assault and battery claims are addressed in a separate motion.

though fully set forth herein.[3]

2.      As allowed by D.N.M.LR-Civ. 7.1(a), Defendants hereby incorporate by reference paragraph 2 of the Statement of Undisputed Material Facts set forth in their *City Defendants' Motion for Partial Summary Judgment No. III: Dismissal of Kimberly Dotson's Fourth Amendment Unreasonable Seizure Claim Against the Officers Based on the Application of Qualified Immunity*, p. 5 (filed March 11, 2024) [Doc. 43] ("*MPSJ No. III*"), as though fully set forth herein.

## LEGAL ARGUMENT

Plaintiffs' *Amended Complaint* alleges that "[t]he tortious acts of the Defendant officers, assault [and] battery, . . . resulted in the death of Robert Dotson and injury to each of the Plaintiffs." *Amended Complaint*, ¶ 26 [Doc. No. 27]. It is difficult to discern the alleged conduct and injury comprising the alleged torts of assault and battery against Ms. Dotson, as the claims are vaguely plead with a conclusory statement, but her claims fail under any theory. The Officers were either not involved, the elements of the claims lack supporting evidence, and/or the Officers are entitled to the qualified privilege defense. Thus, the Officers cannot be held liable for assault or battery against Ms. Dotson.

Additionally, the Officers are entitled to the qualified privilege defense and cannot be liable for assault and battery against Mr. Dotson because they objectively and subjectively believed that deadly force was reasonably necessary. Thus, the Court should grant summary judgment on Ms. Dotson's and the Estate's assault and battery claims against the Officers and dismiss these claims with prejudice.

## I.    LEGAL STANDARDS FOR THE TORTS OF ASSAULT AND BATTERY.

### A.    New Mexico Tort Claims Act Immunity.

Plaintiffs cite Section 41-4-12 of the NMTCA, the law enforcement exception, as the applicable waiver of immunity in this case. *Amended Complaint*, ¶ 25 [Doc. No. 27]. This waiver provides, in

---

[3]      Plaintiffs' objections to the UMFs have been resolved by this Court in City Defendants' favor. See *Order Overruling Plaintiffs' Objections To Defendants' Motion For Summary Judgment Exhibits* (Aug. 20, 2024) [Doc. No. 71].

pertinent part:

> immunity . . . does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978, § 41-4-12.  Assault and battery are enumerated torts under the NMTCA, and immunity may be waived if an assault or battery is committed by a law enforcement officer.[4]

### B.    The Tort of Assault.

To establish liability for the tort of assault under New Mexico law, the defendant "need only intend to cause another to be put in imminent apprehension of harmful or offensive conduct, but the contact need not occur."  Hernandez v. Parker, 2022-NMCA-023, ¶ 28, 508 P.3d 947 (citing Restatement (Second) of Torts § 21 (Am. L. Inst. 1965) (defining assault)).  In other words, "there must have been an [unlawful] 'act, threat[,] or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery.'"  Baca v. Velez, 1992-NMCA-053, ¶ 4, 114 N.M. 13, 833 P.2d 1194 (quoting NMSA 1978, § 30-3-1(B)).  "[T]he intent required by state tort law is not a malicious intent to cause harm, but rather the intent to perform the actions, combined with the belief that certain consequences are 'substantially certain to result.'"  Tanberg v. Sholtis, 401 F.3d 1151, 1168 (10th Cir. 2005) (quoting California First Bank v. State, 1990-NMSC-106, ¶ 34 n. 6, 111 N.M. 64, 801 P.2d 646 (1990) (quoting

---

[4]    For purposes of Section 41-4-12 of the NMTCA, the term "law enforcement officer" is defined as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." NMSA 1978, § 41-4-12; see also NMSA 1978, § 41-4-3(D) (the "Definitions" section of the NMTCA defines a "law enforcement officer" as a "full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.").  "New Mexico courts have construed this definition strictly." Williams v. Bd. of Regents of the Univ. of New Mexico, 20 F. Supp. 3d 1177, 1190 (D.N.M. 2014) (internal quotation marks and citation omitted).  For purposes of this *MPSJ No. V*, the Officers do not dispute that they are "law enforcement officers" under the NMTCA.

Restatement (Second) of Torts § 8A (1965)).  The plaintiff must demonstrate both an objective and subjective component regarding his perception of a threat.  See State v. Arrendondo, 2012-NMSC-013, ¶ 15, 278 P.3d 517 ("Our law of assault generally requires evidence that the victim actually, subjectively comprehended that he or she was going to receive unwelcome physical contact."); see also id. ¶ 14 ("The requirement that the victim must *actually believe*, and that a *reasonable person* in the victim's circumstance also *would believe*, that he or she was about to be assaulted indicates a dual subjective and objective test . . . . Therefore, the [s]tate's evidence must satisfy both a subjective and an objective standard.") (emphasis in original); State v. Rudolfo, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (interpreting a focus on the person's actual perception as subjective and deeming an "acted reasonably" requirement as objective).  Thus, a tort of assault requires proof that the defendant acted with intent and the individual was subjectively and objectively in imminent apprehension of harmful or offensive contact.

### C.    The Tort of Battery.

"While assault and battery are closely related, one may exist without the other."  Baca, 1992-NMCA-053, ¶ 4 (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 10, at 46 (5th ed. 1984)).  Under New Mexico law, "one commits [the tort of] battery when (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." Milliron v. County of San Juan, 2016-NMCA-096, ¶ 18, 384 P.3d 1089; see also Restatement (Second) of Torts § 18 (same); Hernandez, 2022-NMCA-023, ¶ 27 ("the Restatement (Second) of Torts § 18 appropriately defines the elements for civil battery and assault"); NMSA 1978, § 30-3-4 (1963) (in the criminal context, battery is "the unlawful intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner.").  "The intent required to commit battery extends only to the physical touching at issue and not to the resulting harm."  Milliron, 2016-NMCA-096, ¶ 18.

**D.    Police Officers May Not Be Held Liable in an Action for Assault and Battery for the Use of Reasonably Necessary Force in the Enforcement of the Law.**

Even if there is a finding that a law enforcement officer committed assault and/or battery, officers are privileged to use force when the force is both subjectively and objectively "reasonably necessary in the enforcement of law and the preservation of order."  Reynaga v. Cnty. of Bernalillo, 64 F.3d 670, 1995 WL 503973, at *2 (10th Cir. 1995) (table); Hernandez v. Parker, 2022-NMCA-023, ¶ 31 (same).

The New Mexico Court of Appeals recently explained that officers may use reasonable force without being liable for tort claims:

> Police officers may not be held liable in an action for assault and battery for the use of reasonably necessary force in the enforcement of the law.  Officers are privileged to use force or commit battery when making a lawful arrest.  The test for qualified privilege in an assault and battery suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation.

> The use of deadly force by a peace officer is privileged where used to prevent death or serious bodily harm to the officer or other persons.

