IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNEST PADILLA, PERSONAL REPRESENTATIVE
OF THE ESTATE OF ROBERT DOTSON, DECEASED;
KIMBERLY DOTSON,
INDIVIDUALLY AND AS PARENT AND NEXT FRIEND
OF JULIA
DOTSON; AND ZACHARY-MORA DOTSON,

    Plaintiffs,

vs.                                      Case No. 1:23-cv-00790-MLG-KK

CITY OF FARMINGTON, NEW MEXICO;
DANIEL ESTRADA; DYLAN GOODLUCK;
AND WAYLON WASSON,

    Defendants.

**DEFENDANTS DANIEL ESTRADA, DYLAN GOODLUCK AND WAYLON WASSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT No. VI: DISMISSAL OF PLAINTIFF KIMBERLY DOTSON'S FALSE IMPRISONMENT TORT CLAIM**

Defendants, Daniel Estrada, Dylan Goodluck, and Waylon Wasson, through their attorneys, Robles, Rael and Anaya, P.C. (Luis Robles), state the following for their *Motion for Partial Summary Judgment No. VI: Dismissal of Plaintiff Kimberly Dotson's False Imprisonment Tort Claim* ("*MPSJ No. VI*"):[1]

---

[1] As required by D.N.M.LR-Civ. 7.1(a), defense counsel contacted Plaintiffs' counsel on January 16, 2025 to determine Plaintiff Kimberly Dotson's position on this *MPSJ No. VI*. As of the filing of this motion, Ms. Dotson's counsel has not provided a position. Ms. Dotson is presumed to oppose this *MPSJ No. VI*.

## INTRODUCTION

This case arises from the April 5, 2023, officer-involved shooting by Farmington Police Department ("FPD") Officers Waylon Wasson ("Officer Wasson"), Dylan Goodluck ("Officer Goodluck") and Daniel Estrada ("Officer Estrada") (collectively "the Officers" or "Defendant Officers"). The Officers, all of whom were in uniform, were dispatched at approximately 11:30 p.m. to a domestic violence call at 5308 Valley View Avenue. Instead of going to the home where the domestic disturbance was reported, the officers mistakenly knocked at the door of a home on the other side of the street – 5305 Valley View Avenue – the residence of Robert Dotson ("Mr. Dotson"), Kimberly Dotson ("Ms. Dotson") and their two teenage children, Julia Dotson and Zachary Mora-Dotson (the "children").

Officer Wasson repeatedly knocked on the front door and repeatedly announced the Officers' presence as "Farmington Police." Although Mr. Dotson heard the knocking, Plaintiffs allege he did not hear the announcements because he and Ms. Dotson were upstairs in their bedroom. Mr. Dotson went downstairs and opened the front door armed with a gun because he allegedly did not know who was knocking at that time of night. The Defendant Officers saw that Mr. Dotson was armed with a gun. Officer Wasson immediately ordered Mr. Dotson to put his hands up. Mr. Dotson disregarded Officer Wasson's command and took hold of the firearm with both hands and raised it in a shooting stance, aiming in the direction of Officers Wasson and Estrada. The Defendant Officers were forced to use deadly force to stop the imminent threat of death or great bodily harm posed by Mr. Dotson, which they did by firing their service weapons.

Ms. Dotson alleges she heard the gunfire and went downstairs where she discovered her husband lying in the doorway. Ms. Dotson admits she then fired a gun at whoever shot at her

husband but alleges she did not know it was police who were in her front yard. Officers Wasson and Estrada returned fire, but Ms. Dotson was not hit. Officer Goodluck did not return fire because, although he saw a gun appear from the threshold of the doorway, he did not have a clear line of sight to the female (Ms. Dotson) holding the gun. Uninjured, Ms. Dotson quickly retreated into the house.

