IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNEST PADILLA, PERSONAL REPRESENTATIVE
OF THE ESTATE OF ROBERT DOTSON, DECEASED;
KIMBERLY DOTSON,
INDIVIDUALLY AND AS PARENT AND NEXT FRIEND
OF JULIA
DOTSON; AND ZACHARY-MORA DOTSON,

    Plaintiffs,

vs.                                                               Case No. 1:23-cv-00790-MLG-KK

CITY OF FARMINGTON, NEW MEXICO;
DANIEL ESTRADA; DYLAN GOODLUCK;
AND WAYLON WASSON,

    Defendants.

**DEFENDANTS DANIEL ESTRADA, DYLAN GOODLUCK AND WAYLON WASSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT No. VII: DISMISSAL OF JULIA DOTSON'S AND ZACHARY-MORA DOTSON'S <u>ASSAULT, BATTERY, AND FALSE IMPRISONMENT TORT CLAIMS</u>**

Defendants, Daniel Estrada, Dylan Goodluck, and Waylon Wasson, through their attorneys, Robles, Rael and Anaya, P.C. (Luis Robles), state the following for their *Motion for Partial Summary Judgment No. VII: Dismissal of Julia Dotson's and Zachary-Mora Dotson's Assault, Battery, and False Imprisonment Tort Claims* ("*MPSJ No. VII*"):[1]

---

[1] As required by D.N.M.LR-Civ. 7.1(a), defense counsel contacted Plaintiffs' counsel on January 16, 2025 to determine Plaintiffs' position on this *MPSJ No. VII*. As of the filing of this motion, Plaintiffs' counsel has not provided a position. Plaintiffs are presumed to oppose this *MPSJ No. VII*.

## INTRODUCTION

This case arises from the April 5, 2023, officer-involved shooting by Farmington Police Department ("FPD") Officers Waylon Wasson ("Officer Wasson"), Dylan Goodluck ("Officer Goodluck") and Daniel Estrada ("Officer Estrada") (collectively "the Officers" or "Defendant Officers"). The Officers, all of whom were in uniform, were dispatched at approximately 11:30 p.m. to a domestic violence call at 5308 Valley View Avenue. Instead of going to the home where the domestic disturbance was reported, the officers mistakenly knocked at the door of a home across the street – 5305 Valley View Avenue – the residence of Robert Dotson ("Mr. Dotson"), Kimberly Dotson ("Ms. Dotson") and their two children, fourteen-year-old Julia Dotson and eighteen-year-old Zachary Mora-Dotson (the "children").

Officer Wasson repeatedly knocked on the front door and repeatedly announced the Officers' presence as "Farmington Police." Although Mr. Dotson heard the knocking, Plaintiffs allege he did not hear the announcements because he and Ms. Dotson were upstairs in their bedroom. Mr. Dotson went downstairs and opened the front door armed with a gun because he allegedly did not know who was knocking at that time of night. The Officers saw that Mr. Dotson was armed with a gun. Officer Wasson immediately ordered Mr. Dotson to put his hands up. Mr. Dotson disregarded Officer Wasson's command and took hold of the firearm with both hands and raised it in a shooting stance, aiming in the direction of Officers Wasson and Estrada. The Officers were forced to use deadly force to stop the imminent threat of death or great bodily harm posed by Mr. Dotson, which they did by firing their service weapons.

Ms. Dotson alleges she heard the gunfire and went downstairs where she discovered her husband lying in the doorway. Ms. Dotson admits she then fired a gun at whoever shot at her

husband but alleges she did not know it was police who were in her front yard. Officers Wasson and Estrada returned fire, but Ms. Dotson was not hit. Officer Goodluck did not return fire because, although he saw a gun appear from the threshold of the doorway, he did not have a clear line of sight to the female (Ms. Dotson) holding the gun. Uninjured, Ms. Dotson quickly retreated into the house. Non-defendant FPD officers persuaded Ms. Dotson to exit her residence unarmed. Upon exiting the residence, Ms. Dotson was handcuffed and detained.