Hernandez, 2022-NMCA-023, ¶ 31 (quoting 6 Am. Jur. 2d, Assault & Battery § 104 (2021)); contra Favela v. City of Las Cruces ex rel. Las Cruces Police Dep't, 398 F. Supp. 3d 858, 922 (D.N.M. 2019) ("An officer can be held liable for assault and battery if he uses excessive force.") (internal quotations omitted).  "[T]he traditional defenses for law enforcement to assert in response to civil assault and battery claims are not the same as the 'objectively reasonable officer' standard that is at the root of Fourth Amendment analysis" because "the 'general rule' . . . include[s] both an objective and a subjective test." Hernandez, 2022-NMCA-023, ¶¶ 31-32; Cruz v. City of Deming, No. 2:22-CV-00957-MIS-GJF, 2023 WL 8602866, at *10 (D.N.M. Dec. 12, 2023) (slip opinion) (Strickland, J.) ("Under the subjective and objective inquiry, an officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is [also] compared to that of a hypothetical reasonable police officer placed in the same situation.") (citing Hernandez, 2022-NMCA-023, ¶ 31); Cordova v. City of Albuquerque, No. A-1-CA-40035, 2024 WL 3880063, at *2, n. 3 (N.M. Ct. App. Aug. 20, 2024) (not reported) (Attrep,

Chief J.) (stating "[t]his Court . . . recently explained [in Hernandez] that assault and battery claims brought pursuant to the [NM]TCA are distinct from excessive use of force claims alleging a violation of the Fourth Amendment" due to the additional subjective element). Thus, the standard for qualified privilege now includes both an objective and subjective inquiry.

Also different is that "[w]hile the qualified immunity analysis for a federal claim shifts the burden of proof to the plaintiff, for tort claims under the NMTCA, defendants bear the burden of establishing the 'defense' that the force used was reasonable and privileged." Cruz, 2023 WL 8602866, at *10 (citing Hernandez, 2022-NMCA-023, ¶ 35).

Regarding the objective component, federal district courts have recognized the parallel between federal excessive force claims and state law assault and battery claims when analyzing such claims under the NMTCA. See Favela, 398 F. Supp. at 922 ("An officer can be held liable for assault and battery if he uses excessive force.") (internal quotations omitted); Pena v. Greffet, 922 F. Supp. 2d 1187, 1229 (D.N.M. 2013) (same quote). Analyzing this objective component, New Mexico courts have largely followed Fourth Amendment use of force law. See Mead v. O'Connor, 1959-NMSC-077, ¶ 4, 66 N.M. 170, 344 P.2d 478; see also State v. Ellis, 2008-NMSC-032, ¶ 28, 144 N.M. 253, 186 P.3d 245 (referring to the Fourth Amendment standard and noting "[a]n objective view, however, based on a reasonable officer's opinion about the use of force, and not on the officer's subjective view, comports with our view that a well-trained police officer, within reasonable limits, is in the best position to 'judge . . . the force necessary to enable them to make arrests or to preserve the peace.'") (internal citation omitted). The precise question asked is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

Regarding the subjective component, the New Mexico Supreme Court considers reasonableness from the officer's perspective as follows:

> Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests or to preserve the peace. When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise when the officer cannot be expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court.

Mead, 1959-NMSC-077, ¶ 4. The New Mexico Legislature has authorized the use of deadly force by a police officer when that officer has probable cause to believe he or another is threatened with serious harm or deadly force while performing lawful duties. NMSA 1978, § 30-2-6 (1989); see Hernandez, 2022-NMCA-023, ¶ 31 ("The use of deadly force by a peace officer is privileged where used to prevent death or serious bodily harm to the officer or other persons."). "Police officers are often required to assess a potentially dangerous situation and to respond to it without studied reflection. They should not be held civilly liable if they act in a reasonable belief that the amount of force used is necessary under the circumstances." Bledsoe v. Garcia, 742 F.2d 1237, 1240 (10th Cir. 1984). "[D]eadly force is justified only if a reasonable officer in the officer's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others." Reavis v. Frost, 967 F.3d 978, 985 (10th Cir. 2020) (citation and internal quotation marks omitted).

Few cases have been taken up by the courts since the shift to include a subjective component to the analysis of assault and battery claims under New Mexico tort law.[5] In Cruz, Judge Margaret Strickland applied the subjective component for the first time in a case alleging assault and battery torts resulting in wrongful death. 2023 WL 8602866, at *10. The court found the "use of lethal force . . . was reasonably necessary from an objective and subjective standpoint." Id. For the objective analysis, it was relevant to the court that the officers encountered a person who matched the description of the suspect they were searching for, the person was carrying an AR-type weapon, and the person did not fully comply with the officers' commands. Id. Immediately prior to the officers' use of deadly force, the person again disobeyed

---

[5]    The second case did not apply the subjective analysis because counsel did not raise it, instead arguing the old standards. See Cordova, 2024 WL 3880063, at *2. The third case did not address the merits of the issue. Herrera v. Vill. of Angel Fire, No. 1:21-CV-465-SCY-LF, 2024 WL 1093766, at *3 (D.N.M. Mar. 13, 2024) (slip copy).

the officers' orders by grabbing the weapon and manipulating it to cause the barrel to rotate in the officers' direction.  Id.  For the subjective analysis, the court concluded that "the [officers] reasonably viewed the way [the person] handled his weapon immediately before he was shot as a threat to their lives or the lives of other responding officers."  Id.  Accordingly, the court found the officers' force was privileged because it was both objectively and subjectively reasonable under the circumstances.  Id.  Ultimately, this privilege served as a defense to liability and the Court granted summary judgment in favor of the officers.  Id.

## II.    MS. DOTSON'S CLAIMS FOR ASSAULT AND BATTERY FAIL BECAUSE THERE IS NO EVIDENCE TO SUPPORT THE TORT ELEMENTS AND/OR THE OFFICERS ARE ENTITLED TO QUALIFIED PRIVILEGE.

Ms. Dotson alleges that she was assaulted and battered by the Officers resulting in her being injured.  *Amended Complaint*, ¶ 26 [Doc. No. 27].  However, Ms. Dotson does not specify the factual basis for her assault and battery claims, relying on vaguely pled theories.  See id., ¶ 25-26 (pleading only "[t]he actions and omissions" and "[t]he tortious acts of the Defendant officers" constituted assault and battery without specifying the actual acts or omissions).  The Officers construe the *Amended Complaint* [Doc. No. 27] generously and, even so, Ms. Dotson's claims fail under any potential theory, warranting summary judgment in the Officers' favor.

### A.    Officers Wasson and Estrada Are Not Liable to Ms. Dotson for Battery or Assault Based on Their Return Gunfire.

Ms. Dotson's claim of battery fails against Officers Wasson and Estrada because no bullets physically touched her (there was no offensive contact), although she may be able to argue imminent apprehension to meet the requirements for assault.  Regardless, Officers Wasson and Estrada's use of force was privileged, and the Officers are not liable for either of the alleged torts.