Non-defendant FPD officers and supervisors subsequently arrived on scene and were eventually able to convince Ms. Dotson to exit the residence unarmed. As non-defendant officers escorted Ms. Dotson away from the residence, Officer Estrada instructed them to handcuff Ms. Dotson. Non-defendant officers handcuffed Ms. Dotson, placed her in a patrol vehicle and thereafter transported her to the police department to be interviewed by New Mexico State Police ("NMSP"), the agency investigating the officer-involved shooting.

In the meantime, other non-defendant FPD officers made contact with the children upstairs and remained with them while a plan was made to escort them out of the residence without having to see their deceased father. The children were then escorted out of the home and transported together to the local police station to await family and to be interviewed by NMSP. The children were never handcuffed, and they were permitted to go into different rooms unescorted both at home and at the police station.

Pursuant to the New Mexico Tort Claims Act ("NMTCA" or "Act"), Plaintiffs allege, in part, the following: "The detention of Kim Dotson, Zach Mora-Dotson, and Julia Dotson constitutes false imprisonment." *Plaintiffs' Second Amended Original Complaint*, ¶ 26 (filed Jan. 8, 2025) [Doc. 82] ("*Second Amended Complaint*"). The instant motion only addresses Ms.

Dotson's false imprisonment claim.[2]

Officers Wasson and Goodluck had no role in taking Ms. Dotson into custody and did not personally participate in any of the actions leading up to her alleged false imprisonment. Officer Estrada, on the other hand, had a role in taking Ms. Dotson into custody because he directed non-defendant officers to handcuff her. However, he had probable cause to believe Ms. Dotson committed one or more crimes, thereby defeating her false imprisonment claim. For the foregoing reasons, the Court should grant summary judgment in the Officers' favor on Ms. Dotson's false imprisonment claim.

## UNDISPUTED MATERIAL FACTS

1. As allowed by D.N.M.LR-Civ. 7.1(a), Defendants hereby incorporate by reference paragraphs 1 to 97 and 104 to 131 of the Statement of Undisputed Material Facts ("UMF") set forth in *City Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs Julia Dotson and Zachary Mora-Dotson's Fourth Amendment Illegal Seizure Claims Against the Officers Based on the Application of Qualified Immunity* at 4-39 (filed Feb. 19, 2024) [Doc. 35] ("*MPSJ No. I*"), as though fully set forth herein.[3]

2. Kimberly Dotson admitted she fired her gun "at whoever was in [her] front yard." Declaration of Kimberly Dotson, ¶ 16 (filed April 5, 2024) [Doc. 51]; see also *Second Amended Complaint*, ¶ 15 [Doc. 82] (stating "[s]he fired outside at whoever had shot her husband[,]" [t]he Defendant Police officers then each fired at Mrs. Dotson[.]").

---

[2] The Defendant Officers will address the children's false imprisonment claims in a separate motion.

[3] Plaintiffs' objections to the UMFs have been resolved by this Court in Defendants' favor. See *Order Overruling Plaintiffs' Objections To Defendants' Motion For Summary Judgment Exhibits* (filed Aug. 20, 2024) [Doc. 71].

4

3.     Kimberly Dotson was not struck by any of Officer Wasson's or Officer Estrada's rounds.  See Sergeant Christopher LaMonica's body worn camera video (April 5-6, 2023), 07:02-07:26, referenced as **Exhibit T in** City Defendants' *MPSJ No. I* and attached to *City Defendants' Notice of Filing Media Exhibits to City Defendants' MPSJ No. I* [Doc. 36] (Feb. 19, 2024) (showing Ms. Dotson exiting the residence uninjured after Officers Wasson and Estrada returned fire); see also generally Farmington Police Case Report Detail, Case Number 2023-00019241, p. 2, attached as **Exhibit U** to City Defendants' *MPSJ No. I* [Doc. 35-14] (Officer B. Lin's narrative describing his contact with Ms. Dotson after she exited the residence and there being no indication of any gunshot wounds to her person); see also *Second Amended Complaint*, ¶ 15 [Doc.82] (stating "[s]he fired outside at whoever had shot her husband[,]" "[t]he Defendant Police officers then each fired at Mrs. Dotson[,] but "[f]ortunately, she was not hit.").