Other non-defendant FPD officers made contact with the children upstairs and remained with them while a plan was made to escort them out of the residence without having to see their deceased father. The children were then escorted out of the home together and transported together to the local police station to await family and to be interviewed by New Mexico State Police ("NMSP"), the agency investigating the officer-involved shooting. The children were never handcuffed, and they were permitted to go into different rooms unescorted both at home and at the police station.

Plaintiffs allege six torts against the Officers: "[t]he tortious acts of the Defendant officers (assault, battery, homicide, and negligence in going to the wrong address) resulted in the death of Robert Dotson and injury to each of the Plaintiffs. The detention of Kim Dotson, Zach Mora-Dotson, and Julia Dotson constitutes false imprisonment." *Plaintiffs' Second Amended Original Complaint*, ¶ 26 (filed Jan. 8, 2025*)* [Doc. 82] ("*Second Amended Complaint*"). This *MPSJ No. VII* addresses the assault, battery, and false imprisonment claims alleged by the children pursuant to the New Mexico Tort Claims Act ("NMTCA").

The undisputed material facts demonstrate Officers Wasson, Goodluck and Estrada did not have any physical or verbal contact with the children, nor did the Defendant Officers personally

participate in any of the decisions made or actions taken with regard to the children. The Defendant Officers did not commit the alleged torts of assault, battery, or false imprisonment against the children. Even if there is a finding of assault and/or battery, the children's claims fail against the Defendant Officers because they are entitled to the qualified privilege defense having used no force against the children. The Court should therefore grant summary judgment on the children's tort claims in favor of the Defendant Officers and dismiss the claims of assault, battery, and false imprisonment with prejudice.

## UNDISPUTED MATERIAL FACTS

As allowed by D.N.M.LR-Civ. 7.1(a), the Defendant Officers hereby incorporate by reference paragraphs 69-115, 123, and 133 to 145 of the Statement of Undisputed Material Facts ("UMF") set forth in *City Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs Julia Dotson and Zachary Mora-Dotson's Fourth Amendment Illegal Seizure Claims Against the Officers Based on the Application of Qualified Immunity*, 4-39 (filed Feb. 19, 2024) [Doc. 35] ("*MPSJ No. I*"), as though fully set forth herein.[2]

## LEGAL ARGUMENT

Plaintiffs cite Section 41-4-12 of the New Mexico Tort Claims Act ("NMTCA"), the law enforcement exception, as the applicable waiver of immunity in this case. *Second Amended Complaint*, ¶ 25 [Doc. 82]. This waiver provides, in pertinent part: "immunity . . . does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from

---

[2] Plaintiffs' objections to the UMF have been resolved by this Court in Defendants' favor. See *Order Overruling Plaintiffs' Objections To Defendants' Motion For Summary Judgment Exhibits* (Aug. 20, 2024) [Doc. 71].

assault, battery, [and] false imprisonment . . . while acting within the scope of their duties." NMSA 1978, § 41-4-12. Assault, battery and false imprisonment are enumerated torts under the NMTCA, and immunity may be waived if an assault, battery, or false imprisonment is committed by a law enforcement officer.[3]

There is no admissible evidence supporting the children's claims that the Officers assaulted, battered or falsely imprisoned them.[4] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986) (scintilla of evidence inadequate to withstand summary judgment); see e.g., Perea v. Stout, 1980-NMCA-077, ¶¶ 21-22, 94 N.M. 595, 613 P.2d 1034 (joint tortfeasor claim failed where there was no evidence the alleged second tortfeasor was involved in the plaintiff's arrest). The undisputed material facts demonstrate the Officers did not have any physical or verbal contact

---

[3] Under the NMTCA, the term "law enforcement officer" is defined to mean "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." NMSA 1978, § 41-4-12; see NMSA 1978, § 41-4-3(D); NMSA 1978, § 41-4-3 (a "law enforcement officer" is a "full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor."). "New Mexico courts have construed this definition strictly." Williams v. Bd. of Regents of Univ. of New Mexico, 20 F. Supp. 3d 1177, 1190 (D.N.M. 2014) (internal quotation marks and citation omitted). For purposes of this *MPSJ No. VII*, the Officers do not dispute that they are "law enforcement officers" under the NMTCA.