Here, the undisputed facts demonstrate the following: After the Officers' encounter with her husband and while they were still in the process of retreating from the front yard and climbing over the waist-high fence into the alleyway west of the residence, a female inside the residence (Ms. Dotson) began repeatedly screaming "Oh my God!"  See UMF No. 104 [Doc. No. 35].  Officer Wasson loudly ordered,

"Hands up!"  See UMF No. 105 [Doc. No. 35].  Instead of complying with Officer Wasson's order, Ms. Dotson suddenly flung the screen door open, leaned out armed with a handgun and, within one (1) second, aimed her gun in the Officers' direction and fired at least one (1) round.  See UMF 105-107 [Doc. No. 35]; see also Declaration of Kimberly Dotson, p. 3, ¶¶ 14, 16 (filed April 5, 2024) [Doc. No. 51] (admitting that, when she heard the sound of gunfire, she "came downstairs screaming, carrying another gun that we kept upstairs[,]" and "fired my pistol at whoever was in my front yard."); *Amended Complaint*, ¶ 15 (having heard the shots, Ms. Dotson came downstairs, saw her husband in the doorway and "fired outside at whoever shot her husband.").  In the split-second before the female (Ms. Dotson) fired in the direction of the Officers, Officer Estrada quietly stated, "please don't" and then loudly called out, "Ma'am!" because he feared the female (Ms. Dotson) was about to shoot him."  See UMF No. 108 [Doc. No. 35]. Officer Wasson saw the muzzle flash and felt the bullet "zip" past to the left of him.  See UMF No. 109 [Doc. No. 35].  The Officers were not behind cover at this point.  See UMF No. 111 [Doc. No. 35]. Officers Wasson and Estrada were forced to use deadly force to stop the imminent threat of death or great bodily harm posed by Ms. Dotson, which they did by firing their service weapons for approximately two (2) seconds.  See UMF 113 [Doc. No. 35].  Ms. Dotson was not struck by any of Officer Wasson's or Officer Estrada's rounds.  See UMF 2 [Doc. No. 43].

There cannot be a battery where there is no offensive contact either directly or indirectly.  Sisneros, 398 F. Supp at 1220-21.  Here, Officers Wasson and Estrada never directly touched Ms. Dotson and there is no evidence indicating that they did.  Also, the bullets from Officers Wasson's and Estrada's return fire did not touch Ms. Dotson (*i.e.*, indirect contact).  Therefore, Ms. Dotson cannot meet her burden to establish liability for the tort of battery by Officers Wasson and Estrada.

Regarding assault, that claim does not require actual contact but only "imminent apprehension of harmful or offensive contact."  Hernandez, 2022-NMCA-023, ¶ 28.  Even if Ms. Dotson can satisfy the elements for assault, her assault claims against Officers Wasson and Estrada fail because the Officers were

privileged to respond to her threat with reasonably necessary deadly force.

In considering the objective reasonableness of the force used, courts apply the factors set forth in

Graham and Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008).  The three

Graham factors are "the severity of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officers or others, and whether [s]he is actively resisting arrest [.]"  Id. at 396.

> **1.    Objective Reasonableness Is Supported Because the Officers Had Probable Cause to Believe Ms. Dotson Committed One or More Violent Felonies by Discharging the Gun in the Direction of Officers Wasson and Estrada (First Graham Factor)**

The Officers each witnessed Ms. Dotson commit one (1) or more violent felonies before force was

used against her, including: aggravated assault on a peace officer,[6] assault with intent to commit a violent

---

[6]    The Officers had probable cause to believe Ms. Dotson committed the crime of aggravated assault on a peace officer.  See NMSA 1978, § 30-22-22(A)(1) ("Aggravated assault upon a peace officers consists of . . . unlawfully assaulting or striking at a peace officer with a deadly weapon while he is in the lawful discharge of his duties[.]"); NMSA 1978, § 30-22-21(A) (elements for assault of a peace officer); NMSA 1978, § 30-1-12(B) (definition of deadly weapon includes a firearm); see also UJI 14-2201 through 14-2203 (setting forth the essential elements of the crime of aggravated assault on a peace officer with a deadly weapon under different theories).

Here, the Officers were in uniform, on duty, and attempting to investigate a domestic violence call to which they had been dispatched.  See UMF 1-97 [Doc. No. 35].  Ms. Dotson irrefutably flung open the front screen door armed with a gun and instantly aimed and fired at least one (1) round in the direction of the Officers who were in the alley and not behind cover.  See UMF 106-107, 109, 111 [Doc. No. 35].  Officers Wasson and Estrada both believed they were going to be shot.  See UMF 108-109, 113 [Doc. No. 35].  Specifically, Officer Wasson saw the muzzle flash and felt the bullet "zip" past to the left of him.  See UMF 109 [Doc. No. 35].

Further, it was objectively reasonable, even if mistaken, for the Officers to believe Ms. Dotson knew they were peace officers given that they were in full FPD uniforms; the porch was well illuminated; there was a full moon making it brighter than normal outside; the residence was equipped with a video doorbell security system; Officers Wasson and Goodluck were initially positioned at the front door and in view of the video doorbell camera and front window; Officer Wasson knocked and loudly announced their presence three (3) separate times; her husband came to the door within seconds of the third announcement; Officer Wasson issued a standard police order to her husband to put his "hands up" when he opened the front door armed with a gun; Officer Wasson also ordered Ms. Dotson to put her "hands up" seconds before she aimed her gun at them; and Officer Goodluck had turned his flashlight on and illuminated the front door.  See UMF 37-106, 112 [Doc. No. 35]; see also State v. Nozie, 2009-NMSC-018, ¶ 30, 207 P.3d 1119, 1128 (stating that "knowledge of the victim's identity as a peace officer is an essential element of . . . aggravated assault upon a peace officer.").  Moreover, prior to firing at the Officers, Ms. Dotson had not made any audible verbal statements or otherwise given any manifest indications to the Officers that she did not know police were outside.  See generally UMF 37-106 [Doc. No. 35].

felony upon a peace officer,[7] and/or aggravated assault.[8]  Importantly, the Tenth Circuit's "binding precedent indicates the first Graham factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent." Vette v. K-9 Unit Deputy Sanders, 989 F.3d 1154, 1170 (10th Cir. 2021); see Est. of Valverde v. Dodge, 967 F.3d 1049, 1061 (10th Cir. 2020) (the seriousness of the crime becomes "insignificant" when the subject is about to shoot an officer).  Here, the Officers each witnessed Ms. Dotson commit one (1) or more violent felonies before Officers Wasson and Estrade used force against her.  This first Graham factor weighs in favor of the reasonableness of the actions by the Officers.