**LEGAL ARGUMENT**

Plaintiffs' *Second Amended Complaint* alleges that "[t]he detention of Kim Dotson . . . constitutes false imprisonment[.]" *Second Amended Complaint*, ¶ 26 [Doc. 82].  Although Officer Estrada verbally directed the non-defendant FPD officers escorting Ms. Dotson to a patrol car to handcuff her, Officer Estrada had probable cause to believe Ms. Dotson committed one or more crimes.  This defeats Ms. Dotson's false imprisonment claim against Officer Estrada.  Officer Goodluck and Officer Wasson did not falsely imprison Ms. Dotson because they remained at the back of the residence and did not participate in detaining her.  Instead, it was other non-defendant FPD officers at the scene who eventually persuaded Ms. Dotson to exit the residence unarmed and detained her.  For the foregoing reasons, the Defendant Officers did not falsely imprison Ms. Dotson.

Plaintiffs cite Section 41-4-12 of the New Mexico Tort Claims Act ("NMTCA"), the law enforcement exception, as the applicable waiver of immunity in this case. *Amended Complaint*, ¶ 25 [Doc. 27]. This waiver provides, in pertinent part: "immunity . . . does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from . . . false imprisonment . . . when caused by law enforcement officers while acting within the scope of their duties." NMSA 1978, § 41-4-12. False imprisonment is an enumerated tort under the NMTCA, and immunity may be waived if false imprisonment is committed by a law enforcement officer.[4] As fully discussed below, however, Ms. Dotson cannot establish a false imprisonment claim against any of the Defendant Officers.

I. **OFFICER ESTRADA HAD PROBABLE CAUSE TO BELIEVE MS. DOTSON COMMITTED ONE OR MORE CRIMES, THEREBY DEFEATING HER FALSE IMPRISONMENT CLAIM.**

The *Second Amended Complaint* does not specify the factual basis of Ms. Dotson's false imprisonment claim against Officer Estrada but, construing the *Second Amended Complaint* generously, the Defendant Officers surmise Ms. Dotson is asserting Officer Estrada participated in her detention by verbally directing non-defendant FPD officers to handcuff her after she was

---

[4] For purposes of Section 41-4-12, the term "law enforcement officer" is defined as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." NMSA 1978, § 41-4-12; see NMSA 1978, § 41-4-3(D) (the "Definitions" section of the NMTCA defines a "law enforcement officer" as a "full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor."). "New Mexico courts have construed this definition strictly." Williams v. Bd. of Regents of the Univ. of New Mexico, 20 F. Supp. 3d 1177, 1190 (D.N.M. 2014) (internal quotation marks and citation omitted). For purposes of this *MPSJ No. VII*, the Defendant Officers do not dispute that they are "law enforcement officers" under the NMTCA.

persuaded to exit the residence without a weapon. See *Second Amended Complaint*, ¶ 26 [Doc. 82] (stating Ms. Dotson's alleged "detention" is the basis for her alleged "false imprisonment."). Even assuming arguendo that Ms. Dotson was either formally arrested or placed under de facto custodial arrest as a result of Officer Estrada directing non-defendant FPD officers to handcuff her, such facts are insufficient to form the basis of a false imprisonment claim against Officer Estrada. Instead, the undisputed material facts demonstrate that Officer Estrada had probable cause to believe Ms. Dotson had committed one or more violent felony crimes when she aimed her gun and shot at the Officers. Therefore, Officer Estrada could lawfully direct non-defendant FPD officers to handcuff Ms. Dotson incident to her arrest, defeating her false imprisonment claim.