[4] The Officers separately argued there is insufficient evidence to conclude they deprived the children of their right against unreasonable seizure in violation of the Fourth Amendment, which has been fully briefed, *MPSJ No. I* [Doc. 35]; *Notice of Completion of Briefing* (filed March 19, 2024) [Doc. 45]. The Court granted *MPSJ No. I* after conducting a motions hearing, during which Plaintiffs' counsel clarified he did not intend to assert a Fourth Amendment claim on behalf of the children. See *Order Granting Defendants' Motion for Partial Summary Judgment No. 1* (filed August 20, 2024) [Doc. 70]. Nonetheless, the arguments in *MPSJ No. I* are analogous to the argument here regarding the false imprisonment claims. Therefore, as allowed by D.N.M.LR-Civ. 7.1(a), the Officers hereby incorporate by reference the arguments in *MPSJ No. I,* 41-46 [Doc. 35], as though fully set forth herein.

with the children and did not personally participate in the decisions or actions related to the children. See generally [Doc. 35], UMF 134 (demonstrating that Officer Goodluck and Officer Wasson had no contact with the children), [Doc. 35], UMF 145 (same, including Officer Estrada). Even Officer Estrada, who entered the residence to assist in clearing the home of any additional threats, did not go upstairs where the children were located or have any physical or verbal contact with the children. See generally [Doc. 35], UMF 133-143 (Officer Estrada assisted in clearing the first floor of the residence, exited the residence, awaited instructions from the on-scene supervisors, was assigned a companion officer, and transported to the police department where he was processed by NMSP). Officer Estrada also did not personally participate in any decisions or actions related to the children. Id.

      Rather, the undisputed material facts demonstrate that other FPD and NMSP personnel, who are not named defendants in this case, are the individuals who had contact with the children and made the decisions related to the children remaining upstairs, being subsequently escorted out of the home, transported to the police station, and interviewed by the NMSP. See generally [Doc. 35], UMF 133-134, 138-143, 145. By the time contact was made with the children, supervisory personnel were already on scene and exercising control over the situation. See generally [Doc. 35], UMF 123, 141 (demonstrating that, upon arrival, Sgt. LaMonica took control of communications with the female resident and showing Sgt. LaMonica discussing how to get the children out of the house). Moreover, the children were never handcuffed, and they were permitted to go into different rooms unescorted both at home and at the police station. See generally [Doc. 35], UMF 141-144.

I.   **THE CHILDREN'S ASSAULT CLAIMS AGAINST THE DEFENDANT OFFICERS FAIL BECAUSE THERE IS NO EVIDENCE THE OFFICERS ACTED OR INTENDED TO ACT TO CAUSE THE CHILDREN FEAR OF OFFENSIVE CONTACT.**

For there to be a civil assault, "the actor need only intend to cause another to be put in imminent apprehension of harmful or offensive contact, but the contact need not occur." Hernandez v. Parker, 2022-NMCA-023, ¶ 28, 508 P.3d 947 (citing Restatement (Second) of Torts § 21 (Am. L. Inst. 1965) (defining assault))  In other words, there must have been an "unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." Fuerschbach v. Sw. Airlines Co., 439 F.3d 1197, 1208 (10th Cir. 2006) (quoting NMSA 1978, § 30-3-1(B)); see State v. Branch, 2018-NMCA-031, ¶ 12, 417 P.3d 1141 (quoting same).  In order to demonstrate assault, the plaintiff must demonstrate both an objective and subjective component regarding perception of a threat.  See State v. Arrendondo, 2012-NMSC-013, ¶ 15, 278 P.3d 517.  Thus, a civil assault requires proof that the actor acted with intent and the individual was in imminent apprehension of harmful or offensive contact.