> **2.    Ms. Dotson Posed an Immediate Threat of Serious Physical Harm to the Officers and Others, Supporting the Objective Reasonableness of Force by Officers Wasson and Estrada (Second Graham Factor)**

Officers Wasson and Estrada had probable cause to believe Ms. Dotson posed a threat of serious physical harm to themselves and others.  See Graham, 471 U.S. at 11; Tennessee v. Garner, 471 U.S. 1, 11 (1985) (a police officer may reasonably use deadly force where he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.").  The second Graham factor "is undoubtedly the most important and fact intensive factor in determining the objective

---

[7]    The Officers also had probable cause to believe Ms. Dotson committed the crime of assault with intent to commit a violent felony upon a peace officer.  See NMSA 1978, § 30-22-23(A) ("Assault with intent to commit a violent felony upon a peace officer consists of any person assaulting a peace officer while he is in the lawful discharge of his duties with intent to kill the peace officer."); see also State v. Allen, 2000-NMSC-002, ¶ 65, 128 N.M. 482, 507, 994 P.2d 728, 753 (circumstantial evidence may be used to prove intent).  In addition to the facts described above in footnote 6, supra, and based on the circumstantial evidence, a reasonable officer would believe that Ms. Dotson intended to murder the Officers given that she aimed and discharged at least one round in their direction.  See UMF 106-107, 109 [Doc. No. 35].

[8]    Even assuming it was not objectively reasonable for the Officers to believe Ms. Dotson knew they were peace officers, they nonetheless had probable cause to believe she committed the crime of aggravated assault based on the facts described above in footnote 6, supra.  See NMSA 1978, § 30-3-2(A) ("Aggravated assault consists of . . . unlawfully assaulting . . . another with a deadly weapon."); State v. Ramirez, 2018-NMSC-003, ¶ 23, 409 P.3d 902, 910 ("[T]he mens rea element necessary to establish aggravated assault is general criminal intent, i.e., conscious wrongdoing.").  It was reasonable for the Officers to believe Ms. Dotson consciously came to the front door, leaned out armed with a handgun, and used this deadly weapon to fire at least one round in their direction.  Based on these facts it was also reasonable for the Officers to fear an immediate battery – being shot and possibly killed or seriously injured. See UMF 108, 113 [Doc. No. 35].

reasonableness of an officer's use of force[.]"  Pauly v. White, 874 F.3d 1197, 1216 (10th Cir. 2017) (internal quotation marks and citation omitted)).  The degree of threat facing the Officers may be evaluated using the following non-exhaustive Larsen factors.

First, "[i]f a suspect was given orders and did not comply, [the first Larsen factor] weighs in the officers' favor."  Palacios, 61 F.4th at 1259.  However, officers are not required to give a warning before using deadly force if it is not feasible to do so.  See Garner, 471 U.S. at 11-12; see also Thomson, 584 F.3d at 1321 ("A warning is not invariably required even before the use of deadly force[.]"); Est. of Smart v. City of Wichita, 951 F.3d 1161, 1175 (10th Cir. 2020) (acknowledging there is no relevant authority requiring officers to give a warning when "faced with rapidly evolving circumstances involving deadly threats.").  Additionally, an officer is not required to specifically warn a suspect that they will be shot if they do not stop.  See Est. of George v. City of Rifle, Colo., 85 F.4th 1300, 1317 (10th Cir. 2023) (citing Palacios, 61 F.4th at 1259); see also Valverde, 967 F.3d at 1061-62 ("[W]hen the suspect is not holding a gun when the confrontation begins, officers can do little more than what they did in this case: order the suspect to raise his hands and get to the ground."); Redd v. City of Oklahoma City, No. 20-6145, 2021 WL 3909982, *12 (10th Cir. 2021) (not reported) (holding that the command "don't do it" used "in the context of a person armed with and apparently drawing a gun" and in the context of the officer unholstering his firearm, "sufficiently warned [the subject] that lack of compliance might be met with deadly force.").  Further, when an officer reasonably perceives the subject is drawing a firearm on him and the officer's delay in using deadly force "could result in his own death or serious injury, his decision to fire without allowing [the subject] further time to comply [is] reasonable."  Redd, 2021 WL 3909982 at *12.

Ms. Dotson was heard screaming inside the house and Officer Wasson issued the following order: "Hands up!"  UMF 104-105 [Doc. No. 35].  A split-second before Ms. Dotson fired in the direction of the Officers, Officer Estrada loudly called out, "Ma'am!" because he feared she was about to shoot him and

wanted to announce his presence.  UMF 108 [Doc. No. 35].  The Officers were not required to issue a

warning given the rapidly evolving circumstances but did so and Ms. Dotson failed to comply.  See UMF

105-106 [Doc. No. 35].  Within one (1) second of flinging open the door, Ms. Dotson had pulled a gun on

the Officers and fired at least one (1) round in their direction.  UMF 106 [Doc. No. 35].  In addition to the

Officers, other residences were in Ms. Dotson's line of fire.  UMF 132 [Doc. No. 35].  Under these

circumstances, Ms. Dotson's actions undoubtedly posed a threat of serious physical harm to the Officers

and others.

Under the second Larsen factor, the Court is to consider Ms. Dotson's hostile motion with the gun

towards the Officers.  See 511 F.3d at 1260.  In Valverde, the Tenth Circuit stated:

> Assuming that the suspect was drawing a gun to fire at an officer only a few feet away,
> those factors support the officer's use of deadly force. The second, third, and fourth
> [Larsen factors] would obviously be satisfied. Drawing the gun to fire at an officer is a
> hostile motion with hostile intent and presents a lethal threat when the officer is close by.

967 F.3d at 1061.  The video evidence unequivocally demonstrates that Ms. Dotson aimed the firearm in

the direction of Officers Wasson and Estrada before firing at least one (1) round.  UMF 71, 106 [Doc. No.

35]; see also Scott v. Harris, 550 U.S. 372, 380 (2007) (the court may rely upon video evidence and

disregard one party's factual assertion where the video evidence "blatantly contradicts" that party's

assertion such "that no reasonable jury could believe it.").  Further, Officer Wasson saw the muzzle flash

and felt the bullet "zip" past to the left of him.  See UMF 109 [Doc. No. 35].  As such, Ms. Dotson made

a hostile motion with the handgun toward Officers Wasson and Estrada.