"Under New Mexico law, false imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." Romero v. Sanchez, 1995-NMSC-028, ¶ 13, 119 N.M. 690, 895 P.2d 212 (internal quotations omitted). Proving a false imprisonment claim under New Mexico law requires a lack of probable cause. See Dorato v. Smith, 108 F. Supp. 3d 1064, 1159 (D.N.M. 2015) ("The torts of false arrest and false imprisonment require a lack of probable cause."); see also Sisneros v. Fisher, 685 F.Supp.2d 1188, 1221 (D.N.M. 2010) (Browning, J.) ("False imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so—i.e., for an officer, he has no probable cause.") (alterations and internal quotation marks omitted). As such, New Mexico courts have repeatedly held that probable cause is fatal to false arrest, false imprisonment, and unreasonable seizure

claims.[5] Dickson v. City of Clovis, 2010-NMCA-058, ¶ 21, 148 N.M. 831, 242 P.3d 398 (the plaintiff's false arrest and false imprisonment claims were properly dismissed because the defendant had probable cause to arrest the plaintiff); Benavidez v. Shutiva, 2015-NMCA-065, ¶ 12, 350 P.3d 1234 ("Probable cause to arrest for a single charge will suffice to immunize [the d]efendants from the [p]laintiff's wrongful arrest claims."); State v. Johnson, 1996-NMSC-075, ¶ 16, 122 N.M. 696, 930 P.2d 1148 ("Further, a common-law defense to a civil wrongful arrest or a false imprisonment suit also requires only that the officer prove that he or she acted in good faith and with probable cause and therefore lawfully under the circumstances."). "An officer who has probable cause to [detain or] arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." Santillo, 2007-NMCA-159, ¶ 12. Finally, "when a police officer has reasonable grounds or probable cause to believe that an offense has been committed in his presence, his warrantless arrest does not become *unlawful* if the arrestee is later found to be innocent." Johnson, 1996-NMSC-075, ¶ 16 (emphasis in original and citations omitted).

The legal standard of probable cause is generous to law enforcement officers. "Probable cause exists when the facts and circumstances within the knowledge of the officers, based on reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." State v. Cohen, 1985–NMSC–111, ¶ 36,

---

[5] "The torts of false arrest and false imprisonment are similar." Butler ex rel. Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 245 F. Supp. 2d 1203, 1211 (D.N.M. 2002). "A false arrest is merely one way of committing false imprisonment" even though the New Mexico Supreme Court has distinguished them as separate torts. Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 88, 173 P.3d 6, 11 (citation omitted). "An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." Id. at ¶ 12.

8

711 P.2d 3. The New Mexico Supreme Court recognizes "[t]here is . . . a material distinction between that which would be required to sustain a conviction for an offense and that which is sufficient to justify a peace officer in arresting for a supposed commission of such offense." Johnson, 1996-NMSC-075, ¶ 16 (internal quotation marks and citation omitted).

To determine whether Officer Estrada had probable cause, this Court should "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)); see State v. Sedillo, 1968-NMCA-035, ¶ 10, 79 N.M. 289, 291, 442 P.2d 601, 603 ("That the officers had sufficient basis for probable cause to believe appellants committed the crimes is amply supported by the events leading to their arrest."). When determining whether probable cause exists, a police officer "is entitled to assess the facts in light of his experience[.]" United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); see generally State v. Van Dang, 2005-NMSC-033, ¶ 16, 138 N.M. 408, 120 P.3d 830 (stating officer's training and experience can assist the evaluation of whether reasonable suspicion exists); State v. Donaldson, 1983-NMCA-064, ¶ 13, 100 N.M. 111, 116, 666 P.2d 1258, 1263 (holding that due consideration may be given to the fact that the affiant was a law enforcement officer and to the effect of his experience when assessing probable cause). Further, "where law enforcement authorities are cooperating in an investigation, [], the knowledge of one is presumed shared by all." Illinois v. Andreas, 463 U.S. 765, 771 (1983) (citing Whiteley v. Warden, 401 U.S. 560, 568 (1971)). Accordingly, an officer may rely on information from another law enforcement officer or other reliable police channels to establish probable cause and is not limited to that officer's excusive knowledge or even require to have first-hand