The Officers' presence outside the Dotson residence or, in Officer Estrada's case, inside the first floor of the residence *before* the children were contacted, are insufficient to establish assault.  Assault requires an unlawful act or a threat or conduct that causes a person to believe they are about to be battered.  State v. Branch, 2018-NMCA-031, ¶ 21, 417 P.3d 1141, 1149 ("Assault consists of 'any *unlawful act* . . . which causes another person to reasonably believe that he is in danger of receiving an immediate battery[.]'") (quoting NMSA 1978, § 30-3-1(B) (1963)) (emphasis added); id. ("The commission of an 'unlawful act' is an alternative method of committing the offense that does not rely on threatening or menacing conduct."); Hernandez, 2022-

7

NMCA-023, ¶ 28, 508 P.3d 947 (assault includes an element of intention, as the person must "intend to cause another to be put in imminent apprehension of harmful or offensive contact"); see State v. Archuleta, No. A-1-CA-35990, 2019 WL 3765583, at *4 (N.M. Ct. App. July 22, 2019) (not reported) (describing the distinction between arguments for unlawful acts compared to attempted battery). There is no evidence to suggest the Officers unlawfully acted, threatened, or conducted themselves in a manner that caused contact with the children or the apprehension of contact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (the movant can support their motion by demonstrating that there is "an absence of evidence to support the nonmoving party's case.").

The undisputed material facts demonstrate that the Defendant Officers had no contact with the children, and made no decisions related to the children who remained upstairs before being subsequently escorted out of the home, transported to the police station, and interviewed by the NMSP. See generally [Doc. 35], UMF 133-134, 138-143, 145. Moreover, Officer Wasson and Officer Goodluck never even entered the residence. [Doc. 35], UMF 133. There is no evidence to demonstrate that the Officers committed an unlawful act. As set forth in prior motions, the Defendant Officers did not engage in unlawful conduct against Mr. and Ms. Dotson – the children's parents. See *Motion for Partial Summary Judgment No. V: Dismissal of Ms. Dotson's and the Estate's Assault and Battery Claims*, at 10-27 (filed Dec. 3, 2024) [Doc. 77] ("*MPSJ No. V*"). Thus, the Officers did not commit an unlawful act on the children. Instead, the inquiry turns on the more fact intensive analysis of the Defendant Officers' intent and the children's subjective and a reasonable person's objective beliefs.

Even under an alternative theory, there is no evidence to prove the Defendant Officers

specifically intended to act in a matter that would cause the belief, with substantial certainty, that a battery on the children was imminent. There is also no evidence the Defendant Officers engaged in threatening or menacing conduct that was certain to result in the fear of harm. The facts demonstrate an absence of intention to cause harm and an absence of threatening conduct, as Defendant Officers had no contact with the children and made no decisions regarding them. See generally [Doc. 35], UMF 133-134, 138-143, 145. Non-defendant officers located the children upstairs after Officer Estrada assisted in conducting a sweep of the first floor and had exited the residence and while Officer Wasson and Officer Goodluck were outside on the road behind the residence. [Doc. 35], UMF 134, 139-140. Based on these undisputed facts, the children cannot meet their burden for this element of their assault claim regarding the Defendant Officers' intentions.

Additionally, for the children's perceptions, the test for assault is both subjective and objective: "the victim must *actually believe,* and [] a *reasonable person* in the victim's circumstances also *would believe,* that he or she was about to be assaulted[.]" Arrendondo, 2012-NMSC-013, ¶ 14 (emphases in original). Setting aside whether the children subjectively feared imminent harmful or offensive conduct based on the encounter between the Officers and their parents that had occurred earlier, the children cannot demonstrate that a reasonable person would have believed the same. See generally [Doc. 35], UMF 69-115.