The third Larsen factor, "the distance separating the officers and the suspect[,]" 511 F.3d at 1260,

is satisfied by Ms. Dotson's action of drawing a gun on the Officers who were nearby and without cover,

see Valverde, 967 F.3d at 1061.  Case law supports this factor being satisfied in favor of the Officers.  See

Est. of Taylor v. Salt Lake City, 16 F.4th 744, 769-70 (10th Cir. 2021) (an officer who was ten to twelve

(10-12) feet from a suspect who made a motion consistent with drawing a gun, particularly where the

officer was exposed and lacked immediately accessible cover, supported the objective reasonableness of

the officer's use of deadly force); Palacios, 61 F.4th at 1260 (when a suspect is armed with a gun and the distance between him and the officer is fifteen to twenty (15-20) feet and the officer is without cover, those facts weighs in favor of objective reasonableness); Redd, 2021 WL 3909982, at *13 (finding the third Larson factor favored the officer where he was within range of the subject's weapon); Leyba v. City of Santa Fe, No. CV 16-185 WPL/LF, 2017 WL 4534839, at *2-3 (D.N.M. Feb. 8, 2017) (not reported) (where a police officer, investigating a home burglary alarm call, shot the man who came to the doorway after the man drew a gun and pointed it at the officer who was ten to fifteen (10-15) feet away and in an exposed, uncovered location, the Honorable Robert Lynch opined that "the distance between the parties seems to be less important when the suspect has a high-powered weapon instead of a knife or club."). Here, the distance separating the Officers and Ms. Dotson was minimal, they were within range of the gun, and were without cover. See UMF 110 (Officer Wasson estimated he was approximately twenty-five (25) feet away from Ms. Dotson, Officer Estrada estimated he was approximately fifteen to twenty (15-20) yards away from Ms. Dotson, and Officer Goodluck estimated he was approximately ten to twelve (10-12) yards away from Ms. Dotson); UMF 111 (the Officers were without cover) [Doc. No. 35]. As just cited, courts have found this factor favors officers in even less extreme circumstances than here, such as where a weapon was only suspected – here it had been fired – when the distance separating the officers from the threat was the same. It is also notable that the confrontation here took place in a residential neighborhood and there were other homes behind the Officers that may have been within Ms. Dotson's line of fire. See UMF No. 132 [Doc. No. 35]; see also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (the Court was not concerned with the actual absence or presence of bystanders, but with the officer's reasonable belief that bystanders might be nearby).

The fourth Larsen factor is concerned with "the manifest intentions of the suspect." 511 F.3d at 1260. In evaluating a subject's manifest intentions, the Tenth Circuit looks to whether a reasonable officer would have perceived the subject's actions as threatening. See Taylor, 161 F.4th at 770; Valverde, 967

F.3d at 1062 ("the facts must be viewed from the perspective of the officer.").  Importantly, the officer's

assessment of threat of harm "need not be correct . . . as long as it is reasonable."  <u>Tenorio v. Pitzer</u>, 802

F.3d 1160, 1164 (10th Cir. 2015).  In <u>Taylor</u>, the Tenth Circuit explained:

> [A] key lesson here is that "the focus of the inquiry is not on . . . what Mr. Taylor
> *subjectively* intended"—be it "with his hand movements" or otherwise. [citation omitted].
> Accordingly, our inquiry's focus is on how a reasonable officer on the scene would have
> assessed the manifest indicators of Mr. Taylor's intentions—that is, Mr. Taylor's actions.

16 F.4th at 770 (emphasis in original).  Under this standard, the <u>Taylor</u> court concluded that "even viewing

the facts in the light most favorable to [the p]laintiffs, the record indicates that Mr. Taylor's hand gestures

immediately before he was shot were consistent with drawing a gun against Officer Cruz or the other

officers . . . that is, his conduct reflected bad intentions."  <u>Id.</u> at 771.  Likewise in <u>Valverde</u>, the court

stated: "Assuming that the suspect was drawing a gun to fire at an officer only a few feet away . . . [t]he .

. . fourth [<u>Larsen</u> factor] would obviously be satisfied."  967 F.3d at 1061.  Here, it was reasonable for the

Officers to conclude that Ms. Dotson's manifest intentions were hostile toward them when they saw her

suddenly flung the screen door open, lean out armed with a handgun and, and within one (1) second, aim

her gun in the Officers' direction and fire *at least* one (1) round.  UMF 106 [Doc No. 35].  Simply

considering the fact that Ms. Dotson aimed her gun at the Officers is enough to reflect bad intentions.

All the <u>Larsen</u> factors weigh in the Officers' favor, notably because Ms. Dotson drew a gun and

fired at the Officers.  Therefore, the second <u>Graham</u> factor, which is "the most important" factor in

determining the objective reasonableness of an officer's use of force, weighs in these Officers' favor.

### 3. The Officers Objectively Believed That Ms. Dotson Was Actively Resisting or Evading Arrest (Third <u>Graham</u> Factor)

The third <u>Graham</u> factor – active resistance or evasion of arrest – weighs in the Officers' favor.

Officer Wasson commanded Ms. Dotson to put her hands up.  UMF 105 [Doc. No. 35].  The Officers

reasonably believed that, instead of complying, Ms. Dotson suddenly flung the screen door open, leaned

out, aimed a gun in the Officers' direction and fired it.  UMF 106-107, 109 [Doc. No. 35].  As discussed,

supra, the Officers therefore had probable cause to arrest Ms. Dotson for one (1) or more felony crimes. After firing upon the Officers, Ms. Dotson retreated into the residence, demonstrating that she was attempting to evade arrest. See UMF 113 [Doc. No. 35]. Even if this Court finds the third Graham factor weighs in Ms. Dotson's favor, this factor does not carry the analysis because the "'most important' factor" and the determinative one in a deadly force case, is the second one: "whether the suspect posed an 'immediate threat to the safety of the officers or others[.]'" Est. of Lopez ex rel. Lopez v. Gelhaus, 871 F.3d 998, 1005-06 (9th Cir. 2017) (quoting George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013).

### 4. Under the Totality of the Circumstances, the Officers' Use of Deadly Force Against Ms. Dotson was Objectively Reasonable.

In sum, all three Graham factors favor the Officers, including the most important factor: that the Officers had probable cause to believe that Ms. Dotson posed an imminent threat of death or serious physical harm to themselves or others. See Valverde, 967 F.3d at 1062 ("the decisive question is whether [the officer] was reasonable in believing that [the subject] was going to fire his gun at [the officer or others].").  To stop the lethal threat posed by Ms. Dotson, Officers Wasson and Estrada fired their service weapons, immediately ceasing fire when Ms. Dotson retreated into the house and no longer appeared to pose an immediate threat. See UMF 113 [Doc. No. 35]. Given the speed that the events precipitated, Officers Wasson and Estrada's split-second judgment about the amount of force to use was reasonable. See Thomson, 584 F.3d at 1318 (Although "the precise moment of the shot is a critical factor, . . . the tense, uncertain, and rapidly evolving events leading up to that moment [are] extremely relevant in the totality of the circumstances approach.") (internal quotations omitted).  It has been long understood by the New Mexico Supreme Court that an officer's decision is entitled to some deference given the circumstances they encounter:

> That the officers might have placed themselves differently, or formulated a plan that would have been more certain of success without the use of firearms, are matters of retrospect which are thought of by judges and lawyers after the occurrence; but in the day-by-day work of an officer, it can hardly be expected that every arrest or attempted arrest can be effected with theoretical perfection.  The unexpected must always be considered,

particularly when dealing with those who have committed a felony.