knowledge himself. Karr v. Smith, 774 F.2d 1029, 1031-32 (10th Cir. 1985) (citations omitted); see State v. Mitchell, 2010-NMCA-059, ¶ 5, 148 N.M. 842, 242 P.3d 409 (acknowledging that the police team concept "allows more than one police officer to work together to investigate a defendant's criminal activity and use their collective effort to support probable cause for the warrantless misdemeanor arrest."). Moreover, "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest." Gerstein v. Pugh, 420 U.S. 103, 113-114 (1975). The later outcome of the case is immaterial to the probable cause analysis, which "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 243 n. 13 (1983); see Johnson, 1996-NMSC-075, ¶ 16.

The elements to prove a false imprisonment claim are lack of consent and unlawfulness of the detention. For purposes of this *Motion No. VI* only, Defendant Officers accept that Ms. Dotson did not consent to her detention. However, Ms. Dotson cannot prove the detention was unlawful because the undisputed facts demonstrate that Officer Estrada had probable cause to believe Ms. Dotson committed one or more violent crimes. The Defendant Officers pooled their information and collectively knew facts and circumstances sufficient to warrant a prudent person in believing that Ms. Dotson had committed the violent felony crimes of aggravated assault on a peace officer, assault with intent to commit a violent felony upon a peace officer, and/or aggravated assault when she fired her gun at them. See *Motion for Partial Summary Judgment No. V: Dismissal of Ms. Dotson's and the Estate's Assault and Battery Claims*, Section II(A)(1), at 12-13 (filed Dec. 3, 2024) [Doc. 77] ("*MPSJ No. V*") (describing the factual and legal reasoning for the crimes). As

allowed by D.N.M.LR-Civ. 7.1(a), the Defendant Officers hereby incorporate by reference the arguments in *MPSJ No.* V, at 10-22, as though fully set forth herein. Therefore, it was lawful for Officer Estrada to order non-defendant FPD officers to place Ms. Dotson in handcuffs.

More specifically, the Defendant Officers were in uniform, on duty, and attempting to investigate a domestic violence call to which they had been dispatched. See UMF 1-97. The Defendant Officers, including Officer Estrada, witnessed Ms. Dotson fling open the front screen door armed with a gun and instantly aim and fire at least one round in their direction, as they were positioned in the nearby alley and not behind cover. UMF 106-107, 109, 111. Officer Wasson saw the muzzle flash and felt the bullet "zip" past to the left of him. UMF 109. In her own Declaration, Ms. Dotson admitted that she fired her gun "at whoever was in [her] front yard." Declaration of Kimberly Dotson, ¶ 16 (filed April 5, 2024) [Doc. 51]; see also *Second Amended Complaint*, ¶ 15 [Doc. 82] (stating "[s]he fired outside at whoever had shot her husband[,]" [t]he Defendant Police officers then each fired at Mrs. Dotson[.]"). Ms. Dotson's actions made Officers Wasson and Estrada both believe they were going to be shot. UMF 108-109, 113. Based on these undisputed facts, a reasonable officer would believe that Ms. Dotson intended to murder the Officers. See UMF 106-107, 109. Thus, based on the Officers' pooled information, Officer Estrada knew facts and circumstances sufficient to warrant a prudent person to believe that Ms. Dotson had committed one or more of the foregoing violent felony crimes. A finding of probable cause for Ms. Dotson's arrest is fatal to her false imprisonment claim. Therefore, Ms. Dotson's arrest was lawful, and Officer Estrada did not commit the tort of false imprisonment by directing non-defendant FPD officers to handcuff her.

## II. OFFICERS WASSON AND GOODLUCK HAD NO ROLE IN TAKING MS. DOTSON INTO CUSTODY AND DID NOT PERSONALLY PARTICIPATE IN ANY OF THE ACTIONS LEADING UP TO HER ALLEGED FALSE IMPRISONMENT.