Any purported fear by the children regarding what had occurred between the Officers and their parents is insufficient to prove assault. In State v. Baca, the court considered a criminal charge of assault with intent to commit a violent felony against a peace officer. 2020-NMCA-049, ¶ 9, 475 P.3d 799, 802. The defendant shot at the officer, then fled. Id. The officer "testified that

9

he thought that [d]efendant might come back and shoot him again." This was insufficient to form the basis for assault and the court concluded:

> Were we to hold that such facts could allow a jury to infer that Officer Caron reasonably feared an immediate battery, any scenario wherein a battery with a deadly weapon occurs would necessarily transform into a subsequent assault, so long as the victim testifies that he was afraid the shooter would return and attack again. Without further evidence proving Defendant's menacing conduct or an explicit or implied threat of further violence, we cannot conclude that the jury was able to find beyond a reasonable doubt that the required elements of assault with intent to commit a violent felony against a peace officer were satisfied.

Id. As found by the court, a battery with a deadly weapon does not transform into an assault based on a concern the attacker would return. Id. Here, any fear the children may have had that the shooting encounter would continue towards them upstairs is insufficient to establish assault. Also, under the unlawful act theory, in State v. Branch, the court considered that "[t]he jury could conclude that Defendant committed an unlawful act (shooting Joshua), which caused Patricia—who had witnessed the day's events and was 'standing right next to' Joshua when the shooting occurred—to reasonably believe that she was also going to be shot." 2018-NMCA-031, ¶ 20, 417 P.3d 1141. Here, there is no unlawful act. There is also no evidence to suggest the children saw the encounter and they were not in close proximity to those encounters, as they were found upstairs when the non-defendant officers cleared the residence. See [Doc. 35], UMF 140.

Neither the Defendant Officers' mere presence at the scene or their prior encounters with Mr. and Ms. Dotson constitute an assault on the children. Therefore, the Defendant Officers are entitled to summary judgment on the children's assault claim against them.

**II.     THE CHILDREN'S BATTERY CLAIMS AGAINST THE DEFENDANT OFFICERS FAIL BECAUSE THE OFFICERS HAD NO CONTACT WITH THE CHILDREN.**

Regarding a civil battery, in New Mexico, "one commits battery when (a) he acts intending

10

to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." Sisneros v. Fisher, 685 F.Supp.2d 1188, 1220-21 (D.N.M. 2010) (citations omitted); New Mexico v. Ortega, 1992-NMCA-003, ¶ 12, 113 N.M. 437, 827 P.2d 152 (same); Restatement (Second) of Torts § 18 (1965) (same); Hernandez, 2022-NMCA-023, ¶ 27 ("the Restatement (Second) of Torts § 18 appropriately defines the elements for civil battery and assault"); see also NMSA 1978, § 30-3-4 (1963) (in the criminal context, battery is "the unlawful intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."). "The intent required to commit battery extends only to the physical touching at issue and not to the resulting harm." Milliron v. Cnty. of San Juan, 2016-NMCA-096, ¶ 18, 384 P.3d 1089.

There cannot be a battery where there is no offensive contact either directly or indirectly. Sisneros, 398 F. Supp at 1220-21. Here, the Defendant Officers never touched the children, whether directly or indirectly, and there is no evidence indicating that they did. See Celotex Corp., 477 U.S. at 325. Moreover, there is no evidence to support the first element of battery: that the Officers *intended* to cause the children harmful or offensive contact or even *intended* to cause the children to fear that there would be contact. See id. The claim of battery is particularly implausible given the distance between and circumstances separating the Officers and the children. There is no evidence the Officers were involved at all with the children during or after the incidents with their parents. See id. Thus, the children cannot meet their burden to establish liability for the tort of battery by the Officers.