Alaniz v. Funk, 1961-NMSC-140, ¶ 10, 69 N.M. 164, 364 P.2d 1033. Officers Wasson and Estrada's split-second decisions are entitled to deference and the totality of the circumstances here supports a finding of objective reasonableness. Therefore, Officers Wasson and Estrada's use of deadly force against Ms. Dotson was objectively reasonable.

### 5. Officers Wasson and Estrada Subjectively Believe They Used No More Force Than Necessary.

The undisputed facts in this case also demonstrate that Officers Wasson and Estrada satisfy the subjective component of the of the qualified privilege defense because each subjectively believes that he used no more force than necessary. In Cruz, the suspect did not shoot at the officers. 2023 WL 8602866, at *10. Instead, it was enough for the court that the barrel of the suspect's gun was aimed at the officers to lend support to their subjective belief of a threat to their lives or the lives of other responding officers. Id. Here, Officers Wasson and Estrada subjectively believed that their lives were in danger and that the deadly force used was necessary to respond to the threat of a gun suddenly appearing out of the doorway and being fired at them by Ms. Dotson. See UMF 108, 113 [Doc. No. 35]. Officer Estrada believed Ms. Dotson was going to shoot him. See id. Officer Wasson similarly believed his life was being threatened by Ms. Dotson. See UMF 109, 113 [Doc. No. 35]. Both Officers felt it was necessary to return fire to stop the immediate deadly threat posed by Ms. Dotson. UMF 113 [Doc. No. 35]. There is no evidence to rebut the subjective beliefs of Officers Wasson and Estrada that the force used was necessary. Thus, the use of force by Officers Wasson and Estrada was subjectively reasonable. Therefore, Ms. Dotson's assault claim fails because Officers Wasson and Estrada were privileged to respond to her threat with reasonably necessary deadly force.

### B. Officer Goodluck Is Not Liable For Assault Or Battery Because He Did Not Return Fire At Ms. Dotson.

Officer Goodluck did not assault or batter Ms. Dotson because he did not return fire. Officer

Goodluck was present at the scene about ten to twelve (10-12) yards away from the door, but did not

return fire because, although he saw a gun appear from the threshold of the doorway, he did not have a

clear line of sight to the female (Ms. Dotson) who was holding the gun.  UMF 110-111, 114 [Doc. No.

35].  Based on these undisputed facts, Officer Goodluck is entitled to summary judgment on Ms. Dotson's

battery claim because he did not have any contact with her.  See Hernandez, 2022-NMCA-023, ¶ 28

(quoting Restatement (Second) of Torts § 18) (offensive physical contact is an element of battery).

Moreover, Officer Goodluck is entitled to summary judgment on Ms. Dotson's assault claim

because there is no evidence to demonstrate that Officer Goodluck committed an unlawful act.  State v.

Branch, 2018-NMCA-031, ¶ 21, 417 P.3d 1141, 1149 ("Assault consists of 'any *unlawful act* . . . which

causes another person to reasonably believe that he is in danger of receiving an immediate battery[.]'")

(quoting NMSA 1978, § 30-3-1(B) (1963)) (emphasis added); id. ("The commission of an 'unlawful act'

is an alternative method of committing the offense that does not rely on threatening or menacing

conduct."); Hernandez, 2022-NMCA-023, ¶ 28, 508 P.3d 947 (assault includes an element of intention,

as the person must "intend to cause another to be put in imminent apprehension of harmful or offensive

contact"); see State v. Archuleta, No. A-1-CA-35990, 2019 WL 3765583, at *4 (N.M. Ct. App. July 22,

2019) (not reported) (describing the distinction between arguments for unlawful acts compared to

attempted battery).  Officer Goodluck did not return fire and exercised no use of force – none of his actions

were unlawful.  Thus, he did not commit an unlawful act on Mr. Dotson.  Instead, the inquiry turns on the

more fact intensive analysis of Officer Goodluck's intent and Ms. Dotson subjective and a reasonable

person's objective beliefs.

There is no evidence to prove Officer Goodluck specifically intended to act in a matter that would

cause the belief, with substantial certainty, that a battery on Ms. Dotson was imminent.  The facts

demonstrate an absence of intention to cause harm, as Officer Goodluck did not fire his service weapon.

There is also no evidence Officer Goodluck engaged in threatening or menacing conduct that was certain

to result in the fear of harm.  For example, although Officer Goodluck turned on his flashlight to illuminate the front door, UMF 112 [Doc. No. 35], there is no indication this act done for the purpose of illuminating the scene could cause fear of offensive physical contact.  Ms. Dotson cannot meet her burden for this element of her assault claim regarding Officer Goodluck's intentions.

Additionally, for Ms. Dotson's perceptions, the test for assault is both subjective and objective: "the victim must *actually believe,* and [] a *reasonable person* in the victim's circumstances also *would believe,* that he or she was about to be assaulted[.]"  Arrendondo, 2012-NMSC-013, ¶ 14 (emphases in original).  Setting aside whether Ms. Dotson subjectively feared imminent harmful or offensive conduct based on the encounter between the Officers and Mr. Dotson that had occurred several minutes before, UMF 104 [Doc. No. 35], she cannot demonstrate that a reasonable person would have believed the same.

In State v. Baca, the court considered a criminal charge of assault with intent to commit a violent felony against a peace officer.  2020-NMCA-049, ¶ 9, 475 P.3d 799, 802.  The defendant shot at the officer, then fled.  Id.  The officer "testified that he thought that [d]efendant might come back and shoot him again."  This was insufficient to form the basis for assault and the court concluded:

> Were we to hold that such facts could allow a jury to infer that Officer Caron reasonably feared an immediate battery, any scenario wherein a battery with a deadly weapon occurs would necessarily transform into a subsequent assault, so long as the victim testifies that he was afraid the shooter would return and attack again. Without further evidence proving Defendant's menacing conduct or an explicit or implied threat of further violence, we cannot conclude that the jury was able to find beyond a reasonable doubt that the required elements of assault with intent to commit a violent felony against a peace officer were satisfied.

Id.  As found by the court, a battery with a deadly weapon does not transform into an assault based on a concern the attacker would return.  Id.  Here, Ms. Dotson's purported fear regarding what had just occurred between Mr. Dotson and the Officers (who to her at the time were an unknown assailant) is insufficient to prove assault.

Regardless, even if there is a finding of assault and/or battery, Ms. Dotson's claims fail against Officer Goodluck because he is entitled to the qualified privilege defense.  The defense applies to Officer

Goodluck for the same reasons Officers Wasson and Estrada are entitled to this defense.  See Section

II(A), supra.  Officer Goodluck was privileged to use reasonable force to prevent serious bodily harm to

himself and others.  See Hernandez, 2022-NMCA-023, ¶ 31.  However, Officer Goodluck did not use

force against Ms. Dotson because he did not have a clear line of sight.  See UMF 114 [Doc. No. 35].

Thus, he used no more force than necessary and the rational conclusion is that he is entitled to the qualified

privilege defense against Ms. Dotson's assault and battery claims.