As discussed above, Officer Estrada and other non-defendant FPD officers took Ms. Dotson into custody. Officers Wasson and Goodluck, however, cannot be held liable for falsely imprisoning Ms. Dotson because the undisputed facts demonstrate they had no role in taking her into custody and did not personally participate in any of the actions that could form the basis of her false imprisonment claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986) (scintilla of evidence inadequate to withstand summary judgment). In Scull v. New Mexico, the Court of Appeals dismissed claims of false imprisonment against defendants who were not personally involved in the plaintiff's alleged detention. 236 F.3d 588, 599 (10th Cir. 2000) (dismissing both Section 1983 and NMTCA claims); see also Perea v. Stout, 1980-NMCA-077, ¶¶ 21-22, 94 N.M. 595, 613 P.2d 1034 (joint tortfeasor claim failed where there was no evidence the alleged second tortfeasor was involved in the plaintiff's arrest). Here, Officers Wasson and Goodluck did not participate in taking Ms. Doston into custody. They remained behind the residence while Officer Estrada and other non-defendant FPD officers communicated with Ms. Dotson in an effort to persuade her to exit the residence unarmed. See generally UMF 116-131. Further, Officers Wasson and Goodluck did not issue any commands to Ms. Dotson from the back of the residence. See generally UMF 119-131. Moreover, Officers Wasson and Goodluck remained behind the residence when Ms. Dotson came out the front door and was taken into custody by other FPD officers. See generally UMF 125-128. These undisputed material facts demonstrate that Officers Wasson and Goodluck had no role in the decisions related to Ms. Dotson's detention and did not personally participate in taking her into custody. It is illogical to

12

conclude they could have falsely imprisoned Ms. Dotson. Therefore, Officers Wasson and Goodluck are entitled to summary judgment on Ms. Dotson's false imprisonment claims against them.

In conclusion, for all of Ms. Dotson's false imprisonment claims, Officer Estrada, Officer Goodluck and Officer Wasson are entitled to summary judgment in their favor.

## CONCLUSION

Officer Estrada had the necessary probable cause to order that Ms. Dotson be handcuffed for committing one or more violent felony crimes, which is fatal to her false imprisonment claim. Officers Wasson and Goodluck had no role in taking Ms. Dotson into custody and did not personally participate in any of the actions leading up to her alleged false imprisonment. None of the Defendant Officers are liable for the tort of false imprisonment. Therefore, this Court may properly grant the Defendant Officers summary judgment in their favor on Ms. Dotson's false imprisonment tort claims.

**WHEREFORE,** Defendant Officers Daniel Estrada, Dylan Goodluck, and Waylon Wasson, respectfully request that this Court grant their *Motion for Partial Summary Judgment No. VI: Dismissal of Kimberly Dotson's False Imprisonment Tort Claim* and dismiss Ms. Dotson's tort claim of false imprisonment against the Officers with prejudice.

            Respectfully submitted,

            **ROBLES, RAEL & ANAYA, P.C.**


           By:  /s/ Luis Robles
              Luis Robles
              Attorney for Defendants
              500 Marquette, Suite 700
              Albuquerque, New Mexico 87102-3334
              (505) 242-2228
              (505) 242-1106 (facsimile)
              luis@roblesrael.com

I hereby certify that the foregoing was electronically filed through the CM/ECF on this  20th  day of January 2025, which will cause service to all counsel of record.

Doug Perrin
The Perrin Law Firm
369 Montezuma Ave., OMB #334
Santa Fe, New Mexico 87501
(505) 989-8800
(214) 646-6117 (facsimile)
dougperrin@perrinlaw.org

Thomas M. Clark
Clark, Jones, & Ruyle LLC
 432 Galisteo St.
Santa Fe, New Mexico 87501
(505) 820-1825
(505) 986-0475 (facsimile)
tmclark@cjrlawsf.com

*Attorneys for Plaintiffs*


/s/ Luis Robles
Luis Robles