### III. THE CHILDREN'S CLAIMS FOR ASSAULT AND BATTERY FAIL BECAUSE THE OFFICERS ARE ENTITLED TO QUALIFIED PRIVILEGE.

Police officers may not be held liable in an action for assault and battery for the use of reasonably necessary force in the enforcement of the law – *i.e.*, qualified privilege. As allowed by D.N.M.LR-Civ. 7.1(a), the Defendant Officers hereby incorporate by reference the law on qualified privilege in *MPSJ No. V*, at 7-10 [Doc. 77], as though fully set forth herein. Even if there is a finding of assault and/or battery, the children's claims fail against the Defendant Officers because they are entitled to the qualified privilege defense. Officers Wasson, Estrada, and Goodluck were privileged to use reasonable force against Mr. and Ms. Dotson to prevent serious bodily harm to themselves and others. See id., at 10-27. However, Officers Wasson, Estrada, and Goodluck did not use force against the children. See generally [Doc. 35], UMF 133-134, 138-143, 145. Thus, the Defendant Officers used no more force than necessary, and the rational conclusion is that they are entitled to the qualified privilege defense against the children's assault and battery claims.

### IV. THE CHILDREN'S FALSE IMPRISONMENT CLAIMS AGAINST THE DEFENDANT OFFICERS FAIL BECAUSE THE OFFICERS HAD NO ROLE WITH REGARDS TO THE DECISIONS MADE FOR CHILDREN.

"Under New Mexico law, false imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." Romero v. Sanchez, 1995-NMSC-028, ¶ 13, 119 N.M. 690, 895 P.2d 212 (internal quotations omitted). Proving a false imprisonment claim under New Mexico law requires a lack of probable cause. See Dorato v. Smith, 108 F. Supp. 3d 1064, 1159 (D.N.M. 2015) ("The torts of false arrest and false imprisonment require a lack of probable cause."); see also Sisneros v. Fisher, 685 F.Supp.2d 1188, 1221 (D.N.M. 2010) (Browning, J.) ("False imprisonment occurs

when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so—i.e., for an officer, he has no probable cause.") (alterations and internal quotation marks omitted). "An officer who has probable cause to [detain or] arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." Santillo v. N.M. Dept. of Pub. Safety, 2007-NMCA-159, ¶ 12. However, here, the court need not reach the probable cause analysis because the Defendant Officers had no contact with the children and did not personally participate in any of the actions after they were found by non-defendant officers. See generally [Doc. 35], UMF 133-134, 138-143, 145.

In analyzing false imprisonment and applying legal standards, it is relevant to note that a "Fourth Amendment [unreasonable seizure] claim is analogous to false arrest or false imprisonment" tort claim. Chavez v. Cnty. of Bernalillo, 3 F. Supp. 3d 936, 980 (D.N.M. 2014); see id., at 996 ("to maintain a false arrest or false imprisonment claim under § 1983, 'plaintiffs must demonstrate the elements of a common law claim and show that their Fourth Amendment right to be free from unreasonable search and seizure has been violated.'") (quoting Trimble v. Park Cnty. Bd. of Comm'rs, 242 F.3d 390, 2000 WL 1773239, at *3 (10th Cir.2000) (table decision)). However, satisfying the Section 1983 standard has the extra element of "show[ing] a government official acted with deliberate or reckless intent to falsely imprison the plaintiff" – an element that is not required for a tort analysis. Romero v. Fay, 45 F.3d 1472, 1480 (10th Cir.1995).

Here, there is insufficient evidence to conclude the Officers deprived the children of their right against unreasonable seizure in violation of the Fourth Amendment, which City Defendants separately argued in their *MPSJ No. I* that has been decided this Court. See *Order Granting*

*Defendants' Motion for Partial Summary Judgment No. I* (Aug. 20, 2024) [Doc. 70] (Plaintiffs conceded during oral argument at the motion hearing that the children did not assert a federal constitutional claim for illegal seizure). The arguments in City Defendants' *MPSJ No. I* are analogous to the argument here regarding the false imprisonment claims. As allowed by D.N.M.LR-Civ. 7.1(a), the Officers hereby incorporate by reference the arguments in *MPSJ No. I*, at 39-47, as though fully set forth herein.