### C.    No Other Theories for Assault or Battery Are Viable Because the Officers Are Entitled to Qualified Privilege.

In conclusion, all of Ms. Dotson's assault and battery claims fail.  Ms. Dotson's claim of battery

fails against Officers Wasson and Estrada because no bullets physically touched her.  Ms. Dotson's claim

of assault also fails because Officers Wasson and Estrada both subjectively and objectively believed that

firing their service weapons at Ms. Dotson was the level of force necessary to stop the immediate deadly

threat she posed to them and potentially neighbors in her line of fire.  Lastly, Ms. Dotson's claims of

assault and battery fail against Officer Goodluck because there is no evidence he intended to cause her

apprehension and there can be no claim of contact since he did not fire his service weapon at her.

As established above, the Officers were privileged to respond with reasonably necessary force to

the immediate deadly threat posed by Ms. Dotson when she aimed and discharged her firearm in their

direction.  Regardless of any other theory for assault and battery posed by Ms. Dotson, the Officers are

not liable because of the qualified privilege defense.  Therefore, the Officers are entitled to summary

judgment in their favor on Ms. Dotson's assault and battery tort claims against them.

### III.    THE OFFICERS ARE ENTITLED TO QUALIFIED PRIVILEGE AND CANNOT BE LIABLE FOR THE TORTS OF ASSAULT AND BATTERY AGAINST ROBERT DOTSON BECAUSE THEY OBJECTIVELY AND SUBJECTIVELY BELIEVED THAT DEADLY FORCE WAS REASONABLY NECESSARY.

The Estate alleges the Officers assaulted and battered Mr. Dotson resulting in his death.  *Amended*

*Complaint*, ¶ 26 [Doc. No. 27].  Assuming arguendo the Estate can demonstrate the elements of assault

22

and battery, to wit: that the Officers intended to cause a harmful contact to Mr. Dotson by shooting their weapons and that contact occurred; nonetheless, the Estate cannot maintain an assault or battery claim against the Officers because they are entitled to qualified privilege. The Officers are entitled to this defense because their use of deadly force against Mr. Dotson was both objectively and subjectively reasonable. Therefore, the Court should grant summary judgment in favor of the Officers on the Estate's assault and battery claims.

When an officer's actions are reasonable, it is appropriate for this Court to "afford [the Officers] the utmost protection" when analyzing claims of assault and battery. Mead, 1959-NMSC-077, ¶ 4. Courts must also "recognize the fact that emergencies arise when the officer cannot be expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court." Id. Here, it is undisputed that approximately three to four (3-4) seconds elapsed from the time Officer Wasson heard the slide to a gun being racked inside the residence to the time Mr. Dotson aggressively opened the front door brandishing a firearm. See UMF 77, 78, 80 [Doc. No. 35]. Within approximately one (1) second of opening the front door, Mr. Dotson raised his firearm in the direction of Officers Wasson and Estrada. See UMF 80-81 [Doc. No. 35]. Further, approximately two (2) seconds elapsed from the time Mr. Dotson opened the front door brandishing a gun to the last shot being fired by the Officers. See UMF 92, 93, 97 [Doc. No. 35]. As discussed in Section I(D), supra, law enforcement officers cannot be held liable for assault and battery when their use of force was both objectively and subjectively reasonable. The Officers' use of force against Mr. Dotson satisfies both components.

## A.    The Officers Objectively Believed Deadly Force Was Reasonably Necessary To Stop the Immediate Deadly Threat Mr. Dotson Posed.

The undisputed facts here necessitate a finding that the Officers use of force against Mr. Dotson was objectively reasonable, which the Officers separately argued in their *Motion for Partial Summary Judgment No. II: Dismissal of the Estate of Robert Dotson's Fourth Amendment Unreasonable Seizure Claim Against the Officers Based on the Application of Qualified Immunity* (filed March 11, 2024) [Doc.

No. 42] ("*MPSJ No. II*") that has been fully briefed and argued before this Court.  See *Notice of Briefing Completion for MPSJ No. II* (filed May 24, 2024) [Doc. No. 64]; see also *Minute Sheet for Motion Hearing on Defendants' MPSJ No. II* (filed August 16, 2024) [Doc. No. 69].  The arguments in City Defendants' *MPSJ No. II* are analogous to the argument here regarding the assault and battery claims.  Specifically, *MPSJ No. II* sets forth fully briefed arguments regarding the objective reasonableness of the Officers' use of deadly force.  Therefore, as allowed by D.N.M.LR-Civ. 7.1(a), the Officers hereby incorporate by reference the arguments in *MPSJ No. II*, at 3-27, as though fully set forth herein.

To briefly summarize those arguments, in considering the objective reasonableness of the force used, first, the Officers each witnessed Mr. Dotson commit one (1) or more violent felonies before using force against him, including aggravated assault upon a peace officer[9] and/or assault with intent to commit a violent felony upon a peace officer.[10]  Although the Officers had probable cause to believe Mr. Dotson committed one (1) or more felony crimes, "it would be insignificant whether he . . . was not even a criminal suspect" because Mr. Dotson was armed with a gun that he aimed at Officers Wasson and Estrada.  See *Valverde*, 967 F.3d at 1061.

Second, a police officer may reasonably use deadly force where he "has probable cause to believe

---

[9]    The Officers had probable cause to believe Mr. Dotson committed the violent felony crime of aggravated assault upon a peace officer when he took his gun in both hands in a shooting stance and aimed in the direction of Officers Wasson and Estrada, both of whom were in full uniform and investigating a report of domestic violence.  See UMF 38, 83 [Doc. No. 35]; NMSA 1978, § 30-22-22(A)(1).  The Officers also had probable cause to believe Mr. Dotson knew they were police officers for numerous reasons: they were in full FPD uniforms; the porch was well illuminated; there was a full moon making it brighter than normal outside; the residence was equipped with an operational video doorbell system; Officers Wasson and Goodluck were positioned at the front door and in view of the video doorbell and living room window; Officer Wasson knocked and loudly announced their presence three (3) separate times; and Officer Wasson issued a standard police order to Mr. Dotson to put his "hands up" when he opened the front door armed with a gun. See UMF 38-39, 43, 44-45, 48-69, 82 [Doc. No. 35]; see also *Nozie*, 2009-NMSC-018, ¶ 30 (stating that "knowledge of the victim's identity as a peace officer is an essential element of . . . aggravated assault upon a peace officer.").