False imprisonment requires the actor to intentionally confine or restrain the person. See Perea v. Stout, 1980-NMCA-077, ¶¶ 21-22, 94 N.M. 595, 613 P.2d 1034 (joint tortfeasor claim failed where there was no evidence the alleged second tortfeasor was involved in the plaintiff's arrest). The Officers' presence outside the Dotson residence or, in Officer Estrada's case, inside the first floor of the residence *before* the children were contacted, are insufficient to establish the Officers falsely imprisoned the children. See Jenkins v. Wood, 81 F.3d 988, 995 (10th Cir. 1996) (the Tenth Circuit explicitly declined to accept a conclusory argument regarding mere presence when affirming summary judgment of a similar claim for unreasonable seizure under Section 1983); Chavez, 3 F. Supp.3d at 980 (unreasonable seizure claims are analogous to false imprisonment tort claims). There is no evidence to support the elements of false imprisonment here. See Celotex Corp., 477 U.S. at 325. There is no evidence the Officers confined or restrained the children, nor is there any evidence the Officers *intended* to confine or restrain the children. See id. Since the Officers did not have any contact with the children nor did they participate in any of the decisions or actions taken with respect to the children, including anything associated with the alleged detention of the children, it is illogical to conclude they could have falsely imprisoned the children. The children cannot meet their burden to establish liability for the tort of

false imprisonment. Therefore, the Defendant Officers are entitled to summary judgment on the children's false imprisonment claim against them.

## CONCLUSION

For assault, the children cannot establish the elements of this tort because there is no evidence to suggest the Defendant Officers unlawfully acted, threatened, or conducted themselves in a manner that caused contact with the children or the apprehension of contact. For battery, the children's claims fail against the Defendant Officers because it is undisputed that there was no offensive contact. For false imprisonment, the Defendant Officers did not participate in any of the decisions or actions taken with respect to the children, so the tort claim fails. All the children's tort claims against Officers Wasson, Goodluck and Estrada fail because they had no role in the decisions related to the children's care and never engaged with them. Therefore, this Court should grant summary judgment in the Defendant Officers' favor on the children's assault, battery, and false imprisonment tort claims.

**WHEREFORE,** Defendant Officers Daniel Estrada, Dylan Goodluck, and Waylon Wasson respectfully request that this Court grant their *Motion for Partial Summary Judgment No. VII: Dismissal of Julia Dotson's and Zachary-Mora Dotson's Assault, Battery, and False Imprisonment Tort Claims* and dismiss the children's assault, battery and false imprisonment tort claims against the Officers with prejudice.

                              Respectfully submitted,

                              **ROBLES, RAEL & ANAYA, P.C.**

                              By:    /s/ Luis Robles
                                      Luis Robles
                                      Attorney for Defendants
                                      500 Marquette, Suite 700
                                      Albuquerque, New Mexico 87102-3334
                                      (505) 242-2228
                                      (505) 242-1106 (facsimile)
                                      luis@roblesrael.com

I hereby certify that the foregoing was electronically filed through the CM/ECF on this  20th  day of January 2025, which will cause service to all counsel of record.

Doug Perrin
The Perrin Law Firm
369 Montezuma Ave., OMB #334
Santa Fe, New Mexico 87501
(505) 989-8800
(214) 646-6117 (facsimile)
dougperrin@perrinlaw.org

Thomas M. Clark
Clark, Jones, & Ruyle LLC
 432 Galisteo St.
Santa Fe, New Mexico 87501
(505) 820-1825
(505) 986-0475 (facsimile)
tmclark@cjrlawsf.com

*Attorneys for Plaintiffs*


/s/ Luis Robles
Luis Robles