[10]    Additionally, the Officers had probable cause to believe that, by aiming his gun at Officers Wasson and Estrada, Mr. Dotson intended to kill them and, thus, had committed the crime of assault with intent to commit a violent felony upon a peace officer.  Even assuming Mr. Dotson did not know police were at his door, the Officers had probable cause to believe he committed the violent felony crime of aggravated assault.  See NMSA 1978, § 30-3-2(A) ("Aggravated assault consists of . . . unlawfully assaulting . . . another with a deadly weapon.").

that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. at 11. Here, Mr. Dotson appeared at the door with a gun and Officer Wasson issued the following order: "Hands up!" UMF 77-82 [Doc. No. 35]. Mr. Dotson did not comply, instead raising the gun into a shooting stance and aiming it in the Officers' direction – a hostile motion. See UMF 82-83 [Doc. No. 35]. The events rapidly unfolded: approximately three (3) seconds passed from the time Mr. Dotson opened the front door to the time he aimed the firearm in direction of Officers Wasson and Estrada, placing their lives at risk and requiring them to make a split-second decision to defend themselves and for Officer Goodluck to defend his fellow officers. See UMF 77-83 [Doc. No. 35]. Drawing the gun to fire at an officer is categorically a hostile threat. See Valverde, 967 F.3d at 1061.

Moreover, Officers Wasson and Estrada were both within five (5) yards of the front door when Mr. Dotson took a shooting stance and aimed his gun in their direction. See UMF 85, 88 [Doc. No. 35]. This is a smaller distance than several cases finding reasonable uses of force. See MPSJ No. II, at 11 [Doc. No. 42] (supporting case law); see also Section II(A)(2), supra. Further, Officers Wasson and Estrada were positioned in the open front yard, without any immediately accessible cover, and their ability to quickly retreat was hampered by the waist-high, decorative iron fence with ornamental spikes on top. See UMF 30, 85-86, 88 [Doc. No. 35]. Courts consider an officer's lack of cover relevant in supporting the reasonableness of the use of force. Taylor, 16 F.4th at 769-70; Palacios, 61 F.4th at 1260; Leyba, 2017 WL 4534839, at *2-3. Officer Goodluck was also within close range of Mr. Dotson's firearm even though Mr. Dotson did not point his gun in this particular officer's direction. Officer Goodluck nonetheless believed that Mr. Dotson posed an imminent threat of death or great bodily harm to Officers Wasson and Estrada. See UMF 89-90 [Doc. No. 35]. Additionally, the Officers were confronted with and responded to tense, uncertain and rapidly evolving circumstances. See UMF 37-45, 48-83 [Doc. No. 35]. It was therefore objectively reasonable for the Officers to conclude that Mr. Dotson's manifest intentions were hostile toward them and necessitated a split-second decision on their part.

Lastly, it was objectively reasonable for the Officers to believe that Mr. Dotson was actively resisting arrest. Mr. Dotson ignored Officer Wasson's command to put his hands up and then took the gun in both hands in a shooting stance, aiming it in the direction of Officers Wasson and Estrada. See UMF 80-83 [Doc. No. 35].

Viewing the totality of the circumstances, the Officers had probable cause to believe that Mr. Dotson posed an imminent threat of death or serious physical harm to themselves and others. To stop the lethal threat posed by Mr. Dotson, the Officers fired their service weapons for approximately 1-2 seconds. UMF 93 [Doc. No. 35]. They immediately ceased fire when Mr. Dotson fell into the house and no longer appeared to pose an immediate threat. See UMF 92-95 [Doc. No. 35]. Given the speed that the events precipitated, the split-second judgment about the amount of force to use was reasonable. See Thomson, 584 F.3d at 1318; Alaniz, 1961-NMSC-140, ¶ 10. The Officers are entitled to deference on their decisions to handle the unexpected. Therefore, the Officers' use of deadly force against Mr. Dotson was objectively reasonable.

**B.     The Officers' Use of Deadly Force Against Mr. Dotson to Respond to the Imminent Threat of Death or Great Bodily Harm He Posed Was Subjectively Reasonable.**

Applying the additional subjective component to this case, it is undisputed that the Officers subjectively believed their lives were in danger and that the force used was no more than necessary to respond to the threat. Officer Wasson believed Mr. Dotson was going to shoot him. See UMF 72, 84, 92 [Doc. No. 35]. Officer Estrada also believed he was about to be shot. See UMF 73, 87, 92 [Doc. No. 35]. Officer Goodluck believed that Mr. Dotson posed an imminent threat of death or great bodily harm to Officers Wasson and Estrada. See UMF 74, 89-90, 92 [Doc. No. 35]. The Officers used deadly force by firing their service weapons to stop the imminent threat of death or great bodily harm posed by Mr. Dotson. UMF 92 [Doc. No. 35]. This was enough to satisfy this Court in Cruz, which found the officers feared for their lives or the lives of other responding officers based on less: their perception of how the suspect handled his weapon. 2023 WL 8602866, at *10. There is no evidence to rebut the Officers' subjective

beliefs that deadly force was necessary. An officer who does not use more force than reasonably necessary to preserve the peace or effect an arrest cannot be held liable for assault or battery. <u>Alaniz</u>, 1961-NMSC-140, ¶ 10. Therefore, the Officers' use of deadly force against Mr. Dotson was subjectively reasonable.

In conclusion, the Officers used reasonably necessary force; and both subjectively and objectively believed that firing their service weapons at Mr. Dotson was the level of force necessary to respond to the deadly threat he posed. The Officers very plainly feared for their lives and personally believe that they used no more force than necessary. Also, there is no evidence to rebut the Officers' subjective beliefs that force was necessary. A hypothetical reasonable police officer placed in the same situation would have thought the same amount of force used was necessary given Mr. Dotson's deadly threat. Thus, the Officers cannot be held liable for assault and battery on Mr. Dotson resulting from their use of deadly force against him. The Officers are entitled to summary judgment in their favor on the Estate's assault and battery claims.

**CONCLUSION**

Kimberly Dotson's claim of battery fails against Officers Wasson and Estrada because there was no offensive contact. Ms. Dotson's claims of assault and battery fail against Officer Goodluck because he did not return fire. Moreover, Ms. Dotson's claims of assault and battery fail against all the Officers because the Officers' use of deadly force was privileged, and the Officers are not liable for either of the alleged torts. Similarly, the Officers are entitled to qualified privilege on the Estate's assault and battery tort claims because their use of deadly force against Robert Dotson was both objectively and subjectively reasonable. Therefore, the Court should grant summary judgment in the Officers' favor on Ms. Dotson's and the Estate's assault and battery tort claims.

**WHEREFORE,** the Officers respectfully request that this Court grant their *Motion for Partial Summary Judgment No. V: Dismissal of the Estate's and Ms. Dotson's Assault and Battery Tort Claims* and dismiss Kimberly Dotson's and the Estate's assault and battery tort claims against the Officers with

prejudice.

Respectfully submitted,

**ROBLES, RAEL & ANAYA, P.C.**


By:    /s/ Luis Robles
Luis Robles
Attorney for Defendants
500 Marquette Ave NW, Suite 700
Albuquerque, NM 87102
(505) 242-2228
(505) 242-1106 (facsimile)
luis@roblesrael.com

I hereby certify that the foregoing was
electronically filed through the CM/ECF
on this 3rd day of December 2024, which will
cause service to all counsel of record.


/s/ Luis Robles
Luis Robles